UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JAE PROPERTIES, INC.,

Plaintiff,

v.

AMTAX HOLDINGS 2001-XX, LLC,

Defendant.

AMTAX HOLDINGS 2001-XX, LLC and VICTORIA HEIGHTS LTD.,

Counter-Plaintiffs,

v.

JAE PROPERTIES, INC.,

Counter-Claim Defendant.

Case No.: 19cv2075-JAH-LL

**ORDER RE: DEFENDANT AND COUNTER-PLAINTIFF AMTAX HOLDINGS 2001-XX, LLC'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS ON PLAINTIFF AND COUNTER-DEFENDANT JAE PROPERTIES, INC.**

**REDACTED**

**[ECF No. 39]**

/ / /

On April 7, 2020, counsel for the parties called the Court to discuss a discovery dispute regarding an issue raised by Defendant and Counter-Plaintiff AMTAX Holdings 2001-XX, LLC (hereinafter "Amtax") for the Court's intervention. The Court issued a briefing schedule. ECF No. 35. Amtax timely filed the Motion to Compel (hereinafter "Motion"). See ECF Nos. 39, 46. Amtax's Motion includes a Declaration of Craig Bessenger and Exhibits in support thereof. ECF Nos. 39-1 through 39-15; see also ECF No. 47. JAE Properties, Inc. (hereinafter "JAE") filed an Opposition to Amtax's Motion.[1] See ECF No. 43. JAE's Opposition includes Declarations of Robert P. Berry and Roger C. Hartman in support thereof. ECF Nos. 43-1, 43-2. Amtax timely filed a Reply. See ECF No. 41.

For the reasons set forth below, Amtax's Motion [ECF No. 39] is **GRANTED.**

**RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On October 29, 2019, Plaintiff and Counter-Defendant, JAE, filed a Complaint for declaratory relief against Defendant and Counter-Claimant, Amtax, regarding an Amended and Restated Limited Partnership Agreement ("LPA") dated August 27, 2001, governing Victoria Heights LTD., a California Limited Partnership (the "Partnership"). ECF No. 1. On November 20, 2019, Amtax filed an Answer and Counterclaims for: (1) breach of contract; (2) breach of fiduciary duty; (3) declaratory judgment for the appraisal process; and (4) declaratory judgment for Amtax's alleged right to remove JAE as the Partnership's co-general partner pursuant to the LPA. ECF No. 9 ("Answer and Counterclaim").

In the Complaint, JAE states that the purpose of the Partnership between JAE and Amtax is to provide low income housing to needy and distressed persons by developing an apartment complex known as Victoria Heights Apartments. ECF No. 1 at ¶ 1. JAE is the Co-General Partner and Amtax is the Investor Limited Partner of the Partnership within

[1] JAE's Opposition as originally filed exceeded the page limit set forth in this Court's April 7, 2020 Order at ECF No. 35. Accordingly, the Court struck the originally filed Opposition [ECF No. 42], and JAE filed a Revised Opposition on April 21, 2020. ECF No. 43.

the meaning of the LPA. Id. at ¶¶ 3-4; see also Amtax's Counterclaim at ¶ 2. Section 7.4.I of the LPA provides for the process by which Amtax could exit the Partnership, which included selecting independent appraisers to value the Apartment Complex and Amtax's Interest in the Partnership. Complaint at ¶ 12; see also Counterclaim at ¶ 9.

A dispute arose when Amtax sought to exit the partnership under the LPA. See Motion at 5-6 (citing Counterclaim at ¶¶ 5-9; 54-57; 59; 65); see Oppo. at 2 (citing Complaint at ¶¶ 17-18). JAE elected to purchase Amtax's interest in the Partnership. See Counterclaim at ¶ 9; see also Oppo. at 2. The parties selected their own appraisers: JAE selected Doyle Real Estate Advisors ("Doyle") as its appraiser, and Amtax selected Novogradac & Company LLP ("Novogradac"). See Counterclaim at ¶¶ 9, 54; see also Oppo. at 2. Amtax states that when the parties exchanged their respective appraisals, Novogradac valued the apartment complex at $25,300,000 [Counterclaim at ¶¶ 55-56], and Doyle valued the apartment complex at $17,425,000 [Counterclaim at ¶ 57].

In explaining this difference, JAE states that "[w]hereas Doyle based its valuation, in part, on the fact that Amtax's limited partnership interest lacks marketability and control, Novogradac claimed that Amtax had the right to force a sale of the Apartment Complex." Oppo. at 2 (citing Complaint at ¶¶ 17-18). In contrast, Amtax alleges that JAE manipulated the appraisal process required under the LPA to determine the fair market value of Amtax's Partnership interest. Motion at 6; see also Bessenger Decl. at ¶¶ 19-23.

**LEGAL STANDARD**

The scope of discovery under the Federal Rules of Civil Procedure is defined as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

District courts have broad discretion to determine relevancy for discovery purposes. See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002). District courts also have broad discretion to limit discovery to prevent its abuse. See Fed. R. Civ. P. 26(b)(2) (instructing that courts must limit discovery where the party seeking the discovery "has had ample opportunity to obtain the information by discovery in the action" or where the proposed discovery is "unreasonably cumulative or duplicative," "obtain[able] from some other source that is more convenient, less burdensome, or less expensive," or where it "is outside the scope permitted by Rule 26(b)(1)").

Pursuant to Federal Rule of Civil Procedure 37, "a party may move for an order compelling disclosure of discovery." Fed. R. Civ. P. 37(a)(1). The party seeking to compel discovery has the burden of establishing that its request satisfies the relevance requirement of Rule 26. Soto v. City of Concord, 162 F.R.D. 603, 610 (N.D. Cal. 1995). Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of "clarifying, explaining and supporting its objections." DIRECTV, Inc. v. Trone, 209 F.R.D. 455, 458 (C.D. Cal. 2002) (citing Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975)).

## DISCUSSION

### A. Amtax's Motion to Compel the Contested Documents

#### 1. Summary of the Contested Documents

Amtax requests that the Court compel JAE to produce responsive documents that JAE is withholding based on an assertion of attorney-client privilege and/or attorney work product protection. Motion at 2. Specifically, the documents that Amtax seeks are in response to its First Set of Requests for Production ("RFPs") served on January 10, 2020, which included 19 separate RFPs. See Exhibit 1 to Motion; see also Bessenger Decl. at ¶ 2. On February 10, 2020, JAE asserted a number of objections in response to the 19 RFPs, including that each request "'seeks information that is protected by the attorney-client privilege and work product doctrine.'" See Exhibit 2 to Motion. After meeting and

conferring via letters and telephone calls, JAE supplemented its document production and provided a privilege log on March 13, 2020. Bessenger Decl. at ¶ 9. Notwithstanding JAE's amended privilege log and subsequent meet and confers, the parties were unable to resolve the discovery dispute with respect to the category of documents in question. Id. at ¶ 11-13; see also Exhibit 5 to Motion.

The parties' instant discovery dispute requires a determination of whether the disputed communications between attorney Roger Hartman, of the Law Offices of Hartman and Workman ("H&W"), and JAE are protected by the attorney-client privilege and/or attorney work product protection. See Motion at 2; Oppo. at 2. It is Amtax's position that Hartman represented the Partnership itself at all relevant times, in addition to representing JAE, and the documents in question concern Partnership business. Motion at 2. It is JAE's position that H&W did not act as general counsel or as counsel for the Partnership with respect to the appraisal or JAE's potential purchase of Amtax's limited partnership interest. Oppo. at 2.

JAE has produced documents in this litigation where Hartman identified himself in writing in at least three instances as legal counsel for both the Partnership and the General Partners (including JAE). See Exhibits 6-8 attached to Bessenger Declaration. JAE's Opposition attaches a Declaration from Hartman in which he acknowledged that "H&W represented the Partnership in certain limited capacities relating to Partnership business." Hartman Decl. at ¶ 4. However, Hartman declares that "such representation did not extend to the appraisal process at issue in this litigation." Id. Hartman concedes that written correspondence exists in which he identified himself as the legal counsel for both the Partnership and the General Partners. Id. at ¶ 5. Notwithstanding that correspondence, Hartman declares, with no evidentiary support, that "[a]t no time did H&W represent the partnership of Amtax's interest in the Partnership" or "in connection with any appraisal of Amtax's interest or in connection with JAE's potential purchase of Amtax's interest in the Partnership." Id. Hartman states that "[t]he inclusion of boilerplate language that H&W represented the Partnership was the result of my unintentional failure to remove such

language left over from prior correspondence on behalf of the partnership, and essentially an inadvertent oversight on my behalf." Id.

JAE has also produced documents in discovery where Hartman communicated with JAE's designated appraiser, Doyle, and requested changes to the appraisal, including certain discounts be applied to the value of the Apartment Complex. See Exhibits 9-13 attached to the Bessenger Declaration. Notwithstanding that JAE has produced all communications between Hartman and JAE regarding the appraisal that Hartman subsequently sent to Doyle, JAE has asserted the attorney-client privilege and attorney work product protection over the remaining communications between JAE and Hartman regarding the appraisal process and the disposition of the Apartment Complex. See Bessenger Decl. at ¶ 25; see also Oppo. at 8.

The disputed communications, which Amtax seeks to compel, include "communications [highlighted in yellow on the privilege log] between JAE and Hartman regarding the appraisal process and the disposition of the Apartment Complex that were not sent to Doyle." Bessenger Decl. at ¶ 26; see also Exhibit 4 to Motion.

**2. Summary of Amtax's Position With Respect to Whether The Attorney-Client Privilege Protects Disclosure of the Contested Documents.**

A summary of Amtax's position with respect to why it is entitled to discovery of the contested documents is as follows:

> AMTAX is a limited partner in a partnership with JAE, which serves as a general partner. AMTAX is pursuing claims in this litigation against JAE, both directly and also derivatively on behalf of the partnership. JAE is refusing to produce hundreds of relevant, responsive documents concerning an appraisal and the disposition of an apartment complex owned by the partnership by asserting the attorney-client privilege and attorney work product protection, neither of which apply to these documents. The lawyer with whom JAE was communicating in these documents, Roger Hartman, represented the partnership itself at all relevant times, in addition to representing JAE, and the documents in question concern partnership business.
>
> AMTAX as the limited partner in the partnership, is entitled to these

> partnership documents, and JAE cannot refuse to produce them by claiming a privilege with the partnership's counsel. Johnson v. Superior Court, 38 Cal.App.4th 463, 477 n.4 (1995) (Recognizing 'the principle that all partners have a right to access information and communications concerning partnership business, including communications with attorneys who are retained to give advice concerning partnership business.').

Motion at 2.

Amtax also relies on Wortham & Van Liew v. Super. Ct., 188 Cal. App. 3d 927, 932 (1987), where one partner sought to discover communications by another partner to the partnership's attorney. Motion at 8. Amtax states:

> Under California law, all partners are entitled to access to a wide range of partnership information, whether or not that information is generated under the aegis of the partnership's attorney. The attorney-client privilege will not bar disclosure of matters related to a partnership business simply because such business was conducted through a law firm. Only matters involving *purely private* or *personal interests* of one of the partners may be privileged.

Id. (citing Wortham, 188 Cal. App. 3d at 932) (citations and quotations marks omitted) (emphasis in the original).

**3. Summary of JAE's Position With Respect to Whether The Attorney-Client Privilege Protects Disclosure of the Contested Documents.**

JAE opposes Amtax's Motion on multiple grounds. First, JAE states under California law and the California Evidence Code, it is presumed that "all communications between an attorney and a client are confidential." Id. (citing Evidence Code §§ 917, 954). This broad scope is "intended to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of the law and the administration of justice.'" Oppo. at 4 (internal citations omitted).

Second, JAE argues that there is no broad waiver as AMTAX contends. Id. Specifically, JAE contends that Amtax's role as a limited partner does not entitle it to JAE's privileged communications. JAE takes issue with Amtax's reliance on Wortham "for the broad production of partnership related documents." Oppo. at 4 (citing Wortham, 188 Cal. App. 3d at 932). JAE argues that "Wortham's assumption of a 'joint-client' exception

between partners no longer applies," and that "an attorney representing a partnership no longer necessarily has an attorney-client relationship with the individual partners." Oppo. at 5 (citing Responsible Citizens v. Superior Court, 16 Cal. App. 4th 1717, 1721, 1730 (1993); Cal. Rule Prof. Conduct Rule 3-600A).[2]

Third, JAE argues the facts in Wortham and the facts in the instant case are distinguishable because Hartman and/or his law firm, H&W, "is not the general counsel and did not broadly represent the Partnership." Oppo. at 5; see also Hartman Decl. ¶¶ 1, 5. JAE argues that "H&W only performed specific acts for the Partnership as directed. Oppo. at 5; see also Hartman Decl. at ¶¶ 4, 5. Hartman declares that although H&W has represented JAE for more than thirty years in connection with its corporate matters and Partnership activities, it has "represented the Partnership in certain limited capacities relating to Partnership business." Hartman Decl. at ¶¶ 2, 4. "Each issue of Partnership representation has been in response to a specific request from JAE in its capacity as general partner of the Partnership." Id. at ¶ 4. Here, JAE argues, "H&W only represented the Partnership with respect to six third-party communications [which were already

---

[2] JAE cites to California Rules of Professional Conduct, former 3-600, which governed the representation of an organization at the time some of the events at issue in this case occurred. See Cal. Rules of Prof. Conduct, former Rule 3-600 [effective September 14, 1992 to October 31, 2018]. The Supreme Court has since approved new Rules of Professional Conduct effective November 1, 2018. The current rule governing the representation of an organization, Rule 1.13, contains language that is substantially identical to the subdivisions of former Rule 3-600 that we cite here. See Cal. Rules of Prof. Conduct. Rule 1.13(a) and (f).

Subdivision (A) of the former Rule 3-600 provided, in relevant part: "In representing an organization, a [lawyer] shall conform his or her representation to the concept that the client is the organization itself…." Subdivision (D) further provided that, "In dealing with an organization's directors, officers, employees, members, shareholders, or other constituents, a [lawyer] shall explain the identity of the client for whom the [lawyer] acts, whenever it is or becomes apparent that the organization's interests are or may become adverse to those of the constituent(s) with whom the [lawyer] is dealing." See Cal. Rules of Prof. Conduct, former Rule 3-600 [effective September 14, 1992 to October 31, 2018].

produced].” Oppo. at 5 (citing Bessenger Decl. Ex. 3[3], entries 7, 86, 173, 259, 270, 442). Further JAE argues that the “advice JAE received from J&W relating to its obligations in connection with those communications are a small subset of the documents that Amtax seeks [] and are *wholly unrelated* to the hundreds of privileged ‘appraisal documents.’” Oppo. at 5 (emphasis in original).

Fourth, JAE argues that the Corporation Code has been amended to expressly state that a Partnership is an entity separate from its partners. Oppo. at 6 (citing Cal. Corp. Code § 16201). Accordingly, JAE argues that “unlike Wortham or Johnson, privileged communications between JAE and its counsel that are not partnership documents – even if they ‘affect the partnership’ – remain privileged and not subject to disclosure.” Id.

Finally, JAE does not dispute “that Amtax as a limited partner may examine certain of the Partnership’s books or records, (LPA § 12), or records relating to the ‘operation’ of the Apartment Complex, such as rent roles, inspection issues, etc.” Oppo. at 6. However, JAE argues that the Partnership Agreement does not require broad disclosure of all documents including “JAE’s privileged communications with its own attorney, H&W, about the advice H&W gave to it.” Oppo. at 6.

**4. Summary of Arguments Made in Amtax’s Reply.**

In its Reply, Amtax argues that as an initial matter, the contested documents are relevant to its counterclaims against JAE for breach of contract and for violating its fiduciary duties to the Partnership and Amtax. Reply at 1. Amtax further argues that “JAE has failed to show that these documents should be withheld from Amtax.” Id. (citing Liew v. Breen, 640 F.2d 1046, 1049 (9th Cir. 1981); Garcia v. City of El Centro, 214 F.R.D. 587, 591 (S.D. Cal. 2003)). Amtax states that “the evidence establishes that the Law Offices

[3] Exhibit 3 is a meet and confer letter that does not contain the entries referenced by JAE in its Opposition, but it appears to the Court that JAE intended to cite to the Supplemental Privilege Log, at Exhibit 4. Bessenger Decl. Exs. 3, 4.

of Hartman and Workman, and its partner Roger Hartman, represented the Partnership in connection with the documents that Amtax seeks from JAE." Reply at 2. Amtax cites to "numerous contemporaneous communications[4] [in which Hartman] stated that he was representing the Partnership, and the court should reject Hartman's belated effort to brush off his own statements as an 'inadvertent oversight.'" Id. (citing Hartman Decl. at ¶ 5).

Amtax also takes issue with Hartman's claim made in his Declaration that he did not represent the Partnership, which Amtax states is "directly contradicted by his own contemporaneous written representations and should be rejected." Reply (citing Bessenger Decl. at ¶¶ 15-17); see also Exhibits 6-8. In sum, Amtax argues that "the language in Hartman's numerous letters is not 'boilerplate,' nor is it a mere 'inadvertent oversight' that was left over from prior correspondence." Reply at 4 (citing Hartman Decl. at ¶ 5).

Finally, Amtax disputes JAE's argument that the appraisal process does not fall within the scope of H&W's representation of the Partnership noting that the appraisal process is specifically mandated by the LPA to determine the value of Amtax's ownership interest in the Partnership, and thus clearly involves Partnership business. Reply at 4. Amtax argues that notwithstanding JAE's characterizations, the LPA does not provide for the appraisal process to be adversarial, but rather independent. Id. at 5.

**5. Legal Standard on Privilege**

In diversity actions, questions of privilege are controlled by state law. See Fed. R. Evid. 501; see also Liew v. Breen, 640 F.2d 1046, 1049 (9th Cir. 1981). It is the burden of the party claiming the privilege to show that it applies. Liew, 640 F.2d at 1049. California recognizes an attorney-client privilege, which applies to confidential communications between client and lawyer during the course of the attorney-client relationship. See Cal. Evid. Code § 952.

[4] See Exhibits 6-8 attached to Bessenger Declaration.

However, California Evidence Code section 962 provides an exception to the privilege; specifically, the section provides that:

> Where two or more clients have retained or consulted a lawyer upon a matter of common interest, none of them, nor the successor in interest of any of them, may claim a privilege under this article as to a communication made in the course of that relationship when such communication is offered in a civil proceeding between one of such clients (or his successor in interest) and another of such clients (or his successor in interest).

See Cal. Evid. Code 962. California courts have engaged in detailed analysis, including of the factual details of the relationship between the parties and counsel and the policy rationales behind the competing interests at issue, to decide whether a party has established the "joint client" *exception* to the attorney-client privilege. See, e.g., Wortham, 188 Cal. App. at 932; see also McCain v. Phoenix Resources, Inc., 185 Cal. App. 3d 575 (1st Dist. 1986).

In Wortham, the court found that "[i]n the context of the representation of a partnership, the attorney for the partnership represents all the partners as to matters of partnership business." 188 Cal. App. at 932. Subsequent cases, however, have acknowledged that the attorney-client relationship between an attorney for the partnership and the individual partners is not always a bright line. See, e.g., Responsible Citizens, 16 Cal. App. 4th at 1731. In Responsible Citizens, the Court found:

> Even though representation of a partnership might ordinarily be simply representation of the entity, individual facts and circumstances might produce a different result. There is no bright line, [] indicating that a partnership attorney *always* represents the partners, or that he or she never does.

Id. (emphasis in original). Responsible Citizens held that, at least under some circumstances, an attorney's representation of a partnership may create an implied attorney-client relationship with the individual partners. The Court set forth a non-exhaustive list of "factors which might support, or undercut, implication of an attorney-client relationship with an individual partner in any particular case." Id. at 1732.

The factors suggested in Responsible Citizens are as follows:

> The type and size of the partnership obviously have a bearing…So do the nature and scope of the attorney's engagement by the partnership. The kind of extent of contacts, if any, between the attorney and the individual partner might be important factors. The same is true as to the attorney's access to information (e.g., partnership financial information) relating to the individual partner's interests. . . .
>
> [P]rimary attention should be given to whether the totality of the circumstances, including the parties' conduct, implies an agreement by the partnership attorney not to accept other representation adverse to the individual partner's personal interests. . . . [O]ne of the most important facts involved in finding an attorney-client relationship is the expectation of the client based on how the situation appears to a reasonable person in the client's position.

Id. at 1733 (internal citations and quotations omitted). The Responsible Citizens multi-factor test has been applied in subsequent cases. See, e.g., Johnson, 38 Cal. App. 4th at 476-477 (applied the Responsible Citizens multi-factor test to assess whether there was sufficient evidence to support a finding that the attorney for the partnership had an implied-attorney client relationship with each of the partners); see also Sky Valley Ltd. Partnership v. ATX Sky Valley, Ltd., 150 F.R.D. 648 (N.D. Cal. 1993).

In Sky Valley, defendants asserted that they and plaintiffs were "joint clients" of the law firm and therefore were entitled to all project-related communications between plaintiffs and the law firm during that period. 150 F.R.D. at 650. In Sky Valley, the court noted that "[w]hile analyzing factors such as [the Responsible Citizens factors], and before deciding on the ultimate issue, courts should take fully into account the ultimate policy rationales for the attorney-client privilege, the joint client privilege, and the joint client exception to the privilege, specifically considering the implications of each possible resolution of the issue for those policy rationales." Id. at 653. The Court noted that the principal purpose of the joint client privilege is to encourage "the fullest possible communication" between joint clients, and between joint clients and their jointly-retained lawyer. Id. The Court further noted that "[t]he principal purposes of the joint client *exception* to the privilege, on the other hand, are (1) to prevent unjustifiable inequality in

access to information necessary to resolve fairly disputes that arise between parties who were in the past joint clients when the disputes relate to matters that were involved in the joint representation and (2) to discourage abuses of fiduciary obligations and to encourage parties to honor any legal duties they had to share information related to common interests." Id. Although in Sky Valley, the Court ultimately held that it was not reasonable for defendants to believe that Plaintiff's lawyer was also defendant's lawyer on matters related to the project, one of the integral factors the Court considered was "the implications for the two possible rulings on th[e] [discovery] motion for the policies that inform attorney-client and joint client privilege doctrine. . . ." Id. at 664. Notably, in that case, the contract established the relationship between the two parties and "[Defendant] was entitled to only a very limited kind of information from [Plaintiff]: primarily information related to accounting of profits and insurance." Id. Moreover, the Court found that "upholding [Defendant's] invocation of the joint client exception would not prevent unjustifiable inequality of access to information necessary to resolve the project-related disputes between the parties." Id.

**6. Analysis**

Here, the Court's task—following the guidelines from Johnson and Responsible Citizens is to determine whether the record contains sufficient facts to permit the Court to reach a conclusion that Hartman had no attorney-client relationship with, and hence no duty to Amtax.[5] See Johnson, 38 Cal. App. 4th at 477 (citing Responsible Citizens, 16 Cal. App. 4th at 1733).

The first factor, the size of the partnership, weighs in support of an attorney-client relationship. Responsible Citizens, 16 Cal. App. 4th at 1732-1733; see also Johnson, 38 Cal. App. 4th at 476 ("The argument is that representation of [an entity with] few members

[5] The Court overrules JAE's argument on the basis of the Corporations Code. Oppo. at 6. Notably, JAE cites no authority (and the Court is unaware of any such authority) to support JAE's argument that the factors herein are no longer to be considered in light of the amended Corporations Code section. Id.

may suggest an individual representation of the members."). Here, the Partnership was small with Amtax as the Limited Partner and JAE as the Co-General Partner.

The second factor is the nature and the scope of Hartman's relationship with Amtax as a Limited Partner in the Partnership, which, for the reasons set forth below, also weigh in support of an attorney-client relationship. Responsible Citizens, 16 Cal. App. 4th at 1732-1733. As an initial matter, Hartman repeatedly identified himself as legal counsel for both the Partnership and the General Partners, in connection with the possible disposition of the Apartment Complex, Amtax's potential exit from the Partnership, and the appraisal process mandated by the LPA. See Exs. 6-8 to Bessenger Decl. Specifically, on September 21, 2018, Hartman wrote a letter to Colliers International regarding an offer to purchase the Apartment Complex, [REDACTED] Ex. 7 to Bessenger Decl.

In a separate communication, approximately one month later, on October 11, 2018, Hartman wrote a letter to outside legal counsel for Amtax regarding the appraisal process, [REDACTED]. Ex. 8 to Bessenger Decl. Similarly, in a separate communication, approximately one year later, on February 26, 2019, Hartman wrote a letter to Novogradac, Amtax's chosen appraisal company, regarding the appraisal process, and [REDACTED] Ex. 6 to Bessenger Decl. Additionally, Hartman concedes that he "represented the Partnership in certain limited capacities relating to Partnership business." Hartman Decl. at ¶ 4. Further, the LPA sets forth the contractual obligations of the parties for Amtax to exit the Partnership and the appraisal process of the Apartment Complex, so it would have been reasonable for Amtax to consider communications regarding these subject matters as relating to Partnership business.[6] Section 7.4.I of the LPA. Indeed, there is no evidence in the record that during the relevant

---

[6] JAE's argument that the appraisal process is "adversarial" lacks evidentiary support. See Oppo. at 5.

time period JAE (or Hartman) ever communicated to Amtax that Hartman was representing JAE in an individual capacity in connection with the appraisal and/or disposition of the Apartment Complex. On the contrary, Hartman made multiple written representations that he represented the Partnership.

The only evidence that JAE cites to support the argument that Hartman (and/or H&W) never represented the Partnership with respect to the appraisal or with respect to JAE's fiduciary duties when responding to certain communications regarding possible purchase of the Apartment Complex are citations to Hartman's Declaration. However, the Court finds that Hartman's Declaration is undermined by the record. See, e.g., Hartman Decl. at ¶¶ 4-6. Hartman broadly concludes that "H&W, however, did not represent the Partnership in connection with the appraisal process or in connection with JAE's potential purchase of Amtax's interest in the Partnership." Id. at ¶ 5. However, as Hartman concedes, he identified himself, in writing, in at least three instances as legal counsel for both the Partnership and the General Partners. Id.; see also Exhibits 6-8 attached to Bessenger Declaration. Hartman's attempt to gloss over these three separate written representations as an "inadvertent oversight" where he mistakenly included "boilerplate language" does not suffice. Hartman Decl. at ¶ 5.

The third factor, the kind and extent of contacts, between the attorney and Amtax undercuts the implication of the implied attorney-client privilege between Amtax and Hartman. Responsible Citizens, 16 Cal. App. 4th at 1732-1733. Amtax has not presented any evidence that it communicated directly with Hartman; on the contrary, Hartman states that "[e]ach issue of Partnership representation has been in response to a specific request from JAE in its capacity as general partner of the Partnership." Hartman Decl. at ¶ 4.

The fourth factor, the attorney's access to information (e.g., partnership financial information) relating to the individual partner's interests also weighs in support of an attorney-client relationship. Responsible Citizens, 16 Cal. App. 4th at 1732-1733. Given that Hartman was negotiating Amtax's sale of its interest in connection with the disposition

of the Partnership, he had access to the partnership financial information, including Amtax's interests. Oppo. at 7.

In sum, the Court finds that the totality of the circumstances, including the parties' conduct, implies an agreement by Hartman not to accept other representations adverse to Amtax's personal interests. Responsible Citizens, 16 Cal. App. 4th at 1733. In other words, the Court finds that based on the facts in this case, it was reasonable for Amtax to believe that Hartman would protect Amtax's individual interests as a member of the Partnership.

Finally, considering the policy rationales set forth in the Sky Valley case, the Court notes that applying the joint client exception here would "prevent unjustifiable inequality in access to information necessary to resolve fairly disputes that arise between parties who were in the past joint clients when the disputes relate to matters that were involved in the joint representation and (2) to discourage abuses of fiduciary obligations and to encourage parties to honor any legal duties they had to share information related to common interests." 150 F.R.D. at 653; see also Wortham, 188 Cal. App. 3d at 931 ("although the attorney-client privilege is important, even more important is that relationship which the privilege is intended to protect, namely the relationship of an attorney to his client and his fiduciary obligations to the client"). If JAE were allowed to invoke the attorney-client privilege with respect to the disputed communications between JAE and Hartman, this would effectively allow JAE to selectively assert privilege to strategically serve its own interests in this litigation.

**7. Conclusion**

Accordingly, and for the reasons stated herein, the Court finds that JAE has not met its burden to withhold the disputed communications between JAE and Hartman on the basis of attorney-client privilege. The Court finds good cause to **GRANT** Amtax's Motion to

Compel the disputed documents.[7] It is hereby **ORDERED** that JAE produce the documents highlighted in yellow on the privilege log attached as Exhibit 4 to the Declaration of Craig Bessenger in support of AMTAX's Motion to Compel. JAE is **ORDERED** to produce these documents on or before **May 14, 2020**.

**IT IS SO ORDERED**.

Dated: May 7, 2020

Honorable Linda Lopez
United States Magistrate Judge

[7] In light of the Court's ruling herein, it is unnecessary to rule on the second issue raised in Amtax's Motion regarding whether JAE waived any potential privilege or work product protection.