KING & SPALDING LLP
ERIC S. PETTIT, STATE BAR NO. 234657
CRAIG H. BESSENGER, STATE BAR NO. 245787
LAURA RADEN, STATE BAR NO. 326627
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone:   (213) 443-4355
Facsimile:   (213) 443-4310
Email: epettit@kslaw.com
Email: cbessenger@kslaw.com
Email: lraden@kslaw.com

Attorneys for Defendant and Counter-Plaintiff
AMTAX Holdings 2001-XX, LLC

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAE PROPERTIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>AMTAX HOLDINGS 2001-XX, LLC,<br><br>Defendant.<br>_____<br>AMTAX HOLDINGS 2001-XX, LLC<br>and VICTORIA HEIGHTS LTD.,<br><br>Counter-Plaintiffs,<br><br>v.<br><br>JAE PROPERTIES, INC.,<br><br>Counter-Claim Defendant. | Case No. 19cv2075-JAH-LL<br><br>The Honorable John A. Houston<br><br>**[REDACTED] NOTICE OF MOTION AND MOTION OF DEFENDANT AND COUNTER-PLAINTIFF AMTAX HOLDINGS 2001-XX, LLC FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[Filed concurrently with Declarations of Craig H. Bessenger and Christopher Blake and accompanying Exhibits]**<br><br>**Judge:**   **Hon. John Houston**<br>**Date:**    **November 4, 2020**<br>**Time:**    **10:30 a.m.**<br>**Crtrm.:**   **13B**<br><br>Trial Date:   None set |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT**, on Wednesday, November 4, 2020 at 10:30 A.M., Defendant and Counter-Plaintiff AMTAX Holdings 2001-XX, LLC ("AMTAX") by and through its counsel of record, will ask the Court to enter summary judgment in AMTAX's favor and against Plaintiff and Counter-Defendant JAE Properties, Inc. ("JAE") for the reasons set forth in this motion (the "Motion").

This Motion is brought pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7.1, on the following grounds:

- JAE's declaratory relief claim contradicts the plain language of the controlling partnership agreement.
- JAE violated its contractual duties to AMTAX and its fiduciary duties to AMTAX and the partnership for which JAE is the Co-General Partner.
- AMTAX has the right to remove JAE from its position as Co-General Partner based on JAE's breach of its contractual and fiduciary duties.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Christopher Blake and Craig H. Bessenger and exhibits thereto, the Joint Statement of Undisputed Facts, all of the pleadings and other documents on file in this case, all other matters of which the Court may take judicial notice, and any further argument or evidence that may be received by the Court at the hearing.

DATED: September 14, 2020

KING & SPALDING LLP
ERIC S. PETTIT
CRAIG H. BESSENGER
LAURA RADEN


By: _/s/ Eric S. Pettit_
ERIC S. PETTIT
Attorneys for Defendant and Counter-Plaintiff AMTAX Holdings 2001-XX, LLC

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ........................... 2

    A.   JAE and AMTAX Become Partners ........................................... 2

    B.   The LPA Establishes JAE's Duties and AMTAX's Rights ........... 2

    C.   JAE Summarily Rejects Unsolicited Third Party Purchase Offers ............. 5

    D.   AMTAX Exercises Its Exit Right Under Section 7.4.I of The LPA ........... 6

    E.   JAE Manipulates the Appraisal Process ........................................ 6

    F.   JAE Persuades Doyle to Reduce His Valuation Drastically ....................... 7

    G.   JAE Explores A Refinance Based on a Valuation of $27,651,000 .............. 9

    H.   The Appraisers Disagree on the Value of AMTAX's Interest ................... 9

    I.   Instead of Completing the Appraisal Process, JAE Sues AMTAX ........... 10

III.    STANDARD OF REVIEW ................................................................. 11

IV.     AMTAX IS ENTITLED TO SUMMARY JUDGMENT ON JAE'S DECLARATORY RELIEF CLAIM ................................................. 12

    A.   JAE Has No Right to Sell the Apartment Complex or Purchase AMTAX's Interest in the Partnership ........................................ 13

        1.   JAE's Proffered Interpretation Contradicts the LPA ................... 13

        2.   JAE's Election Right Under Section 7.4.I Is Constrained By Its Fiduciary Duties ............................. 15

    B.   JAE Does Not Have "Negotiating Ability When Determining if a Discount for Partial Interest Valuation Should Be Applied" .................. 16

        1.   JAE's Claim is Fatally Vague ........................................ 16

        2.   Section 7.4.I Does Not Give JAE "Negotiating Ability" ........................................ 17

    C.   The LPA Does Not Require the Imposition of Discounts for Lack of Marketability or Control in Valuing AMTAX's Interest .......................... 18

        1.   JAE's Claim Is Premature ........................................ 18

        2.   JAE's Proffered Interpretation Seeks to Rewrite the LPA ........................................ 19

        3.   JAE's Interpretation Leads to an Unfair and Absurd Result ........................................ 21

V.      THE COURT SHOULD GRANT SUMMARY JUDGMENT FOR

AMTAX HOLDINGS 2001-XX, LLC'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

AMTAX ON ITS DIRECT AND DERIVATIVE COUNTERCLAIMS ............22

    A.     JAE Breached Its Fiduciary Duties To AMTAX and the Partnership.......22

    B.     JAE Breached The Victoria Heights LPA....................................24

    C.     AMTAX Is Entitled to Remove JAE as the Partnership's Co-General Partner Based on JAE's Breaches of Its Fiduciary Duties and the LPA .........................................................................25

MPA ISO AMTAX HOLDINGS 2001-XX, LLC'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Cases**          **Page(s)**

*AFC-Low Income Hous. Credit Partners-I v. Poz Vill. Dev., Inc.*,
BC237721, 2012 WL 3792549 (Cal. Ct. App. Aug. 31, 2012) ................................ 20

*AFC-Low Income Hous. Partners v. POZ Vill. Dev., Inc.*,
BC247349, 2014 WL 3665621 (Cal. Ct. App. July 24, 2014) .................................. 20

*Alameda Cty. Flood Control v. Dep't of Water Res.*,
213 Cal.App.4th 1163 (2013) ................................................................................... 12

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .................................................................................................. 12

*Appalachian Ins. Co. v. McDonnell Douglas Corp.*,
214 Cal.App.3d 1 (1989) .......................................................................................... 22

*Armstrong Petroleum Corp. v. Tri–Valley Oil & Gas Co.*,
116 Cal.App.4th 1375 (2004) ................................................................................... 24

*California Nat'l Bank v. Woodbridge Plaza LLC*,
164 Cal.App.4th 137 (2008) ............................................................................... 21, 22

*Everest Investors 8 v. McNeil Partners*,
114 Cal.App.4th 411 (2003) ........................................................................... 15, 23, 24

*F.B.T. Prods., LLC v. Aftermath Records*,
621 F.3d 958 (9th Cir. 2010) .................................................................................... 12

*Fed. Ins. Co. v. Newby*,
No, C-12-5084 MMC, 2013 WL 1285140 (N.D. Cal. Mar. 28, 2013) .............. 18, 19

*Founding Members of the Newport Beach Ctry Club v. Newport Beach
Cntry Club, Inc.*,
109 Cal.App.4th 944 (2003) ..................................................................................... 12

*Hands on Video Relay Servs., Inc. v. Am. Sign Language Servs. Corp.*,
No. CIV. S -09-996 LKK, 2009 WL 8691614 (E.D. Cal. Aug. 12,
2009) ......................................................................................................................... 15

*Klamath Water Users Protective Ass'n v. Patterson*,
204 F.3d 1206 (9th Cir. 1999) .................................................................................. 12

*Knox v. Dean,*
    205 Cal.App.4th 417 (2012) .................................................................22

*Leff v. Gunter,*
    33 Cal.3d 508 (1983) ..........................................................................23

*MedImmune, Inc. v. Genentech, Inc.,*
    549 U.S. 118 (2007) ............................................................................16

*Series AGI W. Linn of Appian Grp. Inv'rs DE, LLC v. Eves,*
    217 Cal.App.4th 156 (2013) .................................................................19

*Southern Cal. Gas Co. v. City of Santa Ana,*
    336 F.3d 885 (9th Cir. 2003) ...............................................................12

*State of California v. Continental Ins. Co.,*
    55 Cal.4th 186 (2012) .........................................................................12

*Sylver v. Mathis,*
    No. 2:09-CV-00855-RLH-LR, 2011 WL 1541318 (D. Nev. Apr. 22,
    2011) ...................................................................................................13

*Tuma v. Eaton Corp.,*
    No. 08CV792-BTMC CAB, 2011 WL 3174859 (S.D. Cal. July 25,
    2011) ...................................................................................................19

*United Bhd. of Carpenters & Joiners of Am., Lathers Local 42-L v. United*
    *Bhd. of Carpenters & Joiners of Am.,*
    73 F.3d 958 (9th Cir. 1996) .................................................................12

*Veoh Networks, Inc. v. UMG Recordings, Inc.,*
    522 F. Supp. 2d 1265 (S.D. Cal. 2007).............................................16, 17

*Zalkind v. Ceradyne, Inc.,*
    194 Cal.App.4th 1010 (2011) ..............................................................14

**Statutes**

Cal. Civ. Code § 1638 ...............................................................................12

Cal. Corp. Code § 15616(b) ......................................................................22

Cal. Corp. Code § 15910 ..........................................................................22

Cal. Corp. Code § 16404(a) ......................................................................23

26 U.S.C. § 42 ................................................................................................ 2

**Other Authorities**

Fed. R. Civ. P. 56(a) .............................................................................. 11, 12

# I.   INTRODUCTION

Plaintiff and Counter-Defendant JAE Properties, Inc. ("JAE") is the Co-General Partner of Victoria Heights, Ltd. (the "Partnership"), which owns a multi-family affordable housing property located in Riverside, California (the "Apartment Complex").  Defendant and Counter-Plaintiff AMTAX Holdings 2001-XX, LLC ("AMTAX") is the Investor Limited Partner and 99.9% owner of the Partnership, which is governed by an Amended and Restated Agreement of Limited Partnership dated effective as of August 27, 2001 (the "Partnership Agreement" or "LPA").

This lawsuit is the culmination of JAE's improper efforts to abuse its authority as the Partnership's Co-General Partner in order to maximize its own economic position, while disregarding both its fiduciary duty to look out for the best interests of the Partnership and its contractual obligation to honor the terms of the Partnership Agreement.  In pursuit of its self-serving objective to "drive down" the value of its partner AMTAX's interest in the Partnership, JAE summarily rejected two unsolicited and attractive third party offers to purchase the Apartment Complex, without any consideration as to whether it was in the Partnership's best interests to pursue or—at a bare minimum—explore those offers.  Then, after AMTAX exercised its contractual right to exit the Partnership, JAE first manipulated, then completely abandoned, the appraisal process that the parties were required to undertake to determine the price JAE would have to pay to purchase AMTAX's interest.  Indeed, rather than complete the appraisal process mandated by the Partnership Agreement, JAE instead elected to short circuit the process by initiating this lawsuit.

JAE's complaint for declaratory relief seeks a number of judicial determinations regarding the parties' respective rights and obligations under the LPA and the methodology that—according to JAE—the appraiser must use to determine the fair market value of AMTAX's interest in the Partnership.  As explained below, JAE's declaratory relief claim should be dismissed in its entirety and with prejudice because it is inconsistent with the plain language of the Partnership Agreement and improperly

asks the Court to invade the province of the appraiser to determine the appropriate methodology for valuing AMTAX's interest.  In addition, AMTAX is entitled based on JAE's conduct to summary judgment on its counterclaims for breach of contract and breach of fiduciary duty, and to a judicial declaration that AMTAX has a contractual right to remove JAE as the Partnership's Co-General Partner based on those breaches.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.      JAE and AMTAX Become Partners

The Partnership was formed on or about February 2, 2000, and JAE and AMTAX joined the Partnership as Co-General Partner and Investor Limited Partner, respectively, on August 27, 2001.  (*See* Declaration of Christopher Blake ("Blake Decl."), ¶ 4, Ex. 1 ("LPA").) [1]  As set forth in the Partnership Agreement, the Partnership was formed for the purpose of developing, financing, constructing, rehabilitating, owning, maintaining, operating, and selling or otherwise disposing of the Apartment Complex.  (*See* LPA at 1 (Preliminary Statement) and 18 (§ 2.3).)

JAE invested less than one thousand dollars in the Partnership, and holds an ownership interest of less than one percent.  (LPA at 76 (Sch. A).)  AMTAX, by contrast, contributed virtually all the Partnership's capital, and accordingly holds a 99.9% ownership interest in the Partnership.  (*Id.*)  As a result, in addition to other benefits provided under the LPA, AMTAX is allocated 99.9% of the profits, losses, and federal tax credits [2] generated by the Apartment Complex.  (LPA at 29 (§ 6.1.A).)

### B.      The LPA Establishes JAE's Duties and AMTAX's Rights

The rights and obligations of JAE and AMTAX in their respective capacities as Co-General Partner and Investor Limited Partner are set forth in the Partnership

---

[1] The Partnership has two other partners, Managing General Partner Central Valley Coalition for Affordable Housing and Special Limited Partner Protech 2001-B, LLC, but neither is a party here, as this dispute is between JAE and AMTAX only.

[2] The Apartment Complex generated federal low-income housing tax credits over a fifteen-year period under Section 42 of the Internal Revenue Code, 26 U.S.C. § 42. These tax credits were exhausted before the events at issue in this lawsuit transpired.

Agreement, which is governed by California law. (LPA at 16 (Art. I), 64 (§ 13.4).)  As Co-General Partner, JAE is responsible for operating the Apartment Complex, and receives distributions, fees, and other benefits for the various services it provides to the Partnership.  (*See, e.g., id.* at 31, 41, 48 (§§ 6.2, 7.4, 7.10).)  Although the General Partners, including JAE, have "full, complete and exclusive discretion to manage and control the business of the Partnership" (*id.* § 7.3.A), the Partnership Agreement includes provisions to ensure that AMTAX's substantial capital investment is protected.

First, JAE must use its "best efforts to carry out the purposes, business, and objectives of the Partnership" (*id.* at 39 (§ 7.4.A)), and owes fiduciary duties both to the Partnership (*id.* at 41 (§ 7.4.F) ("The General Partners shall have fiduciary responsibility for the safekeeping and use of all funds and assets of the Partnership")) and to AMTAX as the Investor Limited Partner (*id.* (§ 7.4.G) ("No General Partner shall contract away the fiduciary duty owed at common law to the Limited Partners")).

Second, AMTAX, as the Investor Limited Partner, is empowered to remove any General Partner, including JAE, based on, *inter alia*:  "misconduct, or failure to exercise reasonable care with respect to any material matter in the discharge of its duties and obligations as General Partner;" or a "violat[ion] of any rights, powers, duties, representations or warranties as set forth in Article VII" or "any material provision" of the Partnership Agreement.  (LPA at 24 (§ 4.5.A(iv)(1) and (3)).)

Third, JAE cannot commit the Partnership to any capital transaction—including a sale of the Apartment Complex or a refinance of the Partnership's debt—without AMTAX's consent.  (LPA at 35-36 (§ 7.1.B(viii)).)  ███████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████████████████████.  (Declaration of Craig Bessenger ("Bessenger Decl."), ¶ 2, Ex. A (Solomon Deposition) at 180:15-20.)

Finally, and most importantly for purposes of this dispute, following the end of the fifteen-year period in which the Apartment Complex generates federal tax credits,

1    AMTAX has an absolute right to exit the Partnership by requesting that JAE either "(i)

2    sell the Apartment Complex to a third party, or (ii) purchase or arrange for a third party

3    to purchase, the Limited Partners [*sic*] Interests[3] in the Partnership for the fair market

4    value of the Interests. . . ." (LPA at 41 (§ 7.4.I).)[4]  Only after AMTAX exercises its exit

5    right under Section 7.4.I may JAE "determine which course of action it desires to

6    utilize" with respect to AMTAX's exit from the Partnership.  (*Id.*)

7         Regardless of which mechanism JAE selects, AMTAX is entitled under the LPA

8    to receive fair market value for its interest, which is determined as follows:

> Fair market value shall be determined by the Investor Limited Partner[5] and
> the Administrative General Partner,[6] as the case may be, each retaining an
> appraisal from a qualified MAI appraiser.  In the event that the two
> appraisers do not agree on the fair market value, the appraisers shall agree
> on the appointment of a third appraiser, whose appraisal shall be binding on
> the parties, *provided, however, that the Investor Limited Partner shall not
> be obligated to Consent to a sale in the event that it is not satisfied with the
> purchase price so determined by the foregoing process or by the other terms
> of the purchase and sale.*

15   (*Id.* (emphasis added).)  Thus, while JAE is bound by and must honor the third

16   appraiser's fair market value determination, AMTAX is *not* required to exit the

17   Partnership if it is unsatisfied with the purchase price.  Moreover, there is nothing in

---

19   [3] The Partnership Agreement defines "Interest" as "all the interest of a Partner in Cash
20   Flow, Capital Proceeds and other distributions, capital, Profits or Losses, Tax Credits,
     and otherwise in the Partnership, including all allocations and distributions and all
21   rights under this Agreement . . . ." (LPA at 10 (Art. I).)

22   [4] JAE, by contrast, does not "have the right to withdraw or retire voluntarily from the
     Partnership or sell, assign, or encumber his or her Interest without the Consent of the
23   Investor Limited Partner and, if required, and Requisite Approvals." (LPA at 51 (§
24   8.1.A).)

25   [5] Section 7.4.I references both an "Investor Limited Partner" and an "Investment
     Limited Partner," but both terms refer to AMTAX.  (*See* LPA at 11 (Art. I).)

26   [6] Section 7.4.I includes references to both the "Managing General Partner" and a non-
27   existent "Administrative General Partner."  AMTAX understands that the parties are in
     agreement that all references to a "General Partner" in Section 7.4.I of the Partnership
28   Agreement refer to JAE, as there is no reasonable contrary interpretation.

1   Section 7.4.I or elsewhere in the LPA suggesting that the Investor Limited Partner's

2   exit rights expire once they have been exercised, or prohibiting AMTAX—or any other

3   Investor Limited Partner—from making subsequent requests under Section 7.4.I.

4          **C.   JAE Summarily Rejects Unsolicited Third Party Purchase Offers**

5        In early 2018, after the fifteen-year tax credit period had lapsed, AMTAX's

6   representative Chris Blake and JAE's principal Edmund Johnson ███████████

7   ███████████████████████████████ (*See* Bessenger Decl., ¶ 3,

8   Ex. B (JAE Deposition) at 66:24-67:16 (████████████████████

9   ██████████████████████████████████

10   ██████).) ████████████████████████████

11   ███████████ (Blake Decl., ¶ 6, Ex. 2 (04/18/18 Blake email to Johnson); ¶ 7, Ex. 3

12   (05/10/18 email ██████████████████████).)  JAE, however,

13   ████████████████████████████████████.

14        In May 2018, ██████████████████████████████

15   █████████████████████████████████████

16   █████████████████. (Blake Decl., ¶ 8, Ex. 4.) ██████████

17   ████████████████████████████████████████

18   ████████████████████████████████████████

19   ████████████████████████████████████████

20   (Bessenger Decl., ¶ 3, Ex. B at 78:3-18.)  JAE also informed AMTAX that ████

21   ███████████████████████████████████. (*Id.* at

22   83:9-15; Blake Decl., ¶ 10, Ex. 5 at 2-3 (███████████████████

23   █████████████████████).)  On June 4, 2018, AMTAX's representative

24   Chris Blake ████████████████████████████

25   ████████████████ (*Id.*, ¶ 11, Ex. 6.)

26        The Partnership subsequently ████████████████████

27   ████████████████████████████████████████

28   ████████████████████████████████████

1   ████████ (Blake Decl., ¶ 12, Ex. 7; ¶ 13, Ex. 8.)  JAE, however, ████

2   ██████████████████████████████████████████████████

3   ██████████████████████████████████████████████████

4   ████████████████████████████████████████████████████

5   ██████████████████████████████████████████████████

6   ████████ (Bessenger Decl., ¶ 3, Ex. B at 105:3-16.)  Indeed, JAE ███

7   █████████████████████████████████████████████████ (*id.*

8   at 79:15-23, 81:15-21), and ██████████████████████████████

9   ███████████████████████████████████████████████

10   ████████████████████████████████████████████████████

11   ████████████████████████████████████████████

12   ███████████████████ (*Id.* at 135:3-8.)

13   **D.**   **AMTAX Exercises Its Exit Right Under Section 7.4.I of the LPA**

14   In light of JAE's ████████████████████████████████

15   ████████████████████████████████████████████████████

16   ███████████████████████████████████████████████

17   ████████████████████████████████████████████████████

18   ████████████████████████████████████ (Blake Decl., ¶ 14,

19   Ex. 9.)  Notwithstanding JAE's testimony that ████████████████

20   █████████ (Bessenger Decl., ¶ 3, Ex. B at 105:3-16), JAE ███

21   ██████████████████████████████████████████

22   ████████████████████████████████████████████

23   █████████████████████████████████ (*Id.*, ¶ 4, Ex. C

24   (10/11/18 Hartman letter to Bessenger).)

25   **E.**   **JAE Manipulates the Appraisal Process**

26   Unbeknownst to AMTAX, ██████████████████████████

27   ██████████████████████████████████████████████

28   ████████████████████████████████████████████



[redacted] (Bessenger Decl., ¶ 6, Ex. E (05/31/18 Hartman email to Doyle).) Around that same time, JAE [redacted] (*Id.*, ¶ 3, Ex. B at 177:25-178:4, 185:15-23.)

JAE never [redacted] Moreover, [redacted] (Bessenger Decl., ¶ 7, Ex. F), [redacted] (*id.*, ¶ 8, Ex. G (09/13/18 Hartman letter to Bessenger).) As JAE [redacted] (Bessenger Decl., ¶ 3, Ex. B at 172:7-14.)

Rather than [redacted] (Bessenger Decl., ¶ 9, Ex. H (01/18/19 Johnson email to Alley).)

**F. JAE Persuades Doyle to Reduce His Valuation Drastically**

A review of [redacted] In what appears to be Doyle's [redacted]



[redacted] (Bessenger Decl., ¶ 10, Ex. I at 5-6.) For the next six months, however, JAE—[redacted] Hartman [redacted] (*Id.*, ¶ 12, Ex. K (11/15/18 Hartman email to Doyle).)

Acting on JAE's behalf, [redacted] (Bessenger Decl., ¶ 9, Ex. H):

- On September 26, 2018, Hartman emailed Doyle [redacted] (*Id.*)
- In a draft report also dated September 26, 2018, [redacted] (Bessenger Decl., ¶ 14, Ex. M at 4-5.)
- On November 27, 2018, Hartman emailed Doyle [redacted] (Bessenger Decl., ¶ 15, Ex. N ([redacted]).)
- On January 24, 2019, [redacted]



(Bessenger Decl., ¶ 16, Ex. O.)

Consistent with JAE's repeated directives, Doyle's final appraisal set the purported market value of the Apartment Complex at $17,425,000, while the value of AMTAX's interest in the Partnership dropped even further, to $6,950,000.  (Bessenger Decl., ¶ 17, Ex. P (Doyle Appraisal) at 4.)

**G.  JAE Explores a Refinance**

At the same time JAE was pressuring Doyle, it was also discussing a potential refinance of the Apartment Complex's mortgage to fund JAE's contemplated purchase of AMTAX's interest.  (*See* Bessenger Decl., ¶ 18, Ex. Q (10/03/18 Johnson email to Alley); *see also id.*, ¶ 3, Ex. B (JAE Deposition) at 265:23-266:4 (

).)

(*See id.*, ¶ 19, Ex. R (Dwight Capital Proposed Sources and Uses); ¶ 3, Ex. B at 207:2-24, 267:1-269:8.)  This valuation would

(*Id.*, ¶ 3, Ex. B at 265:14-22.)

**H.  The Appraisers Disagree on the Value of AMTAX's Interest**

JAE and AMTAX exchanged appraisals on May 29, 2019.  (Bessenger Decl., ¶ 20, Ex. S (05/29/19 Hartman email to Bessenger).)  Both Doyle and AMTAX's designated appraiser, Rebecca Arthur from Novogradac & Company LLP,

1

2

3 ████████████████ (*See* Bessenger Decl., ¶ 21, Ex. T (Arthur Appraisal) at

4 71-82, 89; ¶ 17, Ex. P (Doyle Appraisal) at 31-32, 69; ¶ 2, Ex. A (Solomon Deposition)

5 at 237:11-15, 240:21-242:12.)

6    Arthur valued the Apartment Complex ████████ (Bessenger Decl., ¶ 21,

7 Ex. T (Arthur Appraisal) at 89), which was █████████████████

8 ████████████████████████

9 ██████. Based on this value, ███████████████

10 ██████. (*Id.*) Doyle, by comparison (and as discussed above), ████████

11 ████████████████████, and valued ██████████

12 ██████. (*Id.*, ¶ 17, Ex. P (Doyle Appraisal) at 69.)

13    After AMTAX and JAE exchanged appraisals, ███████████

14

15

16 ████████ (Bessenger Decl., ¶ 22, Ex. U at 2 (09/18/19 Bessenger

17 email to Hartman) ("█████████████████████

18

19 ██████████████).)

20    Doyle and Arthur did eventually ████████████████

21

22

23 ██████████████ (Bessenger

24 Decl., ¶ 23, Ex. V (09/27/19 Doyle letter to Arthur).) [7]

25    **I.    Instead of Completing the Appraisal Process, JAE Sues AMTAX**

26    Rather than ensuring that Doyle work with Arthur to appoint a third "tie breaker"

27 _____

28 [7] JAE confirmed at its deposition that █████████████████
   ████████. (Bessenger Decl., Ex. B at 55:9-56:4.)



1  appraiser as mandated under Section 7.4.I of the Partnership Agreement, JAE instead

2  filed this lawsuit on October 29, 2019 without any prior notice to AMTAX.  (ECF No.

3  1; *see also* Bessenger Decl., ¶ 25.)  Although JAE's complaint includes only a single

4  claim for declaratory relief, JAE asks the Court to make several judicial determinations,

5  including:  (a) that "the LPA does not provide Amtax a right to elect to force the sale of

6  the real estate assets, but that the Co-General Partner, JAE, has the right to elect

7  whether to sell the Apartment Complex to a third party or purchase or arrange a

8  purchase of Amtax's Limited Partners Interests in the Partnership"; (b) that "JAE has

9  negotiating ability when determining if a discount for partial interest valuation should

10  be applied when the appraiser determines the fair market value of Amtax's Limited

11  Partners Interests in the Partnership"; and (c) that "the LPA requires the neutral

12  appraiser to discount for lack of marketability and control when valuing Amtax's

13  Limited Partners Interests in the Partnership."  (ECF No. 1, ¶¶ 24-26.)[8]

14       AMTAX filed counterclaims on November 20, 2019, including a direct claim for

15  breach of contract (First Claim for Relief), a claim for breach of fiduciary brought both

16  directly and derivatively on behalf of the Partnership (Second Claim for Relief), and

17  two declaratory relief claims, one relating to the appraisal process (Third Claim for

18  Relief), and the other relating to AMTAX's removal rights (Fourth Claim for Relief).

19  (ECF No. 9, ¶¶ 66-83.)

20  **III.   STANDARD OF REVIEW**

21       "A party may move for summary judgment, identifying each claim or defense -

22  or the part of each claim or defense - on which summary judgment is sought."  Fed. R.

23  _____

24  [8] Although not included in its declaratory relief claim, JAE's "Prayer" also requests "a
   declaration that, in light of this dispute, JAE is using its best efforts to close the sale of

25  the Partnership Interest within the designated time-frame set forth in Section 7.4.I of the
   LPA, and that such time shall be tolled by this litigation."  (ECF No. 1 at 8.)  The two-

26  year period in which JAE was required under Section 7.4.I of the LPA to use its best
   efforts either to sell the Apartment Complex or to purchase AMTAX's Partnership

27  interest expired on August 8, 2020 (i.e., two years after AMTAX exercised its exit right

28  under Section 7.4.I).  (*See* LPA at 42 (§ 7.4.I); Blake Decl., ¶ 14, Ex. 9.)

1   Civ. P. 56(a).  Summary judgment is warranted where there is "no genuine dispute as to

2   any material fact and the movant is entitled to judgment as a matter of law."  *Id.*;

3   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV.  AMTAX IS ENTITLED TO SUMMARY JUDGMENT ON JAE'S DECLARATORY RELIEF CLAIM

6          The Court "may grant summary judgment motions touching upon contract

7   interpretation when the agreement is unambiguous."  *Southern Cal. Gas Co. v. City of*

8   *Santa Ana*, 336 F.3d 885, 888-89 (9th Cir. 2003).  "Ambiguity is a question of law for

9   the court."  *Id.* at 889.  "'[S]ummary judgment is appropriate when the contract terms

10  are clear and unambiguous, even if the parties disagree as to their meaning.'"  *United*

11  *Bhd. of Carpenters & Joiners of Am., Lathers Local 42-L v. United Bhd. of Carpenters*

12  *& Joiners of Am.*, 73 F.3d 958, 961 (9th Cir. 1996).

13         Under California law, "[t]he fundamental goal of contractual interpretation is to

14  give effect to the mutual intention of the parties."  *State of California v. Continental*

15  *Ins. Co.*, 55 Cal.4th 186, 194-95 (2012) (internal quotation marks and citation omitted).

16  "When a contract is reduced to a writing, the parties' intention is determined from the

17  writing alone, if possible."  *Founding Members of the Newport Beach Ctry Club v.*

18  *Newport Beach Cntry Club, Inc.*, 109 Cal.App.4th 944, 955 (2003); *see also* Cal. Civ.

19  Code § 1638 ("The language of a contract is to govern its interpretation, if the language

20  is clear and explicit, and does not involve an absurdity").

21         "Parol evidence is properly admitted to construe a contract only when its

22  language is ambiguous."  *F.B.T. Prods., LLC v. Aftermath Records*, 621 F.3d 958, 963

23  (9th Cir. 2010).  "Courts will not adopt a strained or absurd interpretation in order to

24  create an ambiguity where none exists."  *Alameda Cty. Flood Control v. Dep't of Water*

25  *Res.*, 213 Cal.App.4th 1163, 1180 (2013) (citation and quotation marks omitted).  And

26  "[t]he fact that the parties dispute a contract's meaning does not establish that the

27  contract is ambiguous; it is only ambiguous if reasonable people could find its terms

28  susceptible to more than one interpretation."  *Klamath Water Users Protective Ass'n v.*

1   *Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999), *opinion amended on denial of reh'g*,

2   203 F.3d 1175 (9th Cir. 2000).  As explained below, the judicial determinations JAE

3   seeks are contradicted by the plain and unambiguous language of the LPA, and JAE's

4   declaratory relief claim accordingly should be dismissed with prejudice and in its

5   entirety.[9]

6         **A.**    **JAE Has No Right to Sell the Apartment Complex or Purchase**

7                 **AMTAX's Interest in the Partnership**

8         JAE first "seeks a judicial determination that the LPA does not provide Amtax a

9   right to elect to force the sale of the real estate assets, but that the Co-General Partner,

10   JAE, has the right to elect whether to sell the Apartment Complex to a third party or

11   purchase or arrange a purchase of Amtax's Limited Partners Interests in the

12   Partnership."  (ECF No. 1, ¶ 24.)  While AMTAX concedes that it cannot *force* the

13   Partnership to sell the Apartment Complex, JAE is not entitled to the relief it seeks

14   because (1) *JAE* has no right under the Partnership Agreement either to sell the

15   Apartment Complex or to purchase AMTAX's interest in the Partnership; and (2)

16   JAE's fiduciary duties constrain its discretion to elect between a sale of the Apartment

17   Complex and a purchase of AMTAX's interest following AMTAX's exercise of its exit

18   right under Section 7.4.I.

19         **1.**    **JAE's Proffered Interpretation Contradicts the LPA**

20         JAE's requested judicial determination contradicts the relevant language in

21   Section 7.4.I of the Partnership Agreement, which states:

22

23

24   [9] As noted above, JAE includes only in its "Prayer for Relief" a request for a declaration
that JAE is using its "best efforts" to close the sale of AMTAX's Partnership interest.

25   In addition to being belied by the facts, JAE has not pled this claim properly, and it
should be dismissed along with JAE's declaratory relief claim.  *See Sylver v. Mathis*,

26   No. 2:09-CV-00855-RLH-LR, 2011 WL 1541318, at *3 (D. Nev. Apr. 22, 2011)

27   ("[T]he Court grants summary judgment on Sylver's sundry damages claims as they are
not actually claims, but prayers for relief.  [E]ven if they were legitimate claims, they

28   would necessarily fail as the underlying claims fail.").

> [T]he Investor Limited Partner may request that the Managing General Partner do one of the following: (i) sell the Apartment Complex to a third party, or (ii) purchase or arrange for a third party to purchase, the Limited Partners Interests in the Partnership for the fair market value of the Interests, but in all events such purchase and sale shall be for terms which are approved by the Investor Limited Partner. . . . After receipt of a request from the Investment Limited Partner, the Co-General Partner shall determine which course of action it desires to utilize.  If it determines to locate a third party purchaser, the terms of such purchase of either the Apartment Complex or Interests shall be subject to the Investment Limited Partner's Consent.

As this unambiguous language makes clear, it is *AMTAX*—not JAE—that has an affirmative right to request that JAE either sell the Apartment Complex or purchase or arrange a purchase of AMTAX's Partnership interest.  Only *after* receipt of AMTAX's request—which is entirely within AMTAX's discretion to make or not—may JAE "determine which course of action it desires to utilize[,]" and even then, AMTAX retains sole discretion as to whether to consent to the proposed sale or purchase.

Other sections of the LPA confirm that JAE cannot sell the Apartment Complex or AMTAX's interest in the Partnership without AMTAX's consent.  *See Zalkind v. Ceradyne, Inc.*, 194 Cal.App.4th 1010, 1027 (2011) ("To the extent practicable, the meaning of a contract must be derived from reading the whole of the contract, with individual provisions interpreted together, in order to give effect to all provisions and to avoid rendering some meaningless").  JAE, for example, "shall not have the authority to do any of" a number acts "without the Consent of the Investor Limited Partner and any Requisite Approvals," including "sell[ing] or convey[ing] the Property, except as provided in Article IIIC . . . ."  (LPA at 35-36 (§ 7.1.B(viii)).)  Article IIIC, in turn, provides that any transfer or conveyance of "all or substantially all the assets of the Partnership" must first "receive the Consent of the Investor Limited Partner before such transaction shall be binding on the Partnership."  (*Id.* at 21.)

In light of this unambiguous contractual language, JAE is not entitled to a judicial determination that it has a "right to elect whether to sell the Apartment Complex to a third party or purchase or arrange a purchase of Amtax's Limited Partners

1  Interests in the Partnership."

2        **2.**    **JAE's Election Right Under Section 7.4.I Is Constrained By Its**

3            **Fiduciary Duties**

4        Even JAE's ability to "determine which course of action it desires to utilize"

5  following AMTAX's request to exit the Partnership is not unfettered, but rather is

6  limited by JAE's fiduciary obligations as a general partner under the LPA and common

7  law.  "Partnership is a fiduciary relationship, and partners are held to the standards and

8  duties of a trustee in their dealings with each other."  *Everest Investors 8 v. McNeil*

9  *Partners*, 114 Cal.App.4th 411, 424 (2003).  "A general partner of a limited partnership

10  is subject to the same restrictions, and has the same liabilities to the partnership and to

11  the other partners as in a general partnership."  *Id.*; *see also* LPA at 41 (§ 7.4.G) ("No

12  General Partner shall contract away the fiduciary duty owed at common law to the

13  Limited Partners.").

14        As discussed more fully below in connection with AMTAX's counterclaims,

15  JAE's fiduciary duties as Co-General Partner of the Partnership "extend[] to the

16  dissolution and liquidation of partnership affairs, as well as to the sale by one partner to

17  another of an interest in the partnership."  *Everest Investors 8*, 114 Cal.App.4th at 424.

18  Thus, while JAE had the right under Section 7.4.I to elect the manner in which

19  AMTAX's exit from the Partnership is accomplished following AMTAX's exercise,

20  this discretion does not relieve JAE of its fiduciary duties to AMTAX and the

21  Partnership.  Instead, these fiduciary duties prevented JAE from making and

22  effectuating its election under Section 7.4.I in a manner that deliberately ignored and/or

23  sacrificed the best interests of the Partnership or its partners.  *See Hands on Video Relay*

24  *Servs., Inc. v. Am. Sign Language Servs. Corp.*, No. CIV. S-09-996 LKK, 2009 WL

25  8691614, at *6 (E.D. Cal. Aug. 12, 2009) ("[A] fiduciary duty has a life separate from

26  contractual obligations, regardless of whether the duty was created by contract or

27  otherwise.  California courts have further held that fiduciary duties are ordinarily not

28  otherwise limited by the existence of a contract") (citing *Stephenson v. Drever*, 16 Cal.

1  4th 1167, 1179 (1997), for the proposition that contractual rights cannot implicitly
2  abrogate fiduciary duties)).

3      JAE's fiduciary duties required it to consider in good faith the attractive third-
4  party offers to purchase the Apartment Complex when determining whether to sell the
5  Apartment Complex or purchase AMTAX's interest, and prohibited JAE from taking
6  actions that were deliberately designed to "███████████████████████"
7  (Bessenger Decl., ¶ 9, Ex. H.)

8      **B.    JAE Does Not Have "Negotiating Ability When Determining if a**
9              **Discount for Partial Interest Valuation Should Be Applied"**

10     JAE next seeks a judicial determination that it "has negotiating ability when
11  determining if a discount for partial interest valuation should be applied when the
12  appraiser determines the fair market value of Amtax's Limited Partners Interests in the
13  Partnership." (ECF No. 1, ¶ 25.)  As discussed below, this claim is fatally vague, but
14  appears to ask the Court to bless obvious manipulation of the appraisal process under
15  the guise of an arms-length "negotiation" when the LPA makes clear that, upon
16  AMTAX's exercise of its exit right under Section 7.4.I, there is nothing to negotiate.

17              **1.    JAE's Claim is Fatally Vague**

18     JAE's request for a judicial recognition of its supposed "negotiating ability" with
19  respect to the appraisal process in Section 7.4.I of the LPA should be denied in the first
20  instance because it fails the "case or controversy" requirement for seeking relief under
21  the Declaratory Judgement Act.  "Exercising jurisdiction under the Declaratory
22  Judgment Act is discretionary, and federal courts have unique and substantial discretion
23  in deciding whether to declare the rights of litigants." *Veoh Networks, Inc. v. UMG*
24  *Recordings, Inc.*, 522 F. Supp. 2d 1265, 1271 (S.D. Cal. 2007) (denying plaintiff's
25  request for declaratory relief as inadequately defined) (citations omitted).  In order to
26  grant declaratory relief, the Court must find that the dispute is a "substantial
27  controversy," which is "definite and concrete . . . ."  *MedImmune, Inc. v. Genentech,*
28  *Inc.*, 549 U.S. 118, 127 (2007) (citation and quotation marks omitted).

In dismissing a request for declaratory relief, the *Veoh* court stated: "The disagreement must not be nebulous or contingent, but must have taken on a fixed and final shape so that *a court can see what legal issues it is deciding and what effects its decision will have on the adversaries*. The controversy must be real, substantial, and capable of *specific relief* through a decree of conclusive character." *Veoh Networks*, 522 F. Supp. 2d at 1269 (emphasis added) (describing unsuccessful declaratory relief claim as seeking a "blanket validation of the ongoing legality of [plaintiff's] business model" instead of "'specific relief though a decree of conclusive character'").

Here, JAE's complaint fails to define in any way the "negotiating ability" it is asking the Court to recognize, and has instead attempted to repurpose words that it has taken—out of context—from Arthur's appraisal report. (*See* ECF No. 1, ¶¶ 18-19.) JAE does not identify the "who, what, when, where, or why" of any supposed negotiations, and—as explained further below—the idea that the appraisal process would involve any negotiations at all runs directly counter to the express language of Section 7.4.I. Because of this vagueness, it is unclear what "specific relief" JAE seeks, other than a "blanket validation" from the Court for whatever "negotiating ability" JAE deems appropriate. *Veoh Networks*, 522 F. Supp. 2d at 1269. This is an improper and inadequate basis for declaratory relief.

### 2. Section 7.4.I Does Not Give JAE "Negotiating Ability"

Even if JAE's pleading was sufficiently concrete to state a claim for declaratory relief—which it is not—JAE's request should be rejected because the relevant contractual language concerning determination of fair market value is silent as to any "negotiations," let alone JAE's supposed "negotiating ability." Instead, the relevant portion of Section 7.4.I states:

> The purchase price of the Apartment Complex or the Investor Limited Partner Interest under this section, as the case may be, shall be equal to the fair market value of the Apartment Complex or the Interest, as the case may be. Fair market value shall be determined by the Investor Limited Partner and the Administrative General Partner, as the case may be, each retaining an appraisal from a qualified MAI appraiser. In the event that the two

appraisers do not agree on the fair market value, the appraisers shall agree on the appointment of a third appraiser, whose appraisal shall be binding on the parties, provided however, that the Investor Limited Partner shall not be obligated to Consent to a sale in the event that it is not satisfied with the purchase price . . . .

This language unambiguously provides that fair market value is to be determined by MAI-certified appraisers, and there is no provision giving JAE any "negotiating ability" concerning whether any "discount for partial interest should be applied," as JAE alleges.  Rather, the opposite of JAE's mischaracterization of the LPA is true, because once JAE has elected either to sell the Apartment Complex or purchase AMTAX's interest, JAE has no further discretion under Section 7.4.I, and certainly no "negotiating ability" concerning the appraisals.  Indeed, to the extent that any party has any "negotiating ability" in connection with Section 7.4.I, that party clearly is AMTAX, as only AMTAX retains the option either to accept or decline any purchase terms.

### C.   The LPA Does Not Require the Imposition of Discounts for Lack of Marketability or Control in Valuing AMTAX's Interest

Finally, JAE seeks a judicial determination "that the LPA requires the neutral appraiser to discount for lack of marketability and control when valuing Amtax's Limited Partners Interests in the Partnership."  (ECF No. 1, ¶ 26.)  This claim, however, must also be dismissed.

### 1.   JAE's Claim Is Premature

As a threshold matter, JAE's declaratory relief claim on this issue should be dismissed as premature because JAE is asking the Court to declare how an as-yet unappointed third appraiser must perform their work.  *See Fed. Ins. Co. v. Newby*, No. C-12-5084 MMC, 2013 WL 1285140, at *2 (N.D. Cal. Mar. 28, 2013) (dismissing challenge to appraisal methodology as premature).[10]  In *Federal Ins. Co. v. Newby*, the

---

[10] AMTAX understands that if the Court were to dismiss JAE's claim on this ground, then its ruling would likely also apply to AMTAX's declaratory relief counterclaim regarding the appraisal process.  (*See* ECF No. 9, ¶¶ 76-79 (Third Claim for Relief).)

court analyzed a declaratory relief claim as to the proper methodology for an appraisal

that had not yet been performed.  In rejecting the claim as premature, the court held:

> Federal has failed to show, and, indeed, does not even allege, that the
> appraisal panel has taken any action that suggests the appraisal panel does
> not understand its duties under the parties' agreement, or that the appraisal
> panel, in the absence of declaratory relief, is likely to act in a way that
> would violate any law or the terms of the appraisal clause in the policy.  In
> short, Federal's request for declaratory relief directing the appraisal panel
> to conduct the appraisal hearing in a certain manner is, at best, premature.
> *See Wickland Oil Terminals v. Asarco, Inc.*, 792 F.2d 887, 893 (9th
> Cir.1986) ("A case is ripe where the essential facts establishing the right to
> declaratory relief have already occurred.").  Accordingly, the Court finds
> Federal has failed to show the existence of a case or controversy sufficient
> to warrant issuance of the type of declaratory relief it seeks.

*Id.* at *3.  Similarly here, JAE asks this Court for a judicial determination as to how the

third appraiser must value AMTAX's interest *before* the appraiser has even had an

opportunity to do their work, and JAE's request should thus be denied as premature.

### 2.    JAE's Proffered Interpretation Seeks to Rewrite the LPA

Contrary to JAE's declaratory relief claim, there is no language in the LPA—nor

any extrinsic evidence—to suggest that JAE and AMTAX intended to require the third

appraiser to apply any discounts when valuing AMTAX's Partnership interest pursuant

to Section 7.4.I.  The Court should reject JAE's request for a judicial determination that

would add new terms into the LPA because, "[i]n the absence of illegality or

unconscionability, it is not the Court's role to rewrite the contract retroactively to create

a different bargain."  *Tuma v. Eaton Corp.*, No. 08CV792-BTM CAB, 2011 WL

3174859, at *4 (S.D. Cal. July 25, 2011); *see also Series AGI W. Linn of Appian Grp.

Inv'rs DE, LLC v. Eves*, 217 Cal.App.4th 156, 164 (2013) ("[C]ourts are not at liberty

to revise an agreement under the guise of construing it.  Neither abstract justice nor the

rule of liberal interpretation justifies the creation of a contract for the parties which they

did not make themselves.") (citations and quotation marks omitted).

In a case involving facts strikingly similar to those presented here, the California

Court of Appeal analyzed a dispute concerning the appraisal of a partnership interest in

1   an affordable housing limited partnership and held that a trial court cannot dictate how

2   an appraiser determines the fair market value of a partner's interest, where the

3   partnership agreement itself is silent on the question of appraisal methodology. *AFC-*

4   *Low Income Hous. Credit Partners-I v. Poz Vill. Dev., Inc.*, B237721, 2012 WL

5   3792549, at *1-4 (Cal. Ct. App. Aug. 31, 2012).

6        In *AFC*, as here, the limited partnership was formed "to construct and operate a

7   low to moderate income housing project [that would] qualify for and sell low-income

8   housing tax credits." *AFC-Low Income Hous. Partners v. POZ Vill. Dev., Inc.*,

9   B247349, 2014 WL 3665621, at *1 (Cal. Ct. App. July 24, 2014).  After the limited

10   partners exercised their contractual right to remove the general partners, the successor

11   general partner elected to purchase the removed general partners' interests, which

12   required each side to appoint their own appraiser to determine the fair market value of

13   the partnership interests. *Id.* at *1-2.[11]

14        The initial appraisals reached significantly different values, and a third appraiser

15   was then appointed, consistent with the terms of the partnership agreement, who valued

16   the interests at $7,944,212. *Id.* at *2.  The successor general partner refused to accept

17   this "tie breaker" appraisal and instead filed a motion to vacate. *Id.*  Although the trial

18   court denied the motion to vacate, it subsequently issued an order finding that "the

19   appraiser had exceeded his powers," in part because the third appraiser's valuation

20   included the successor general partners' "'respective share of the net appreciation in the

21   value of the apartment complex.'" *AFC*, 2012 WL 3792549, at *2.

22

23   _____

24   [11] The appraisal process in *AFC* was very similar to the process set forth in Section
   7.4.I.  (*See AFC*, 2012 WL 3792549 at *3 ("The withdrawing General Partner shall

25   appoint an appraiser.  Within 15 days after receiving notice of such appointment, the
   Successor General Partner shall appoint an appraiser.  If the two appraisers so

26   appointed shall be unable to agree on the fair market value of the withdrawing General
   Partner's General Partner Interest within 30 days, they shall appoint a third appraiser.

27   The decision, in writing, of the third appraiser shall be binding and conclusive on the
   withdrawing General Partner and the Successor General Partner . . . .").)

28

In reversing the trial court, the Court of Appeal held: "The language in the agreement does not specify what methodology should be used. It does not define present market value. The agreement which appears to be negotiated by business entities *leaves it up to the appraisers to determine what methodology should be utilized*. The appraiser, Hanlin, did not exceed his powers. No limitation was set in the agreement." *Id.* at *4 (emphasis added).

As in *AFC*, the contractual language in Section 7.4.I of the LPA "provides the process to be used" to determine the fair market value of AMTAX's interest, but "leaves it up to the appraisers to determine what methodology should be utilized." *Id.* The Court accordingly should reject JAE's invitation to dictate the methodology that the third appraiser must use in determining the fair market value of AMTAX's interest.

### 3. JAE's Interpretation Leads to an Unfair and Absurd Result

Under California law, it is a basic premise of contractual interpretation that "[c]onstruction [of a contract] cannot lead to unfair or absurd results but must be reasonable and fair." *California Nat'l Bank v. Woodbridge Plaza LLC*, 164 Cal.App.4th 137, 143 (2008). Here, an unfair—even absurd—result is exactly what JAE is proposing by seeking a judicial declaration that a neutral appraiser must apply discounts for lack of marketability and control to AMTAX's interest, where it is JAE itself that has elected to purchase AMTAX's interest.

Because there is a buyer—JAE—that is *obligated* under Section 7.4.I to purchase AMTAX's interest at the appraised value after electing that option under the LPA, the "marketability" of AMTAX's interest is irrelevant. And AMTAX would not need to offer JAE a "lack of control" discount in connection with its purchase of AMTAX's interest because JAE would actually be *consolidating* its control of the Partnership and the Apartment Complex by buying out AMTAX's interest. JAE's claim that mandatory discounts are required accordingly has no connection to the actual economics of the transaction, and instead is being advanced solely to "drive down" the amount JAE must pay AMTAX to assume full control of the Partnership.

1    JAE's claim that the LPA requires a discounting of AMTAX's interest,

2    moreover, would lead to an absurd result because it would provide JAE with an election

3    between two options—selling the Apartment Complex or buying AMTAX's interest—

4    where one option would *invariably* be preferable to the other.  *See Appalachian Ins. Co.*

5    *v. McDonnell Douglas Corp.*, 214 Cal.App.3d 1, 12 (1989) ("An interpretation which

6    renders part of the instrument to be surplusage should be avoided.") (citations omitted).

7    In sum, JAE's proposed reading of the LPA—in which it has unfettered

8    discretion to choose whether to sell the Apartment Complex or purchase AMTAX's

9    interest; has "negotiating ability" to reduce the value of AMTAX's interest; and can

10   compel mandatory discounts when purchasing AMTAX's interest—incentivizes

11   exactly the sort of malfeasance perpetrated by JAE here.  The only interpretation of the

12   plain language of Section 7.4.I that is "reasonable and fair," as required by California

13   law, is one in which AMTAX receives substantially the same value for its 99.9%

14   ownership interest in the Partnership, regardless of whether JAE elects to sell the

15   Apartment Complex or instead opts to purchase AMTAX's interest in the Partnership.

16   *California Nat'l Bank*, 164 Cal.App.4th at 143.

## V.    THE COURT SHOULD GRANT SUMMARY JUDGMENT FOR AMTAX
17
18        ON ITS DIRECT AND DERIVATIVE COUNTERCLAIMS

### A.    JAE Breached Its Fiduciary Duties to AMTAX and the Partnership
19

20   AMTAX seeks summary judgment on its own behalf, and derivatively on behalf

21   of the Partnership, based on JAE's breaches of fiduciary duty.  *See* Cal. Corp. Code §

22   15910 ("A partner may bring a derivative action to enforce a right of a limited

23   partnership").  Under California law, the elements of a claim for breach of fiduciary

24   duty are the existence of a fiduciary relationship, its breach, and damage proximately

25   caused by that breach.  *Knox v. Dean*, 205 Cal.App.4th 417, 432-433 (2012).

26   It is undisputed that JAE owes fiduciary duties to the Partnership and to

27   AMTAX, as a limited partner, under both California law and the terms of the LPA.

28   Cal. Corp. Code § 15616(b) (general partner of limited partnership has same fiduciary

duties as partner in any other partnership); (LPA at 41 (§§ 7.4.F, 7.4.G).)  "The fiduciary duties a partner owes to the partnership and the other partners are the duty of loyalty and the duty of care . . . ."  Cal. Corp. Code § 16404(a).  JAE's fiduciary duties, moreover, specifically extend to "the sale by one partner to another of an interest in the partnership."  *Everest Investors 8*, 114 Cal.App.4th at 424.

"[I]n all proceedings connected with the conduct of the partnership every partner is bound to act in the highest good faith to his copartner and may not obtain any advantage over him in the partnership affairs by the slightest misrepresentation, concealment, threat or adverse pressure of any kind."  *Leff v. Gunter*, 33 Cal.3d 508, 514 (1983) (citations and quotation marks omitted).  Notwithstanding this high duty of loyalty and care that JAE owed to its partner and the Partnership, the undisputed facts establish that JAE consistently placed its own interests first and engaged in a pattern of intentionally duplicitous and self-dealing behavior, including:



1

2

3     A review of the evidentiary record in this case makes clear that JAE repeatedly

4    failed to act "in the highest good faith" in its dealings with the Partnership or with

5    AMTAX, and it should be held accountable for its malfeasance.  *Everest Investors 8*,

6    114 Cal.App.4th at 425 ("Self-dealing in whatever form it occurs should be handled

7    with rough hands for what it is—dishonest dealing").

8     JAE's breaches of its fiduciary duties, including its failure to act on attractive

9    offers to purchase the Apartment Complex, proximately caused significant damages to

10   AMTAX and the Partnership that AMTAX intends to prove at trial.  (*See, e.g.,*

11   Bessenger Decl., ¶ 24, Ex. W (Expert Report of Melissa Bach) at 11, Ex. D.)  The Court

12   accordingly should grant summary judgment in AMTAX's favor on its direct and

13   derivative claims for breach of fiduciary duty, while reserving the quantification of

14   AMTAX's damages for trial.

15        **B.    JAE Breached the Victoria Heights LPA**

16       Establishing a breach of contract requires:  (1) the existence of a contract; (2)

17   AMTAX's performance or excuse for nonperformance; (3) JAE's breach; and (4)

18   actual damages as a result of the breach.  *See Armstrong Petroleum Corp. v. Tri–Valley*

19   *Oil & Gas Co.*, 116 Cal.App.4th 1375, 1391 n.6 (2004) (citation omitted).

20       AMTAX and JAE are parties to the LPA, which governs the Partnership.  There

21   are no allegations, let alone evidence in the record, that AMTAX has failed to perform

22   its obligations under the LPA.  The undisputed evidence does establish, however, that

23   JAE breached the LPA, including by refusing to use its "best efforts" to consider

24   attractive, unsolicited offers from third parties to purchase the Apartment Complex, and

25   by first manipulating, and then outright refusing to comply with, the appraisal process

26   required by Section 7.4.I.  JAE's actions are in material breach of the LPA, and have

27   damaged AMTAX, as set forth above, in an exact amount to be proved at trial.

28

1
2

**C.      AMTAX Is Entitled to Remove JAE as the Partnership's Co-General Partner Based on JAE's Breaches of Its Fiduciary Duties and the LPA**

3      In the event that the Court finds JAE liable for breaching its fiduciary duties and
4   the LPA, AMTAX requests that the Court enter a declaratory judgment that AMTAX
5   has the right to remove JAE as the Partnership's Co-General Partner pursuant to
6   Section 4.5.A(iv) of the LPA.  Section 4.5.A(iv)(1) and (3) specifically provide that
7   AMTAX may "remove any or all of the General Partners and elect one or more new
8   General Partners" based on "misconduct, or failure to exercise reasonable care with
9   respect to any material matter in the discharge of its duties and obligations as General
10  Partner[,]" or a "violat[ion of] any rights, powers, duties, representations or warranties
11  as set forth in Article VII herein or . . . any material provision of this Agreement . . . or .
12  . . applicable law."

13  **IV.   CONCLUSION**

14      For all the reasons explained above, AMTAX respectfully requests that the Court
15  enter summary judgment in its favor on JAE's declaratory relief claim and dismiss
16  JAE's complaint in its entirety and with prejudice.  AMTAX further requests that
17  summary judgment be entered in its favor on its First Claim for Relief for Breach of
18  Contract, its Second Claim for Relief for Breach of Fiduciary Duty, and its Fourth
19  Claim for Relief for Declaratory Judgment, with the quantification of damages on its
20  breach claims reserved for trial.

21
22   DATED: September 14, 2020          KING & SPALDING LLP
                                        ERIC S. PETTIT
23                                      CRAIG H. BESSENGER
                                        LAURA RADEN
24

25                                      By: /s/ *Eric S. Pettit*
26                                            ERIC S. PETTIT
                                        Attorneys for Defendant and Counter-
27                                      Plaintiff AMTAX Holdings 2001-XX, LLC

28