1    BERRY SILBERBERG STOKES PC
     ROBERT P. BERRY, State Bar No. 220271
2    16150 Main Circle Drive
     Suite 120
3    St. Louis, MO 63017
     Telephone: (314) 480-5882
4    Facsimile: (314) 480-5884
     rberry@berrysilberberg.com
5
     BERRY SILBERBERG STOKES PC
6    CAROL M. SILBERBERG, State Bar No. 217658
     155 North Lake Avenue
7    Suite 800
     Pasadena, CA 91101
8    Telephone: (213) 986-2688
     csilberberg@berrysilberberg.com
9
10   Attorneys for Plaintiff and Counter-Defendant
     JAE Properties, Inc.
11
12                 UNITED STATES DISTRICT COURT
13                SOUTHERN DISTRICT OF CALIFORNIA
14
15

| | |
|---|---|
| 16  JAE PROPERTIES, INC., | Case No.:  3:19-cv-2075-JAH-LL |
| 17                           Plaintiff, | **[REDACTED] MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JAE PROPERTIES, INC.'S MOTION FOR SUMMARY JUDGMENT** |
| 18  v. | |
| 19  AMTAX HOLDINGS 2001-XX, LLC, | |
| 20                          Defendant. | |
| 21 | The Honorable John A. Houston |
| 22  AMTAX HOLDINGS 2001-XX, LLC and | |
| 23  VICTORIA HEIGHTS LTD., | Hearing Date: November 4, 2020 at Hearing Time: 10:30 a.m. |
| 24                    Counter-Plaintiffs, | Location: |
| 25  v. | |
| 26  JAE PROPERTIES, INC., | Trial Date: None set |
| 27                   Counter-Defendant. | |
| 28 | |

## TABLE OF CONTENTS

I.   INTRODUCTION AND SUMMARY ................................................................1

II.  FACTS AND PROCEDURAL BACKGROUND ...........................................3

    A.   LIHTC Program And Background ......................................................3

    B.   The Parties To The Victoria Heights Limited Partnership Agreement ...........3

    C.   Negotiations For A Potential Sale After The Compliance Period .................4

        1.   Initial Conversations Between JAE And Alden Torch In 2016 ..........4

        2.   Extra Contractual Discussions In 2018 ................................5

        3.   The First "Letter of Intent" ............................................5

    D.   AMTAX Invokes Section 7.4.I Of The LPA .......................................7

    E.   The Second Letter of Intent ..............................................................7

    F.   JAE Makes Its Election And AMTAX's Response .......................................8

    G.   The Appraisals .....................................................................9

    H.   The Claims In This Action ...............................................................10

    I.   Alden Torch's Tactics To Obtain Windfalls Upon Partnership Exit ...........11

III.  Legal Standard For Summary Judgment ........................................................13

IV.  JAE Is Entitled to Declaratory Relief ............................................................13

V.   JAE Is Entitled to Summary Judgment  on AMTAX's Counterclaims .................15

        1.   No Breach Of The LPA .................................................15

        2.   No Evidence Of Damages ...........................................17

    A.   No Breach Of Fiduciary Duties .....................................................19

        1.   JAE Did Not Breach Any Duty To AMTAX Or The Partnership .....20

i

2.    AMTAX Has No Evidence Of Damages ..............................................22

3.    AMTAX Lacks Standing To Bring Derivative Claims ......................22

B.   AMTAX's Declaratory Relief Claim Should Be Dismissed. .......................23

C.   AMTAX Has No Basis For Removing JAE .................................................25

VI.   CONCLUSION.........................................................................................................25

i

TABLE OF AUTHORITIES

**Cases**

*Alder v. William Blair & Co.*,
    648 N.E. 2nd 226 (Ill. App. Ct. 1995) .......................................................... 21

*Arch Apartment Mgmt, LLC v. AMTAX Holdings 224 LLC*,
    2019 WL 4745331 (Minn. Ct. App. 2019) ................................................... 12

*Bader v. Anderson*,
    179 Cal.App.4th 775 (2009) ........................................................................ 23

*Brillhart v. Excess Ins. Co.*,
    316 U.S. 491 (1942) ..................................................................................... 15

*Buckland v. Threshold Enters., Ltd.*,
    155 Cal.App.4th 798 (1999) ........................................................................ 23

*CED Capital Holdings 200 EB, LLC v. CTCW-Berkshire Club LLC*,
    2020 WL 1856259 (Fla. Cir. Ct. Apr. 8, 2020) ..................................... 13, 25

*CommonBond Investment Corp. v. Heartland Properties Equities Investment Fund IV
    LLC*,
     2014 WL 8255277 (Minn. Dist. Ct. Nov. 14, 2014) .................................. 12

*Delany v. Baker*,
    20 Cal.4th 23 (1999) .................................................................................... 22

*Downtown Action to Save Housing v. Midland Corporate Tax Credit XIV, LP*,
    2019 WL 934887 (W.D. Wash. Feb. 25, 2019) ........................................... 12

*Furnace v. Sullivan*,
    705 F.3d 1021 (9th Cir. 2013) ..................................................................... 13

*Greenwich S.F., LLC v. Wong*,
    190 Cal.App.4th 739 (2010) ........................................................................ 19

*Hall v. EarthLink Network, Inc.*,
    396 F.3d 500 (2d Cir. 2005) ........................................................................ 19

*Hidden Hills Mgt, LLC v. Amtax Holdings 114, LLC*,
    2019 WL 3297251 (W.D. Wash. July 23, 2019) ......................................... 12

*Homeowner's Rehab, Inc. v. Related Corp. V SLP, L.P.*,
    99 N.E.3d 744 (Mass. 2018) ............................................................... 3, 12, 21

*J&J Celcom v. AT&T Wireless Servs. Inc.*,
    169 P.3d 823 (Wash. 2007) .......................................................................... 21

i

*Kids' Universe v. In2Labs*,
   95 Cal.App.4th 870 (2002) ......................................................................... 18

*Lee v. Interinsurance Exchange*,
   50 Cal.App.4th 694 (1996) ......................................................................... 23

*Leyte-Vidal v. Semel*,
   220 Cal.App.4th 1001 (2013) ..................................................................... 23

*Principal Life Ins. Co. v. Robinson,*
   394 F.3d 665 (9th Cir. 2005) ...................................................................... 15

*Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*,
   360 F. Supp. 3d 994 (N.D. Cal. 2018) ....................................................... 19

*Summers v. Teichert & Son, Inc.*,
   127 F.3d 1150 (9th Cir. 1997) .................................................................... 13

*Urban 8 Fox Lake Corp., et. al v. Nationwide Affordable Housing Fund 4, LLC,*
   431 F.Supp.3d 1003 (N.D. Ill. 2020) ......................................................... 12

*Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP*
   593 F. Supp. 2d 1153 (S.D. Cal. 2008) ..................................................... 20

*Wall Street Network Ltd. v. New York Times, Co.*,
   164 Cal.App.4th 1171 (2008) ..................................................................... 15

*Waller v. Truck Ins. Exch., Inc.*
   11 Cal.4th 1 (1995) .................................................................................... 13

*Walter Int'l Prods., Inc. v. Salinas*,
   650 F.3d 1402 (11th Cir. 2011) .................................................................. 15

*Wright v City of L.A.*,
   219 Cal.App.3d 318 (1990) ........................................................................ 22

**Statutes**

Cal. Corp. Code § 15904.08.............................................................................. 20

Cal. Corp. Code § 15904.08(e)........................................................................... 21

Cal. Corp. Code § 15910.02.............................................................................. 22

Cal. Corp. Code § 15910.03.............................................................................. 22

Cal. Corp. Code § 15910.04.............................................................................. 22

i

1

**Rules**

Fed. R. Civ. P. 56 ........................................................................................................ 13

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JAE PROPERTIES, INC.'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

# I.  INTRODUCTION AND SUMMARY

For nearly two decades, Plaintiff JAE Properties Inc. ("JAE") and its Co-General Partner Central Valley Coalition for Affordable Housing ("CVCAH"), have successfully managed the Victoria Heights Partnership (the "Partnership") and the affordable housing project the Partnership owns (the "Property"). As a direct result, thousands of low-income residents have had access to safe and affordable housing for years. And JAE has provided this important social service while also providing huge profits to the investors. In fact, Defendant AMTAX Holdings 2001-XX, LLC ("AMTAX") has already received ███████████████████████████████████████████████████ ████████████████████████████████████ AMTAX will benefit in the future when it receives still more ██████████████████████████████████████████████ ████████████████ when the Partnership's term expires in the year 2052. This has been and will be a great financial investment for AMTAX.

But these agreed-upon benefits are not sufficient for AMTAX's new "authorized representative," Alden Torch Financial, LLC ("Alden Torch"). In 2018, AMTAX tried to force an early sale of the Property to capture its share of the sales proceeds *now* instead of waiting for the Partnership's end in 2052.  But AMTAX has no right to an early sale of the Property under the Partnership's Amended and Restated Agreement of Limited Partnership (the "LPA")—*something its own expert fully admits*.  JAE opted to exercise its contractual right to buy AMTAX's limited partnership *interests* for "fair market value" ("FMV") rather than sell the Property.  But AMTAX demanded JAE purchase these interests for an inflated price ignoring the interests' lack of marketability and lack of control over the Partnership—*factors AMTAX's own expert also fully admits impact the value*.  AMTAX's price gouging in 2018/19 was exposed by its expert in 2020.

AMTAX hijacked the LPA buy-out procedures and manipulated the FMV analysis in an attempt to extract a higher price than the FMV.  This is the *modus operandi* of AMTAX's "authorized representative," Alden Torch, who has consistently attempted to

1

do this exact thing in other lawsuits against other general partners in other affordable housing projects.[1]  Those efforts failed elsewhere; they should also fail here.

First, JAE seeks narrowly tailored declaratory relief to ensure the proper application of the LPA.  AMTAX seeks counter-declarations.  But the plain language of the LPA means exactly what JAE and AMTAX's own expert assert it means: AMTAX has no right to force an early property sale and this impacts the value of AMTAX's interest.  Further, the undisputed evidence shows that, when valuing partnership interests, the market routinely applies discounts for both lack of marketability and control when calculating FMV. JAE is entitled to these declarations.

Second, JAE has not breached the LPA or any fiduciary duties; so AMTAX's counterclaims fail. AMTAX claims JAE did not adequately consider certain unsolicited "Letters of Intent" ("Letters") to buy the Property and supposedly delayed the appraisal process for the sale of AMTAX's limited partnership interest. But JAE had no obligation to sell the Property.  Regardless, the undisputed evidence shows that JAE fully considered these "unsolicited" and "non-binding" Letters anyway. And there is zero evidence JAE delayed the appraisal process or the appointment of a third appraiser.

Third, even assuming *arguendo* that some type of breach occurred, AMTAX cannot present evidence of any non-speculative damages.  AMTAX *today still holds* its limited partnership interest. The Partnership *today still owns* the Property.  And there is no evidence that the value of either has diminished or been impaired in any way. AMTAX has lost *absolutely nothing*.[2]

---

[1] See Section II.H, *infra*, listing numerous cases where Alden Torch or related entities brought baseless claims to create leverage for a buyout.

[2] AMTAX also seeks to remove JAE as a general partner based upon its assertions of breach of contract and breach of fiduciary duty.  As those underlying claims fail, so too does any attempt to remove JAE as a general partner.  Nor does AMTAX have any evidence to establish standing or damages for its derivative claim.  It failed to make a demand to either JAE or the independent Managing General Partner, CVCAH, as

Summary judgment should be granted in JAE's favor on both its affirmative declaratory relief action and AMTAX's unfounded counterclaims.

## II. FACTS AND PROCEDURAL BACKGROUND

### A.   LIHTC Program And Background

The Low-Income Housing Tax Credit ("LIHTC") Program, 26 U.S.C. § 42, is a federal program designed to promote the development of affordable rental housing for low-income households. *See e.g.*, *Homeowner's Rehab, Inc. v. Related Corp. V SLP, L.P.*, 99 N.E.3d 744, 748 (Mass. 2018). This program encourages private investment in such housing by providing tax credits to owners of qualifying projects. Those tax credits are earned over a ten-year period, which along with a five-year recapture period is commonly referred to as the "Compliance Period." At the end of the Compliance Period, after all the tax credits have been claimed and cannot be recaptured, "most investor limited partners will seek to leave the project, usually—but not always—by selling their interest" to the general partner. (*Id*. at 749.)

### B.   The Parties To The Victoria Heights Limited Partnership Agreement

Effective August 27, 2001, CVCAH and JAE along with AMTAX entered into the LPA governing the Partnership. (SF[3] 1; JF 2[4].) The respective rights and obligations of its partners, including JAE and AMTAX, are governed by the LPA. (SF 2.) AMTAX drafted the LPA. (SF 4.) Edmund Johnson, JAE's President, represented JAE in the transaction and signed the LPA on JAE's behalf. (SF 5.)

CVCAH is a charitable entity and the Managing General Partner of the Partnership, which was formed to acquire, develop, construct, rehabilitate, own, and

---

required under the California Corporation Code §§ 15910.02-15910.04. Further, the Partnership still owns the Property and there is no evidence that it has lost any value.
[3] References to "SF" are to JAE's Separate Statement of Undisputed Facts in Support of Its Motion for Summary Judgment filed simultaneously herewith.
[4] References to "JF" are to the Joint Statement of Undisputed Facts submitted by the Parties with respect to their cross-motions for summary judgment.

maintain the Property, in furtherance of CVCAH's charitable purposes of providing low-income housing to needy and distressed persons.  (SF 6.) Plaintiff JAE is the Co-General Partner.  (SF 7; JF 7.)

AMTAX originally provided the investment capital, (SF 8), but was a passive investor generally excluded from Partnership management in accordance with California law governing limited partnerships.  (SF 13.) In exchange for its investment, AMTAX holds a 99.9 percent partnership interest ("Interest"), which ensures that it receives a commensurate percentage of the tax benefits generated by the Project.  (SF 9.) AMTAX does not, however, automatically receive 99.9 percent of all of the Project's other economic benefits, e.g., cash flows from operations or capital proceeds from a sale or refinancing.  (SF 11.) Such distributions are made pursuant to specific provisions in the LPA.  (SF 12.) Nor does AMTAX have any right to control the Partnership's day-to-day operations or decisions.  (SF 13.)

On December 31, 2017, the Compliance Period ended. (SF 15.) By that time, AMTAX had received tax credits █████████████████████████████ ████████████████████████ (SF 14.) ████████████████████ ████████████████████████████ (SF 18.)

**C.    Negotiations For A Potential Sale After The Compliance Period**

    **1.    Initial Conversations Between JAE And Alden Torch In 2016**

████████████████████████████████ ████████████████████████████████████ ██████████████████████ (SF 19.) ████████████████ ███████████████████████████████████ (SF 20.) ██ ██████████████████████████████████ (SF 21.) ██ ██████████████████████████████████ (SF 22.) ██ ████████████████████████████████ ██████████████████ (SF 23.) ████████████████

4

█████████████████████████████████████████ (SF
24.) ████████████████████████████████████

█████████████████████████ (SF 25.)

## 2.    Extra Contractual Discussions In 2018

████████████████████████████████████████████

█████████ (SF 26.) ██████████████████████████

███████████████████████████████████████ (SF 27.)

████████████████████████████████████████

██████████████████████████████████████████████

(SF  29.) ███████████████████████████████████████

████████████ (*See* SF 27-28.) ███████████████████

████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████████

(SF 30.) █████████████████████████████████

██████████████████████████████████████████

███████████[5] (SF 31.) ██████████████████████

████████████████ (SF 32.) ███████████████████

███████████████████████████████████████

██████████████████ (SF 33-34.)

## 3.    The First "Letter of Intent"

Despite JAE's conceptual agreement to the sales price, AMTAX apparently changed its mind and its approach around the middle of May 2018. In late May 2018, in the midst of negotiating the purchase of the Interest ████████████████████

---

[5] Section 7.10.D of the LPA provides for an Incentive Supervisory Fee equal to 15% of the Gross Revenues of the Partnership, which would include sales proceeds.



1    ███ Mr. Johnson received a telephone call from John Nguyen, a real estate broker

2    purporting to be a representative for MRK Partners, Inc. ("MRK"). (SF 35.) Mr. Nguyen

3    informed Mr. Johnson that he had a "potential buyer" for the Property.  (SF 36.) When

4    asked by Mr. Nguyen whether he was interested in selling the Property, Mr. Johnson

5    indicated that the Property was not for sale. (SF 36.)

6    ████████████████████████████████████████████

7    ████████████████████████████████████████████

8    ███████ (SF 37.) While the MRK Letter stated a potential purchase price of

9    $24,000,000, it also clearly stated that no party would be bound without entering a

10   purchase and sale agreement. (SF 38.) ████████████████████████

11   ██████████████████ (SF 39.) Additionally, JAE believed it was going to

12   ultimately purchase AMTAX's Interest pursuant to the ongoing discussions, and,

13   accordingly, had no desire to sell the Property. (SF 40.) Regardless, Mr. Johnson further

14   discussed the MRK Letter with Mr. Blake ███████████████ (SF

15   41-42.)

16   ████████████████████████████████

17   ██████████████████████ (SF 43.) ███████████

18   ██████████████████████████████████████████

19   █████████████████████ (SF 44.) ████████████

20   ██████████████████████████████████████████

21   ██████████████████████ (SF 47.)

22   ████████████████████████████████████████

23   ██████ (SF 48.) ████████████████████████

24   ██████████████████████████████████████

25   ████████████████████ (SF 49.) ██████████████

26   ████████████████████████████████████████

27   (SF 51.)

28

6

**D.    AMTAX Invokes Section 7.4.I Of The LPA**

In its continuing efforts to obtain ███████████████████████ on or about August 9, 2018, AMTAX sent a letter claiming to exercise its rights under Section 7.4.I of the LPA. (SF 52.) █████████████████████████████████████████ ███████████████████ (SF 53.) Section 7.4.I does not provide any such right. Instead, Section 7.4.I states, in part, that after the expiration of the Compliance Period, the Investor Limited Partner (AMTAX) may notify the Managing General Partner (CVCAH) and request that the Co-General Partner (JAE) *choose* to either (i) sell the Property to a third party, or (ii) purchase or arrange for a third party to purchase the Interest for FMV. (SF 54.) The LPA states "[a]fter receipt of a request from the Investment Limited Partner, the Co-General Partner [JAE] shall determine which course of action it desires to utilize." (SF 55.) AMTAX agreed to these provisions when it entered into the LPA. (*See* SF 1, 4.)

The LPA further states that the purchase price:

> shall be equal to the fair market value of the Apartment Complex or the Interest, as the case may be. Fair market value shall be determined by the Investor Limited Partner and the Administrative General Partner, as the case may be, each retaining an appraisal from a qualified MAI appraiser. In the event that the two appraisers do not agree on the fair market value, the appraisers shall agree on the appointment of a third appraiser, whose appraisal shall be binding on the parties, provided however, that the Investor Limited Partner shall not be obligated to Consent to a sale in the event that it is not satisfied with the purchase price so determined by the foregoing process or by the other terms of the purchase and sale.

(SF 56.)  FMV is an industry standard term, and it is determined from the perspective of a hypothetical buyer considering all rights, risks, and obligations including risks related to lack of control and marketability.  (SF 57.)

**E.    The Second Letter of Intent**

████████████████████████████████████████████████ ████████████████████████████ (SF 58.) █████████████████████

1  The Levy Letter stated that a binding agreement would not arise until a purchase and sale

2  agreement was entered.  (SF 59.) Moreover, the Levy Letter expressly stated that it

3  became void if not accepted by August 10, 2018 – just one day after it was sent to JAE.

4  (SF 60.) ████████████████████████████████████████████████████████

5  ████████████████████████████████████ (SF 61.) Furthermore, AMTAX had

6  already invoked Section 7.4.I, which provided JAE the choice of selling the Property or

7  purchasing the Interest. (*See* SF 52, 55.) JAE preferred to exercise its contractual right to

8  purchase the Interest.

9  **F.    JAE Makes Its Election And AMTAX's Response**

10  ████████████████████████████████████████████████ (SF

11  62.) ████████████████████████████ (SF 63.)

12  █████████████████████████████████████████████████████████

13  ████████████████████████████ (SF 64.) ███████████████████

14  █████████████████████████████████████████████████████████

15  ██████████████████ (SF 65.) █████████████████████████████

16  ██████████████████ (SF 66.) █████████████████████████████

17  ██████████████████████████████████ (SF 68.) While

18  Novogradac had historically been the Partnership's auditor and tax preparer, (SF 69), ██

19  ███████████████████████████████████████████ (SF 70.)

20  Novogradac even served as an expert for an Alden Torch affiliated entity in litigation

21  similar to this case. (SF 71.) ███████████████████████████████

22  ██████████████████████████████████████████████████████████

23  █████████████ (SF 72.)[6]

_____

24

25  [6] ██████████████████████████████████████████████████████████

26  ███████████████████ (SF 73.) ████████████████████████

27  █████████████████████████████████████████ (SF 74.) ████████

28

**G.     The Appraisals**

███████████████████████████████████████████████

█████████████████████████████████████ (SF 77.) ███████████

███████████████████████████████████████████████████

█████████████████████████████████ (*See* SF 77-78; JF 11.) ████████████

█████████████████████████████████████████████████

██████████████████████████████ (*See* SF 78.)

████████████████████████████████████████████████

██████████ (SF 79.) ███████████████████████████████████

████████████████████████████████████████████████████

████████████ (SF 80.) ████████████████████████████████████

████████████████████ (SF 81.) Novogradac completed its appraisal in late

May 2019 – nearly 4 months after Mr. Doyle had completed his work. (SF 82.)

████████████████████████████████████████████████████

(SF 83; JF 12.) ██████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████ (SF 85-87.) Rather Novogradac claimed that it based its appraisal on its

"understanding" of the LPA and assumed that AMTAX "has the right to force a sale of

the real estate asset thus dissolving the Partnership. As such, [JAE] lacks negotiating

ability when determining if a discount for partial interest valuation should be applied.  . . .

As such, we have not applied a discount for lack of marketability and control when

valuing [AMTAX's] partial interest." (SF 88.) ███████████████████

████████████████████████████████████████████████████

_____

███████████████████████████████████████████████

███████████████████████████████████████████ (SF

75-76.)

9

1 ██████████████████████████████████████████████████████

2 █████████████████████████████ (SF 85, 87, 89.) ██████████████

3 ███████████████████████████ (SF 80-81.)  And it is wrong.[7]

4      After AMTAX and JAE exchanged their appraisals, the appraisers attempted to

5 agree on the FMV of the Interest pursuant to Section 7.4.I of the LPA.  (SF 93-94.) █████

6 ████████████████████████████████████████████████

7 ███████████████████████████ (SF 94.) Although it took nearly three months to

8 discuss their respective valuations, Mr. Doyle and Ms. Arthur both noted their own

9 schedules caused such delay. (SF 96.) On September 27, 2019, Mr. Doyle and Ms. Arthur

10 held a telephone conference. (SF 97.) ██████████████████████████

11 ████████████████████████████████████ (SF 101.)

12 █████████████████████████████████████

13 ███████████████ (SF 100.) ████████████████████

14 ████████████████████████████████████████████████

15 ███████████████████████████████ (SF 100-101.) ████

16 ███████████████████████████████ (SF 99), the undisputed

17 evidence demonstrates that Doyle wanted legal guidance before moving forward. JAE did

18 nothing to prevent the appointment of a third appraiser.

19 **H.**    **The Claims In This Action**

20      On October 29, 2019, JAE filed this lawsuit seeking a declaration regarding the

21

22 [7] ███████████████████████████████████████

23 ████████████████████████████████████████████

24 ████████████████████████████████████████████

25 ████████████████ (SF 89.) ████████████████████████

26 ██████████████████████ (SF 90.) ██████████████████

27 ████████████████ (SF 88-91.) █████████████████

28 ███████████████████████ (SF 80-81, 88-91.)

proper interpretation of the LPA and seeking expedited relief. (*See generally* ECF No. 1, Compl.)  In particular, JAE sought declarations that the LPA does not provide AMTAX a right to force the sale of the Property, but that JAE has the right to make an election whether to sell the Property to a third party or purchase or arrange a purchase of AMTAX's Interest. *Id*.  JAE also sought a determination that in light of JAE's rights, the FMV valuation requires the third appraiser to apply a discount for lack of marketability and control when valuing the Interest. *Id.*  Not only does the plain language of the LPA support these determinations, JAE's experts and AMTAX's expert agreed that AMTAX has no right to force a sale of the Property and that discounts should be considered when determining the FMV of the Interest.[8]  (SF 103-107.)

On November 20, 2019, AMTAX filed its answer and verified counterclaims, alleging: (1) breach of contract; (2) breach of fiduciary duty; (3) declaratory judgment – appraisal process; and (4) declaratory judgment – removal.  AMTAX claimed JAE breached the LPA and fiduciary duties by not considering the Letters. (*See generally* ECF No. 4, Counterclaims.)  AMTAX also claimed JAE breached the LPA by somehow delaying the appraisal process and the appointment of a third appraiser. (*Id*. ¶ 69.)

## I.   Alden Torch's Tactics To Obtain Windfalls Upon Partnership Exit

This is nothing new. AMTAX's counterclaims are consistent with Alden Torch's buyout tactics.  It has become well known among owners and managers of LIHTC projects. Alden Torch and its affiliates acquired millions of dollars' worth of LIHTC limited partner interests across the country, which enables the use of its significant resources and high-pressure tactics against general partners to create financial windfalls from LIHTC properties after the end of the respective compliance periods. Such tactics include baseless allegations and litigation seeking to deny general partner rights

---

[8] The experts differed on the amount of the discount, but not on the concept of a discount, which is what JAE is seeking this Court to determine (*i.e.,* the concept of a discount); it would be up to the third appraiser to determine the actual amount of the discount.

provided for in the respective partnership agreements. *See, e.g.*, *Hidden Hills Mgt, LLC v. Amtax Holdings 114, LLC*, 2019 WL 3297251 (W.D. Wash. July 23, 2019); *see also Urban 8 Fox Lake Corp., et. al v. Nationwide Affordable Housing Fund 4, LLC*, 431 F.Supp.3d 995, 1003 (N.D. Ill. 2020) (summary judgment rejecting investor limited partner's efforts to exclude application of a sale preparation fee credit owed to general partners in hypothetical sales used to calculate option purchase prices); *Urban 8 Fox Lake Corp. et al. v. Nationwide Affordable Housing Fund 4, LLC,* 334 F.R.D. 149, 164-65 (N.D. Ill. 2020) (sanctioning investor limited partner and counsel for discovery abuses); *Downtown Action to Save Housing v. Midland Corporate Tax Credit XIV, LP*, 2019 WL 934887 (W.D. Wash. Feb. 25, 2019)  (summary judgment preventing investor limited partner from blocking non-profit general partner's option exercise and allowing the non-profit to purchase the limited partner interests under an option agreement); *Arch Apartment Mgmt, LLC v. AMTAX Holdings 224 LLC*, 2019 WL 4745331 (Minn. Ct. App. 2019) (affirming district court's determination of an option purchase price and rejecting investor member's erroneous attempts to inflate price by more than $1,000,000); *Homeowner's Rehab. Inc. v. Related Corp.*, 99 N.E.3d 744 (affirming district court's rejection of investor limited partner's effort to prevent non-profit partner's purchase of project pursuant to a below market right of first refusal agreement); *CommonBond Investment Corp. v. Heartland Properties Equities Investment Fund IV LLC*, 2014 WL 8255277 (Minn. Dist. Ct. Nov. 14, 2014) (summary judgment reforming a right of first refusal agreement to correct an error and allow for non-profit to purchase project at below market price).

Alden Torch (and its related entities) have also scrutinized otherwise innocuous general partner actions in order to conjure up alleged defaults to support its numerous attempts to remove general partners and prevent them from realizing the value from their contractual rights.  *See Hidden Hills Mgt.*, 2019 WL 3297251.  AMTAX's allegations here are part and parcel of these tactics, which courts have found "baseless" and

intended to deprive general partners of their rights.  *See, e.g., CED Capital Holdings 200 EB, LLC v. CTCW-Berkshire Club LLC,* 2020 WL 1856259 (Fla. Cir. Ct. Apr. 8, 2020) (dismissing baseless claims against GP).

## III.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where "taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013) (citation omitted); Fed. R. Civ. P. 56.  A mere "scintilla" of evidence will not be sufficient to defeat a properly supported motion for summary judgment.  *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## IV.   JAE IS ENTITLED TO DECLARATORY RELIEF

JAE disputes AMTAX's and Novogradac's contract positions: (1) that AMTAX "has the right to force a sale of the real estate asset thus dissolving the Partnership";  and (2) that JAE therefore "lacks negotiating ability" to apply "a discount for lack of marketability and control when valuing [AMTAX's] partial interest."  Generally, "[u]nder statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation" and that intent is to be inferred wherever possible solely from the written contract provisions. *Waller v. Truck Ins. Exch., Inc.* 11 Cal.4th 1, 18 (1995), as modified on denial of reh'g (Oct. 26, 1995) (citing Cal. Civ. Code §§ 1636, 1639).  The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage', controls judicial interpretation." *Id.* (quoting Cal. Civ. Code §§ 1644, 1638).

First, on its face the LPA does not give AMTAX the right to force the sale of the

13

Property.  Section 7.4.I explicitly states that after the Compliance Period and after AMTAX has made a request pursuant to this section – both of which have occurred here – JAE has the right to choose to sell the Property, allow AMTAX to sell its Interest to a third party, _**or**_ to buy the Interest. (SF 52, 54, 55.)  This is clear on the face of the LPA. (SF 54-55.)  And every expert in this case agrees.  (SF 104-105, 109-110). ██████████

████████████████████████████

████████████████████████████████ (SF 104). ██████████████

████████████████████████████████ (SF 105).  This is not a matter materially in dispute.

Second, once JAE chooses to buy the Interest, the LPA unequivocally sets the price at FMV – an industry term that specifically considers the factors inherent in determining FVM, _i.e._, the Interest's risks from lack of marketability and control.  (SF 57.)  Once again, experts for both parties agree. AMTAX's own expert, Melissa Bach, declared that, here: ████████████████ (SF 106).  Arguing against her own client's position, she further declared: "it appears that the conclusion of no impact to lack of control or marketability and thus, no discount to the Net Asset Allocation Amount, is based on an interpretation that appears to be inconsistent with my understanding of the language in Section 7.4.I of the Partnership Agreement."  (SF 107). This matter is also materially undisputed.

Based on the undisputed evidence, JAE is entitled to declarations: (1) that the LPA does not provide AMTAX the right to force a sale of the Property leading to the dissolution of the Partnership; (2) that JAE has negotiating ability when determining that lack of marketability and control discounts should be applied to the fair market valuation of AMTAX's limited partnership interest under the LPA; and (3) that the LPA requires the neutral third appraiser to determine FMV, which requires consideration of discounts

14

for lack of marketability and control when valuing AMTAX's Interest.[9]

## V. JAE IS ENTITLED TO SUMMARY JUDGMENT ON AMTAX'S COUNTERCLAIMS

### A.   JAE Did Not Breach The LPA

AMTAX brings a breach of contract claim based upon two allegations: JAE refused to consider in good faith the MRK and Levy Letters; and JAE intentionally delayed the appraisal process under Section 7.4.I. (ECF No. 4, Counterclaims ¶ 69.) AMTAX cannot prevail unless it proves: (1) the contract; (2) its performance or excuse for nonperformance; (3) JAE's breach; and (4) non-speculative damages. *Wall Street Network Ltd. v. New York Times, Co.*, 164 Cal.App.4th 1171, 1178 (2008).

#### 1.   No Breach Of The LPA

##### a.   <u>No Breach Of The LPA Related To The Letters</u>

First, AMTAX has not identified any LPA provision requiring JAE to consider the Letters at all. To the contrary, JAE has no obligation to sell the property until the year 2052. (SF 3.)

Second, the undisputed material facts show that JAE, in fact, considered the Letters anyway. ██████████████████████████████████████ ███████████████████████████ (SF 28, 32, 33.) ███████████ █████████████████████████████ (SF 34.) ███████████ ██████████████████████████████████████████████████ ██████████████████████████████████ (SF 37.) ███ ██████████████████████████████████

---

[9] Federal courts routinely consider declaratory relief where both parties seek a determination regarding the proper interpretation of a contract. *See Walter Int'l Prods., Inc. v. Salinas*, 650 F.3d 1402, 1406 (11th Cir. 2011). JAE and AMTAX seek competing declarations about the LPA, meeting this prong of the test. *Principal Life Ins. Co. v. Robinson,* 394 F.3d 665, 669 (9th Cir. 2005). A judgment here will clarify the parties' legal relations, remove uncertainty, and the case was not brought for forum shopping purposes. *See Brillhart v. Excess Ins. Co.,* 316 U.S. 491 (1942); *Principal Life Ins. Co.,* 394 F.3d at 669.

(SF 39.)[10] Nonetheless, JAE discussed the MRK Letter with both Mr. Blake ▮▮▮▮▮▮ (SF 41-42.)

(SF 36, 39, 40.)

The Levy Letter was not received by JAE until at least August 9, 2018 – after AMTAX claimed to exercise its rights under 7.4.I.  (SF 58.)

(SF 59-61.)

The undisputed evidence demonstrates that JAE did, in fact, reasonably consider both Letters under the circumstances in which they were received, and that it chose instead to exercise its rights under the LPA to purchase the Interest rather than sell the Property to a third party. [11]  This is exactly what the LPA authorizes it to do. A party does

[10]

(SF 47.)

(SF 63.)

[11] Although not required for summary judgment, if necessary, at trial, JAE will present evidence

16

not breach a contract by exercising contractually authorized rights. Regardless, the undisputed facts show that JAE considered the very thing Alden Torch alleges it did not.

### b.   No Breach Of The LPA Related To Delay

AMTAX also alleges that JAE breached the LPA by delaying and then "halting" the appraisal process.  (ECF No. 4, Counterclaims, ¶ 69(b)).  The undisputed evidence demonstrates JAE did no such thing.  JAE informed AMTAX of its decision to exercise its rights to purchase AMTAX's interest or have a third party purchase the interest on October 11, 2018.  (SF 62.)  Far from moving slowly, JAE had already engaged an appraiser, and had a final appraisal ready as of late January 2019.  (*See* SF 77-78.)  By contrast, AMTAX did not even engage Novogradac until March 2019, (SF 79), and its appraisal was not ready until late May 2019 – *four months later*.  (SF 82).  The parties exchanged appraisals on May 29, 2019.  (SF 93; JF 10).  JAE did nothing to delay the appraisals.

Thereafter, the two appraisers sought to discuss their differences and the potential appointment of a third appraiser.  During this time, the undisputed evidence *from both appraisers* shows that any delay was based upon their own independent schedules, not JAE.  (SF 96.)  In fact, JAE's counsel repeatedly reached out to its appraiser, Mr. Doyle, asking him to move forward with a meeting with AMTAX's appraiser.  (SF 95, 99.)  The appraisers finally spoke at the end of September 2019, but they did not reach any agreement.  (SF 97-98.) ███████████████████████████████████ ███████████████████████████████████████████████ ██████████████████████ (SF 100-101.)  As such, JAE did not cause any delay.

### 2.   No Evidence Of Damages

Even if the Court were to somehow find that JAE acted contrary to a contractual obligation, AMTAX's breach of contract claim still fails because there is no evidence it was damaged.  Its assertions about damages are speculative, at best.

17

### a. No Damages on the Letters of Intent Issue

The linchpin of AMTAX's claim with respect to the Letters is that, had JAE considered them, these Letters would have caused the sale of the Property for a price between $24,000,000 and $25,000,000 and that this sale would create a liquidation distribution to AMTAX that exceeds the current value of its Interest and distributions. Setting aside for one moment the *case dispositive fact* that JAE has no obligation to sell the property, there is still no evidence that any sale would have been consummated at that or any price. Both Letters were marked "non-binding" and referred only to a "potential" buyer if terms could be worked out. (SF 37-38, 58-59.) ███████████████████

██████████████████████████████████████████████

██████████ (SF 50.) AMTAX can provide no evidence of that here. AMTAX's theory of damages is unfounded speculation.

Additionally, AMTAX *today still holds* its Interest. (SF 16.) All of it. The Partnership *today still owns* the Property. (SF 17.) All of it. And there is no evidence that the value of either has been diminished or impaired in any way. Even if AMTAX's breach theories had factual or legal merit, AMTAX has lost *absolutely nothing.* AMTAX lacks any evidence concerning damages relating to any such sale or the diminution in value where AMTAX still holds its Interest today. It is likely this absence of evidence that led AMTAX's own purported damages expert to testify that she was *not* providing any damages opinions in this case. "At this time neither in my rebuttal nor in the expert report did I provide an opinion of what damages are in this." (SF 108.) Instead, AMTAX's damages assertions are based on simple speculation, and summary judgment is appropriate for this independent reason. *See Kids' Universe v. In2Labs,* 95 Cal.App.4th 870, 882-88 (2002) (affirming summary judgment award where evidence could not establish damages with reasonable certainty); *Greenwich S.F., LLC v. Wong*, 190 Cal.App.4th 739, 753-54 (2010) (damages not available where prospects are "uncertain, hypothetical and entirely speculative.") It is distinctly possible that the

Property has appreciated in value since the Letters were received.  AMTAX has certainly produced no fact or expert evidence to the contrary.

b. No Damages On The Delay Issue

Similarly, even assuming a breach with respect to appraisal timing issues, AMTAX again presumes damages without any facts or evidence.  First, even assuming, *arguendo*, that JAE had delayed the appointment of the third appraiser, it is rank speculation what value that third appraiser might decide for the Interest. █████████████████████ ████████████████████████████████████████████████████████ █████████████████████████████████████████████ (SF 30, 102.) ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████ (SF 65-66.)  It is, therefore, completely speculative that any sale would have happened, when, or at what price.  Finally, again, AMTAX still holds its Interest today and continues to receive huge annual distributions. (SF 16, 18.) And AMTAX is still entitled to receive its share of the sales proceeds when the Property is ultimately sold in 2052 per the LPA. (*See* SF 3, 12.)  AMTAX offers no evidence about the value of any of these things. There is zero evidence to support any non-speculative damages from the claimed delay.  *See Prostar Wireless Grp., LLC v. Domino's Pizza, Inc*., 360 F. Supp. 3d 994, 1020-21 (N.D. Cal. 2018) (no damages where speculation as to underlying facts and Plaintiff's expert did not rely on any specific data of the business); *Hall v. EarthLink Network, Inc*., 396 F.3d 500, 506 (2d Cir. 2005) (affirming grant of summary judgment for defendant where Plaintiff failed to present expert testimony or reliable data of damages.)

A.   **No Breach Of Fiduciary Duties**

Despite JAE managing the Partnership and the Project for decades in a successful manner providing ████████████████████████████ to AMTAX and affordable housing to low income families in Riverside, California, AMTAX brings a

19

breach of fiduciary duty claim, on behalf of itself and derivatively, based upon one alleged act: that JAE did not reasonably consider the 2018 Letters.[12]   AMTAX claims this constitutes a breach of the duty of care, loyalty, and good faith.   To establish a cause for breach of fiduciary duty, AMTAX must prove: "(1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." *Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP*, 593 F. Supp. 2d 1153, 1169 (S.D. Cal. 2008) (internal quotations and citations omitted).   AMTAX fails.

### 1.   JAE Did Not Breach Any Duty To AMTAX Or The Partnership

AMTAX simply has assumed that JAE had a duty to accept the Letters or to buy out AMTAX at a price based on the Letters. (SF 64-67.)   This is both factually and legally unsupportable.

First, the duties of loyalty and care a general partner owes to a limited partnership are set forth in Corporations Code Section 15904.08(b) and (c).   These duties are specifically enumerated in the statute and *none of them* are at issue in this case.[13] AMTAX has produced no evidence showing that JAE breached any such fiduciary duty or produced evidence giving rise to a genuine dispute of material fact on that score.

---

[12] AMTAX cannot bring these claims both individually and derivatively.   Either a harm is to the Partnership or to a limited partner.   It cannot be both.   Either way the claim fails.

[13] A general partner's duty of loyalty to the limited partnership and the other partners is limited to the following: (1) to account to the limited partnership and hold as trustee for it any property, profit, or benefit derived by the general partner in the conduct and winding up of the limited partnership's activities or derived from a use by the general partner of limited partnership property, including the appropriation of a limited partnership opportunity; (2) to refrain from dealing with the limited partnership in the conduct or winding up of the limited partnership's activities as or on behalf of a party having an interest adverse to the limited partnership; and (3) to refrain from competing with the limited partnership in the conduct or winding up of the limited partnership's activities. (c) A general partner's duty of care to the limited partnership and the other partners in the conduct and winding up of the limited partnership's activities is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law. Cal. Corp. Code § 15904.08(a)-(c).

20

Second, while partners owe each other and the partnership the duties of a fiduciary, no authority supports the proposition that the fiduciary relationship requires that a general partner exercise its rights such that the limited partner feels it has received as much as it thinks it deserves.  JAE has not engaged in any self-dealing that would give rise to a breach of fiduciary duty claim.  Instead, it has merely exercised its contractual rights to buy AMTAX's Interest rather than sell the Property.  (SF 55-56, 62).  As a matter of law, there can be no breach of a fiduciary duty when a general partner has simply followed the plain language of the partnership agreement.  *J&J Celcom v. AT&T Wireless Servs. Inc*., 169 P.3d 823, 825 (Wash. 2007); *see also Alder v. William Blair & Co.*, 648 N.E. 2nd 226, 235-36 (Ill. App. Ct. 1995) (no breach of fiduciary duty for a general partner to refuse "to abandon the primary purpose of the partnership in the face of tax law changes"); *Homeowner's Rehab, Inc. v. Related Corporate V SLP, L.P.*, 99 N.E.3d 744, 762 (Mass. 2018) ("Because the contours of fiduciary duties are defined with reference to the terms of the contract, there can be no claim for a breach of fiduciary duty where a partner's contested action falls entirely within the scope of a contract between the partners.")(internal quotation omitted).  AMTAX seemingly argues that JAE has an obligation to only take acts that maximize AMTAX's returns notwithstanding JAE's contractual rights set forth in the LPA.  AMTAX's position is contrary to the LPA, as a matter of California law, because "[a] general partner does not violate a duty or obligation under this chapter or under the partnership agreement merely because the general partner's conduct furthers the general partner's own interest."  Cal. Corp. Code § 15904.08(e).[14]

Additionally, under California law, a partner's duty of care "is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law."  Cal. Corp. Code § 15904.08(c).  AMTAX has presented no

---

[14] Numerous cases have similarly rejected Alden Torch's (or its related entities) views of breaches of fiduciary duties. *See, e.g.,* § II.I *supra*.

evidence to show a breach under any prong.  JAE elected to buy-out AMTAX's Interest rather than sell the Property, as expressly permitted by the LPA.  (SF 55-56, 62).  Even if JAE had some duty to conduct some further investigation into the Letters – and neither the law nor the LPA create such a duty – none of this rises to the level of grossly negligent or reckless conduct or knowing violation of the law.  *See Wright v City of L.A.*, 219 Cal.App.3d 318, 343 (1990) (gross negligence means the failure to provide even scant care or extreme departure from the ordinary standard of care); *Delany v. Baker*, 20 Cal.4th 23, 31-32 (1999) (Recklessness requires deliberate disregard of probable dangerous consequences.) AMTAX's breach of fiduciary duty claim fails.

### 2.     AMTAX Has No Evidence Of Damages

Again, even if there were a breach of duty, AMTAX's still cannot establish any damages.  AMTAX claims that it and/or the Partnership has been damaged because JAE did not consider the Letters.  But there is no evidence such a sale would have been consummated and AMTAX continues to hold its Interest. The Partnership continues to own the Property. There is no evidence that any value has been diminished or impaired in any way. *See supra* at V.A.2.

### 3.     AMTAX Lacks Standing To Bring Derivative Claims

AMTAX cannot bring derivative claims on behalf of the Partnership because it lacks evidence that it made a demand or established futility.  For a limited partner to have standing to bring a derivative action, it must satisfy the "demand requirement" by making a demand on the general partners, requesting that they cause the limited partnership to bring an action to enforce the right.  Cal. Corp. Code §§ 15910.02; 15910.03; 15910.04; *Buckland v. Threshold Enters., Ltd.*, 155 Cal.App.4th 798, 813 (1999) (overruled on other grounds by *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310 (2011)).  A purported derivative claim "must state with particularity: (1) the date and content of the plaintiff's demand and the general partners' response to the demand." Cal. Corp. Code § 15910.04.

1   This requirement is "intended to prevent the abuse of the derivative suit remedy." *Bader*

2   *v. Anderson*, 179 Cal.App.4th 775, 790 (2009).

3        AMTAX alleges that demand would be futile because "the alleged wrongdoing

4   alleged herein was perpetrated by JAE itself." (ECF No. 4, Counterclaims ¶ 18.)  But

5   AMTAX fails to provide any evidence to establish futility and vague assertions of JAE's

6   self-dealing are insufficient.  Further, AMTAX completely ignores that *JAE is not the*

7   *only general partner*.  CVCAH is the "Managing General Partner." (SF 6).  There are no

8   allegations about any demands made upon CVCAH or why AMTAX would be excused

9   from doing so, and there is no evidence to justify AMTAX's failure to make such a

10  demand on CVCAH as required by the California Corporations Code.  Therefore, the

11  derivative claim should be dismissed for lack of standing.[15]

12  **B.    AMTAX's Declaratory Relief Claim Should Be Dismissed.**

13       AMTAX seeks: (1) a declaration with respect to how the valuation of its Interest

14  should be conducted and (2) a declaration that discounts for lack of marketability and

15  control should not be considered in calculating the FMV of its Interest.

16       Although AMTAX seeks a declaration that the valuation should be based upon a

17  liquidation value, such valuation is inconsistent with the LPA – and AMTAX's own

18  expert, Neil Faden, testified that it is certainly not *required* by the language of the LPA.

19  (SF 109-110.) The only qualified business valuation expert to address the value of a

20  fractional interest (e.g., a limited partnership interest) was JAE's expert, Mr. Solomon.

21

22  [15] Even if AMTAX were to successfully assert a derivate claim, the claim should be
23  dismissed pursuant to the business judgment rule.  California's business judgment rule
    shields defendants from liability here.  *Lee v. Interinsurance Exchange*, 50 Cal.App.4th
24  694, 712 (1996).  The burden is on the party challenging the decision to establish facts
    rebutting the presumption." *Leyte-Vidal v. Semel*, 220 Cal.App.4th 1001, 1008 (2013)
25  (quotation omitted).  Here, the challenged decision to retain Property that was vital to the
26  Partnership's mission of providing low-income housing is clearly in the best interest of
    the Partnership.  There is no evidence that selling the Property would be beneficial to the
27  Partnership.

28                                          23

He opined that the FMV of the Interest should be based on the economic benefits expected to be received by the Interest from a long-term hold of the real estate discounted to present value based on the required rate of return for an investor that suffers from both a lack of control and lack of marketability. (SF 111.) The concepts of lack of control and lack of marketability are critical to estimating the FMV of the Interest and estimating a price from a hypothetical buyer. The risk factors including lack of control and lack of marketability should be included in determining the discount rate utilized to put a value on the expected cash flows. (SF 112.) And AMTAX's expert testified that a discounted cash flow analysis is "a more applicable approach if you know that you're going to have a varying level of income and you have an investment hold period that you're -- that you have going forward"; (SF 113), which is the case here. (SF 3.)

Because AMTAX lacks the ability to force a sale of the Property (SF 104-105), the value of the Interest must be based on the perspective of a hypothetical investor/buyer who cannot force a sale, expects economic benefits from cash flow from operations to which AMTAX is entitled, and is subject to risks related to lack of control and lack of marketability.[16]  As JAE's expert explained, "the risk of lack of control increases a hypothetical investor's required rate of return and reduces value since the hypothetical investor cannot unilaterally control major decisions (sell, refinance, operate, determine cash flow distributions)."  (SF 114.)  "The risk of lack of marketability increases a hypothetical investor's required rate of return and reduces the value because there is little market for a non-controlling investor limited partnership interest after the end of the tax credit period and there are contractual restrictions on transfer (the LPA requires the consent of the general partner to transfer)."  (SF 115.)  A discounted cash flow would be the proper analysis for this valuation.  In fact, AMTAX's own appraiser, Ms. Arthur from Novogradac, conceded as much.  (SF 84.)

---

[16] This is true even if one also ignores the powers given to the general partners to admit or not to admit substitute general partners.  LPA § 9.3

24

Second, as set forth *supra*, the undisputed evidence, including AMTAX's own expert, demonstrates that discounts must be applied in the valuation methodology. (SF 106.) Consequently, AMTAX is not entitled to either declaration it seeks.

## C.   AMTAX Has No Basis For Removing JAE

AMTAX's final claim is a declaration seeking to remove JAE as a Co-General Partner. AMTAX bases its claim on Section 4.5 of the LPA and the alleged breaches of contract and fiduciary duty. (ECF No. 4, Counterclaims, ¶ 83.) Because there is no evidence of any such breaches or any harm therefrom, there is no basis to remove JAE. Much like a Florida court found, AMTAX's purported alleged defaults are a baseless attempt to deprive JAE of its contractual rights. *See CED Capital Holdings 200 EB LLC v. CTCW-Berkshire*, 2020 WL 1856259 (Fla. Cir. Ct. Apr. 8, 2020) (finding limited partner's "allegations of default were baseless and intended to deprive [GP] of its contractual right to purchase [the limited partner's] interest in the Partnership pursuant to its" contractual rights). AMTAX's attempts to circumvent the LPA should be rejected.

## VI.   CONCLUSION

For the reasons set forth above, JAE respectfully requests that the Court grant its Motion for Summary Judgment, enter judgment in favor of JAE on its claim for declaratory relief, and dismiss each of AMTAX's counterclaims with prejudice.

DATED: September 14, 2020

ROBERT P. BERRY
CAROL M. SILBERBERG
BERRY SILBERBERG STOKES PC


By:   /s/ Robert P. Berry

ROBERT P. BERRY
Attorneys for Plaintiff and Counter-
Defendant JAE Properties, Inc.

25

## PROOF OF SERVICE

### *JAE PROPERTIES, INC. v. AMTAX HOLDINGS 2001-XX, LLC, ETC.*
### Case No. 19-cv2075-JAH-LL

**STATE OF MISSOURI, COUNTY OF ST. LOUIS**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of St. Louis, State of Missouri. My business address is 16150 Main Circle Drive, Suite 120, St. Louis, MO 63017.

On September 14, 2020, I served true copies of the following document(s) described as **JAE PROPERTIES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JAE PROPERTIES, INC.'S MOTION FOR SUMMARY JUDGMENT** on the interested parties in this action as follows:

| | |
|---|---|
| KING & SPALDING LLP | *Attorneys for Defendant* |
| CRAIG H. BESSENGER | AMTAX Holdings 2001-XX, LLC |
| ERIC S. PETTIT | |
| LAURA RADEN | |
| 633 West Fifth Street | |
| Suite 1600 | |
| Los Angeles, CA 90071 | |
| Telephone: 213-443-4355 | |
| Fax: 213-443-4310 | |
| Email: epettit@kslaw.com | |
| Email: cbessenger@kslaw.com | |
| Email: lraden@kslaw.com | |

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on September 14, 2020, at St. Louis County, Missouri.


 /s/ Robert P. Berry
Robert P. Berry