1
2
3
4
5
6
7
8                   UNITED STATES DISTRICT COURT

9                 SOUTHERN DISTRICT OF CALIFORNIA

10

11   JAE PROPERTIES, INC.,                Case No. 3:19-cv-02075-JAH-DDL

12                         Plaintiff,
                                         **ORDER:**
13   v.

14   AMTAX HOLDINGS 2001-XX, LLC,         **(1) GRANTING IN PART AND**
                                         **DENYING IN PART AMTAX'S**
15                         Defendant.     **MOTION FOR SUMMARY**
                                         **JUDGMENT, (ECF No. 80);**
16   _____

17   AMTAX HOLDINGS 2001-XX, LLC,         **(2) GRANTING IN PART AND**
                                         **DENYING IN PART JAE'S MOTION**
18                  Counter-Plaintiffs,  **FOR SUMMARY JUDGMENT, (ECF**
                                         **No. 83).**
19   v.

20   JAE PROPERTIES, INC.,

21                  Counter-Defendant.

22

23             **I.     INTRODUCTION**

24        Presently before the Court is Defendant/Counter-Plaintiff AMTAX Holdings 2001-

25   XX, LLC's ("AMTAX" or "Defendant"), motion for summary judgment, ("AMTAX

26

27

28

                                   1
                                                            3:19-cv-02075-JAH-DDL

MSJ", ECF No. 80),[1] and Plaintiff/Counter-Defendant JAE Properties, Inc.'s ("JAE" or "Plaintiff"), motion for summary judgment, ("JAE MSJ", ECF No. 83).[2]  The Court found this matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. (ECF No. 101).  Upon consideration of the Parties' arguments, the record, and the relevant law, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion for summary judgment, and **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion for summary judgment.

## II.     BACKGROUND

### A.     The Limited Partnership Agreement

On August 27, 2001, Plaintiff JAE (a Co-General Partner), and Defendant AMTAX (the Investor Limited Partner)[3] entered into an Amended and Restated Agreement of Limited Partnership ("LPA") "to acquire, develop, construct, rehabilitate, own, and maintain an 150 unit multi-family apartment complex" known as the Victoria Heights Apartment Complex in Riverside, California.  ("LPA"[4] at 6[5]).  The Victoria Heights Apartment complex is a "qualified low-income housing project" eligible for federal income tax credits under the Low-Income Housing Tax Credit ("LIHTC") program.  ("Compl.",

---

[1]     Public redacted version of AMTAX Holdings 2001-XX, LLC's Motion for Summary Judgment can be found at ECF No. 80. The unredacted version is available at ECF No. 79.  The Court cites to the redacted versions of the Parties' submissions.

[2]     Public redacted version of JAE Properties, Inc.'s Motion for Summary Judgment can be found at ECF No. 83. The unredacted version is available at ECF No. 82.

[3]     Central Valley Coalition for Affordable Housing ("CVCAH") and Protech 2001-B, LLC, are parties to this agreement but are not parties to this suit.

[4]     Both Parties provide the LPA in support of their respective motions. (AMTAX MSJ, Ex. T, ECF No. 79-22 at 109-199; JAE MSJ, Ex. MM, ECF No. 82-41 at 86-168).  For efficiency, the Court will cite to the LPA provided by AMTAX's Answer and Counterclaims.  (*See* Ex. A, ECF No. 9-1).

[5]     Unless otherwise stated, page numbers referenced herein refer to the page numbers generated by the CM/ECF system.

ECF No. 1 at ¶ 10; AMTAX MSJ at 9, fn. 2).  AMTAX holds an ownership interest of 99.9% and JAE holds an ownership interest of .0495%.[6]  (LPA at 81, Sched. A).

The LIHTC program, codified at 26 U.S.C. § 42 of the Internal Revenue Code, is a federal tax credit program "designed to promote the development of affordable rental housing for low-income households." *Senior Hous. Assistance Grp. v. AMTAX Holdings 260, LLC*, No. C17-1115RSM, 2019 WL 687837, at *1 (W.D. Wash., Feb. 19, 2019). "The LIHTC program gives investors a monetary incentive to invest in low income housing by providing tax credits rather than traditional cash returns." *In re Sunnyslope Hous. Ltd. P'ship*, 818 F.3d 937, 941 (9th Cir. 2016).  LIHTC projects have a fifteen-year "Compliance Period," after which "most investor limited partners will seek to leave the project[.]" *Senior Hous. Assistance Grp.*, 2019 WL 687837, at *1 (citing *Homeowner's Rehab, Inc. v. Related Corporate V SLP, L.P.*, 99 N.E.3d 744 (Mass. 2018)).

The instant dispute arises at the expiration of the fifteen-year compliance period (JAE Separate Statement of Undisputed Material Facts "JAE SSUMF", ECF No. 82-1 at 5; AMTAX MSJ at 12). At that time, the LPA provides that AMTAX may request that JAE "choose to either (i) sell the Apartment Complex to a third party, or (ii) purchase or arrange for a third party to purchase the Limited Partners Interests in the Partnership for the fair market value of the Interests[,]" pursuant to the terms of the LPA.  (LPA at 46-47).  After AMTAX's request, JAE determines "which course of action it desires to utilize." (*Id.* at 47).  Once a sale has been requested and an option chosen, the purchase price is determined by the fair market value ("FMV") of the Victoria Heights property.  (*Id.*)  FMV is determined by AMTAX and JAE each retaining an appraisal from a qualified Member Appraisal Institute ("MAI").  (*Id.*)  If the two appraisers are unable to agree on the FMV of the property, the appraisers shall agree on the appointment of a third appraiser.  (*Id.*)

---

[6]     According to the LPA, CVCAH holds an ownership interest of .0495%, and Protech 2001-B, LLC holds an ownership interest of .001%.  (LPA at 81, Sched. A).

The appraisal by the third-party appraiser shall be binding on the Parties, however, AMTAX as the Investor Limited Partner shall not be obligated to consent to the sale. (*Id.*)

## B. The MRK and Levy Letters

Between late 2017 and May of 2018, representatives of JAE and AMTAX discussed JAE purchasing AMTAX's interest of the Victoria Heights complex for $11,500,000. (AMTAX MSJ at 12; JAE MSJ at 11). By June 8, 2018, JAE had hired an MAI appraiser, Doyle & Associates ("Doyle"), to assess the value of AMTAX's interest in the Victora Heights complex. (Declaration of Robert P. Berry In Support of JAE's Motion for Summary Judgment, "Berry Decl. ISO JAE MSJ", ¶ 4, Ex. C (Johnson Depo.), ECF No. 82-4 at 112:6-113:19[7]).

In May of 2018, John Nguyen of MRK Partners, Inc., ("MRK"),[8] sent a letter addressed to the Affordable Housing Group communicating a desire to purchase the Victoria Heights property for $24,000,000. (Declaration of Christopher Blake In Support of AMTAX's Motion for Summary Judgment, "Blake Decl. ISO AMTAX MSJ", ¶ 8, Ex. 4, ECF No. 79-29 at 2-3). Through counsel, AMTAX sent a letter to JAE on June 8, 2018, addressing the MRK letter and requesting JAE "contact [Christopher] Blake[9] directly to discuss MRK's offer or, alternatively, the General Partners purchase the Limited Partner interests for an amount that is reflective of the purchase price being offered by MRK." (Berry Decl. ISO JAE MSJ, ¶ 20, Ex. S, ECF No. 82-20 at 2-3). In a letter dated July 16, 2018, Levy Affiliated Holdings, LLC ("Levy") communicated a desire to purchase the Victoria Heights property for $24,500,000. (Declaration of Christopher Blake In Support

---

[7]     Page numbers in citations to depositions are those appearing on the face of the deposition transcript and not the page number affixed by the Court's electronic case filing system (CM/ECF).

[8]     John Nguyen is a real estate broker who purportedly represents MRK. (JAE MSJ at 12).

[9]     Christopher Blake is the Managing Director of Capital Transactions at Alden Torch Financial, LLC, which is responsible for managing AMTAX's investment in Victora Heights, Ltd. (Blake Decl. ISO AMTAX Opp'n, ECF No. 86-16 at ¶ 1).

of AMTAX's Opposition to Summary Judgment, "Blake Decl. ISO AMTAX Opp'n", ¶ 7, Ex. 2, ECF No. 86-19 at 2-3).  Levy subsequently sent a second letter on August 3, 2018, which increased the proposed purchase price to $25,000,000.  (Blake Decl. ISO AMTAX Opp'n, ¶ 8, Ex. 3, ECF No. 86-20 at 2-3).  JAE asserts it did not receive this letter until August 9, 2018.  (JAE MSJ at 13).

## C.   AMTAX Gives Notice of Exercising Exit Option

On either August 8 or 9, 2018, AMTAX formally notified CVCAH of its intent to exercise its right under Section 7.4.I of the LPA "to sell the Apartment Complex to a third-party."  (Berry Decl. ISO JAE MSJ, ¶ 22, Ex. U, ECF No. 82-22 at 2).  Then, on October 11, 2018, JAE informed AMTAX of its intention to purchase or arrange for a third party to purchase AMTAX's interest in the partnership.  (Joint Statement of Undisputed Material Fact, "Joint SUMF", ECF No. 80-37 at ¶ 9).  As prescribed by the LPA, AMTAX hired its own MAI appraiser, Novogradac & Company LLC ("Novogradac").  (AMTAX MSJ at 16).  Novogradac was also the Partnership's auditor and tax preparer.  (Berry Decl. ISO JAE MSJ, ¶ 3, Ex. B (Blake Deposition), ECF No. 82-3 at 199:9-11).  Both Doyle and Novogradac employed a direct capitalization methodology to determine the FMV of the Victoria Heights property, although the appraisers initially arrived at different valuations.  (AMTAX MSJ at 16; JAE Separate Statement of Disputed and Undisputed Material Facts, "JAE SSDUF", ECF No. 89-1 at ¶ 56).  Doyle and Novogradac exchanged appraisals on May 29, 2019.  (JAE SSDUF at ¶ 56).  Doyle determined the FMV for the property as $17,425,000, and FMV for AMTAX's interest as $6,950,000 after debt, LPA allocation provisions, liquidity and marketability discounts, and sales expenses.  (Declaration of Craig H. Bessenger In Support of AMTAX's Motion for Summary Judgment, "Bessenger Decl. ISO AMTAX MSJ", ECF No. 79-2, ¶ 17, Ex. P (Doyle Appraisal), ECF No. 79-18 at 5).  On the other hand, Novogradac determined FMV for the property as $25,300,000, and FMV for AMTAX's interest as $20,720,000. (Bessenger Decl. ISO AMTAX MSJ, ¶ 21, Ex. T (Arthur Appraisal), ECF No. 79-22 at 5, 7).

While engaged with Doyle for the appraisal of the Victoria Heights complex, JAE also engaged with Dwight Capital in discussions of a potential refinance "to fund JAE's contemplated purchase of AMTAX's interest" of the subject property.  (SSDUF at ¶ 52).  Dwight Capital initially modeled the loan based on a $27,651,400 hypothetical market rate valuation.  (Bessenger Decl. ISO AMTAX MSJ, ¶ 3, Ex. B (Johnson Deposition), ECF No. 79-4 at 267:1-15).

Through some discussion, Doyle and Novogradac compromised on a $24,000,000 valuation for the entirety of the Victoria Heights Apartment Complex.  (AMTAX MSJ at 17; JAE SSDUF at ¶ 62).  Despite this compromise, the Parties could not reach a consensus on the FMV of AMTAX's interest.  (JAE SSDUF at ¶ 62).  Novogradac explained its proportionally higher distribution of the property's FMV to AMTAX's interest, stating *inter alia*:

> [B]ased upon our understanding of the Amended and Restated Agreement of Limited Partnership, [AMTAX] has the right to force a sale of the real estate asset thus dissolving the Limited Partnership. As such, [JAE] lacks negotiating ability when determining if a discount for partial interest valuation should be applied. If [AMTAX] is not offered the full value of their partial interest as determined through the waterfall analysis based upon dissolution of the Limited Partnership, then, [AMTAX] could elect to force a sale of the real estate asset; thus, ensuring [AMTAX]'s realization of the full value of their partial interest. As such, we have not applied a discount for lack of marketability and control when valuing [AMTAX]'s partial interest.

(Arthur Appraisal at 95).  The Doyle appraisal, on the other hand:

> [Re]lied upon the provisions of the LPA and JAE's election to purchase AMTAX's limited partnership interest and based its valuation, in part, upon the fact that AMTAX's limited partnership (the "Interest") suffers from a lack of control, including no right to force a sale of the real estate, and suffers from a lack [of] marketability including contractual restrictions on transfer.

(Berry Decl. ISO JAE MSJ, ¶ 44, Ex. QQ (Solomon Expert Report), ECF No. 82-44 at 4).  As prescribed by the LPA, Doyle and Novogradac were to appoint a third appraiser.  (LPA

at 47).  However, recognizing that Doyle wanted "legal guidance" before appointing a third appraiser, JAE brought this lawsuit seeking, *inter alia*, "a declaration regarding the proper interpretation of the LPA[.]"  (JAE MSJ at 16-17).

### III.   PROCEDURAL HISTORY

In its Complaint, JAE seeks judicial determinations that (1) the Limited Partnership Agreement "does not provide AMTAX a right to elect to force the sale of the real estate assets, but that . . . JAE[ ] has the right to elect whether to sell the [Victoria Heights] Apartment [c]omplex to a third-party or purchase or arrange a purchase of AMTAX's Limited Partners Interests in the Partnership. . . . (2) JAE has negotiating ability when determining if a discount for partial interest valuation . . . applie[s to] determine the fair market value of AMTAX's interests, and (3) the limited partnership agreement requires the neutral appraiser to discount for lack of marketability and control when valuing AMTAX's interest in the partnership."  (Compl. ¶¶  24-26).

AMTAX, in its Answer, brings counterclaims seeking a competing judicial determination that "the fair market value of AMTAX's interest in the Partnership is not subject to any discount for a purported lack of marketability and control because AMTAX has an absolute and unilateral right under the Victoria Heights LPA to exit the Partnership at the end of the Compliance Period."  (Answer at ¶ 79).  AMTAX also seeks a judicial determination that "the Victoria Heights LPA requires the fair market value of AMTAX's interest in the Partnership to be determined by running the proceeds from a hypothetical sale of the Apartment Complex through the 'waterfall' labeled 'Distributions of Capital Proceeds from a Capital Transaction' in Section 6.2.B [of the LPA]."  (Answer ¶ 79).  In addition to these requests for declaratory relief, AMTAX alleges a direct counterclaim against JAE for breach of contract, direct and derivative counterclaims for breach of fiduciary duty, and further requests a judicial determination establishing that "AMTAX … has the right to remove JAE as the Partnership's Co-General Partner pursuant to Section 4.5.A(iv) of the Victoria Heights LPA based on JAE's breaches of its contractual and fiduciary duties."  (Answer ¶¶ 66-83).

After AMTAX and JAE filed their respective motions for summary judgment, Plaintiff filed a response in opposition to Defendant's motion for summary judgment, ("JAE Opp'n", ECF No. 89),[10] to which Defendant filed a reply, ("AMTAX Reply", ECF No. 96).[11]   AMTAX also filed a response in opposition to JAE's motion for summary judgment, ("AMTAX Opp'n", ECF No. 86),[12] to which Plaintiff filed a reply, ("JAE Reply", ECF No. 99).[13]

## IV.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 empowers courts to enter summary judgment on claims or defenses that lack a factual foundation. Rule 56(a) limits summary judgment to cases where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. Pro. 56(a).  The moving party carries the burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000).

> If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything . . ..  In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything.

---

[10]   Public redacted version of JAE Properties' Opposition to AMTAX Holdings 2001-XX, LLC's Motion for Summary Judgment can be found at ECF No. 90.  The unredacted version is available at ECF No. 89.

[11]   Public redacted version of AMTAX Holdings 2001-XX, LLC's Reply in Support of Motion for Summary Judgment can be found at ECF No. 97.  The unredacted version is available at ECF No. 96.

[12]   Public redacted version of AMTAX Holdings 2001-XX, LLC's Opposition to JAE Properties' Motion for Summary Judgment can be found at ECF No. 87.  The unredacted version is available at ECF No. 86.

[13]   Public redacted version of JAE Properties' Reply in Support of Motion for Summary Judgment can be found at ECF No. 100.  The unredacted version is available at ECF No. 99.

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.,* 210 F.3d 1099, 1102-03 (9th Cir. 2000). However, if "a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. Then, the opposing party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citing Fed. R. Civ. P 56(e)).

It has long been held that "[t]he court must examine the evidence in the light most favorable to the non-moving party." *United States v. Diebold, Inc.*, 396 U.S. 654 (1962). Summary judgment should be denied if any issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). It is not the role of the court to weigh evidence, determine credibility, and draw inferences from facts. *Id.* at 155. "[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its merits." *Fair Hous. Council of Riverside Cnty, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal citations and quotation marks omitted). Moreover, "when simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Id.* at 1134.

Specifically in cases requiring interpretation of a contract, "[s]ummary judgment is appropriate when the contract terms are clear and unambiguous, even if the parties disagree as to their meaning." *United States v. King Features Ent., Inc.*, 843 F.2d 394, 398 (9th Cir. 1988). "Interpretation of a written instrument becomes solely a judicial function only when it is based on the words of the instrument alone, when there is no conflict in the extrinsic evidence, or when a determination was made based on incompetent evidence." *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal.4th 375, 395 (2008).

///

///

# V.    DISCUSSION

## A.    Evidentiary Objections

On a motion for summary judgment, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). An "objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." *See* Advisory Committee's Notes on 2010 Amendment to Fed. R. Civ. P. 56. At the summary judgment stage, the court may consider inadmissible evidence if it may be presented in an admissible form at trial. *See Celotex Corp.*, 477 U.S. at 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment."); *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003) (holding the contents of the plaintiff's diary admissible for purposes of summary judgment because the contents would be admissible at trial through the plaintiff's personal knowledge).

Additionally, not all objections that would be proper at trial are proper during the summary judgment stage. For example, relevance and improper legal conclusion objections are moot and duplicative of the summary judgment standard. *See Sec. & Exch. Comm'n v. Criterion Wealth Mgmt. Servs., Inc.*, 599 F.Supp.3d 932, 945 (C.D. Cal. 2022); *McCarthy v. R.J. Reynolds Tobacco Co.*, No. CIV2092495WBSDAD, 2011 WL 13405571, at *1 (E.D. Cal. Mar. 31, 2011) (holding relevance, improper legal conclusion, speculation, and argumentative objections are duplicative of the summary judgment standard and, therefore, improper); *Holt v. Noble House Hotels & Resort, Ltd.*, 370 F.Supp.3d 1158, 1164 (S.D. Cal. 2019). A district court "must also rule on evidentiary objections that are material to its ruling." *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010).

Due to the volume of evidentiary objections, the Court addresses the objections categorically, where appropriate.

1  **1.     AMTAX's Objections**

2        First, to the extent certain exhibits are not discussed in the analysis of this Order, the

3  Court has not relied on these exhibits in reaching its decisions.  (*See* Declaration of Robert

4  P. Berry In Support of JAE's Opposition to Summary Judgment, "Berry Decl. ISO JAE

5  Opp'n",  ¶ 15, Ex. N, ECF No. 89-16; Berry Decl. ISO JAE Opp'n, ¶ 16, Ex. O, ECF No.

6  89-17; Berry Decl. ISO JAE Opp'n, ¶ 22, Ex. U, ECF No. 89-23; Berry Decl. ISO JAE

7  Opp'n, ¶ 9, Ex. H, ECF No. 89-10; Berry Decl. ISO JAE MSJ, ¶ 7, Ex. F, ECF No. 82-7;

8  Berry Decl. ISO JAE MSJ, ¶ 18, Ex. Q, ECF No. 82-18; Berry Decl. ISO JAE MSJ, ¶ 21,

9  Ex. T, ECF No. 82-21; Berry Decl. ISO JAE MSJ, ¶ 33, Ex. FF, ECF No. 82-33; Berry

10 Decl. ISO JAE MSJ, ¶ 34, Ex. GG, ECF No. 82-34).  Accordingly, those objections are

11 **overruled** as moot. (*See* "AMTAX Objections", ECF No. 110 at 2-5).

12        a.     *JAE's Exhibit QQ*

13        Exhibit QQ contains the expert report of Brent S. Solomon.  AMTAX first objects

14 that it contains improper legal conclusions and challenges Solomon's qualifications to

15 provide expert testimony in this case, arguing that he is not an MAI-certified appraiser.

16 (AMTAX Objections at 4-5).

17        AMTAX's assertion that the Solomon report contains improper legal conclusions is

18 unpersuasive, as such an objection is duplicative of the summary judgment standard.

19 AMTAX's argument that Solomon is unqualified to provide expert testimony is similarly

20 unpersuasive.  "Where an expert is not obviously unqualified, questions at the summary

21 judgment stage as to the expert's qualifications should rarely be resolved by exclusion of

22 the evidence." *Cal. Steel and Tube v. Kaiser Steel Corp.*, 650 F.2d 1001, 1003 (9th Cir.

23 1981).  Solomon has a Master of Science in Finance, is credentialed as a Certified Public

24 Accountant, and has spent seventeen years as a Partner and National Director of his firm's

25 Valuation and Transaction Advisory Group.  (Solomon Expert Report at 2).  Solomon is

26 not "obviously unqualified" to provide an expert opinion as to the valuation of the Victoria

27 Heights property. Accordingly, AMTAX's objection is **overruled**.

28 ///

b.    *JAE Exhibit S*

Exhibit S is a letter from Jason B. Brinkley, counsel for AMTAX at the time of the writing, to Roger C. Hartman, JAE's counsel.  (Berry Decl. ISO JAE MSJ, ¶ 20, Ex. S, ECF No. 82-20 at 2).  AMTAX argues the Berry declaration's representation that the letter is "true and correct" is insufficient to properly authenticate the document.  (AMTAX's Objections at 5 (citing to *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773-74 (9th Cir. 2002)).  JAE belatedly provides a declaration from Hartman, the recipient of the letter, that the document is a true and accurate copy.  (Declaration of Roger C. Hartman In Support of JAE's Motion for Summary Judgment, "Hartman Decl. ISO JAE MSJ", ¶ 3, Ex. 1, ECF No. 107-3).  JAE claims the document can be authenticated at trial.  With the proper authentication and assurance that any lingering issue can be cured at trial, AMTAX's objection is **overruled**.  *See Celotex Corp.*, 477 U.S. at 324.

## 2.    **JAE's Objections to AMTAX's Motion for Summary Judgment**

a.    *JAE Objection 1 to AMTAX MSJ*

JAE objects to paragraph 3 of the Declaration of Christopher Blake in support of AMTAX's motion for summary judgment for improper legal conclusion.  ("JAE Objections to AMTAX MSJ", ECF No. 89-24 at ¶ 1).  Objections for improper legal conclusion are duplicative at the summary judgment stage, accordingly, JAE's objection is **overruled**.

b.    *JAE Objection 2 to AMTAX MSJ*

JAE objects to paragraph 8 of the Blake declaration for lack of foundation and lack of personal knowledge.  (JAE Objections to AMTAX MSJ at ¶ 2).  The referenced paragraph states: "In May 2018 … the Partnership received an unsolicited offer from a third party … [MRK] to purchase the Apartment Complex for $24,000,000, which was memorialized in a letter of intent dated May 23, 2018[.]"  (Blake Decl. ISO AMTAX MSJ at ¶ 8).

At the time of his declaration, Blake served as the Managing Director of Capital Transactions at Alden Torch Financial LLC, which manages AMTAX's investment in the

Victoria Heights property. (Blake Decl. ISO AMTAX MSJ at ¶ 1). Blake also asserts he "[has] personal knowledge of the facts … and could and would testify competently thereto if called as a witness in this matter." (*Id.*) Therefore, this objection is meritless, as Blake has personal knowledge of the MRK letter and can lay the proper foundation at trial. *See also* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony"). Accordingly, JAE's objection is **overruled.**

        c.   *JAE Objections 3 and 8 to AMTAX MSJ*

JAE objects to paragraph 11, and the accompanying Exhibit 6, of the Blake declaration as hearsay. (JAE Objections to AMTAX MSJ at ¶¶ 3, 8). The contested portion of the Blake declaration attests to an email in which Blake told Edmond Johnson that MRK was offering to submit a $500,000 non-refundable deposit in exchange for a contract to purchase the Apartment Complex, which Blake opined meant that MRK's offer could not be dismissed by JAE as not "real." (Blake Decl. ISO AMTAX MSJ at ¶ 11). Exhibit 6 is the subject email itself. (Blake Decl. ISO AMTAX MSJ, ¶ 11, Ex. 6, ECF No. 79-31). In addition to hearsay concerns, JAE raises an additional basis for its objection to Exhibit 6, claiming Blake lacks personal knowledge to testify to whether the MRK offer was "real" or not. (JAE Objections to AMTAX MSJ at ¶ 8).

As to Blake's personal knowledge, Blake had personal knowledge of MRK's offer to submit the deposit described because the terms of that deposit are articulated in the MRK letter. (*See* Blake Decl. ISO AMTAX MSJ, ¶ 11, Ex. 4, ECF No. 79-29 at 2). Separately, the MRK letter can be authenticated at trial, and any deficiency regarding the letter's authenticity can be cured. Blake's remarks about the legitimacy of the offer are not relied upon by the Court.

As to the hearsay concerns, evidence submitted in support of a motion for summary judgment need not be in an admissible form so long as the issue can be cured at trial. Blake can testify to the contents the email at trial, and depending on the intended use, any

deficiency can be cured at trial.  Therefore, it would be improper to exclude the evidence at this juncture. Accordingly, JAE's objection is **overruled**.

### d. *JAE Objections 4 and 5 to AMTAX MSJ*

JAE objects to paragraphs 12 and 13 of the Blake declaration for lack of foundation and lack of personal knowledge. (JAE Objections to AMTAX MSJ at ¶¶ 4, 5).  Paragraphs 12 and 13 attest to the receipt of the first and second Levy letters, respectively.  (Blake Decl. ISO AMTAX MSJ at ¶¶ 12, 13).  For the same reasons discussed above, (*supra* V.A.2.b), JAE's objections are **overruled**.

### e. *JAE Objection 6 to AMTAX MSJ*

JAE objects to paragraph 14 of the Blake declaration for lack of foundation and lack of personal knowledge.  (JAE Objections to AMTAX MSJ at ¶ 6).  The portion of the statement JAE objects to reads: "Because JAE would not even consider third party offers to purchase the Apartment Complex reflected in the MRK LOI and Levy LOI, and would not agree to purchase AMTAX's interest for a negotiated price[.]"  (Blake Decl. ISO AMTAX MSJ at ¶ 14).

As to the assertion that "JAE would not even consider third party offers," the Court finds that Blake lacks personal knowledge to testify to what JAE considered or did not consider.  However, the second part of the statement concerning JAE "not agree[ing] to purchase AMTAX's interest for a negotiated price[,]" is within Blake's personal knowledge.  Accordingly, this objection is **sustained in part**.

### f. *JAE Objections 7, 9, and 10 to AMTAX MSJ*

JAE objects to Exhibits 4, 7 and 8 of the Blake declaration (the MRK letter, the first Levy letter, and the second Levy letter, respectively), arguing Blake cannot authenticate the documents because he is "neither [one of those entities] nor the Partnership."  (JAE Objections to AMTAX MSJ at ¶¶ 7, 9, 10).  However, regarding the MRK letter, AMTAX claims Blake "personally received the document" and then forwarded that document in an email to Edmond Johnson.  ("AMTAX Resp. to MSJ Objections", ECF No. 96-3 at ¶ 7).  AMTAX claims Blake also "personally received" the Levy letters.  (*Id.* at ¶¶ 9, 10).  This

provides Blake with the personal knowledge to identify the letters, testify to their contents, and authenticate the copies submitted here as Exhibits 4, 7, and 8.  Accordingly, JAE's objections are **overruled**.

### g.    *JAE Objection 11 to AMTAX MSJ*

JAE objects to paragraph 25 of the Declaration of Craig H. Bessenger in support of AMTAX's motion for summary judgment for lack of personal knowledge, lack of foundation, and improper legal conclusion.  (JAE Objections to AMTAX MSJ at ¶ 11). Objections for improper legal conclusion are duplicative and improper at the summary judgment stage. Accordingly, JAE's objection cannot be sustained on those grounds.

The contested portion of the Bessenger declaration states: "Rather than ensuring that Doyle would work with Arthur to appoint a third 'tie breaker' appraiser as mandated under Section 7.4.I of the Partnership Agreement, JAE instead filed this lawsuit on October 29, 2019 without any prior notice to AMTAX."  (Bessenger Decl. ISO AMTAX MSJ at ¶ 25). The facts provided through this declaration are undisputed.  JAE admits, "[w]hile Ms. Arthur sought to appoint a third appraiser, Mr. Doyle thought such appointment was premature."  (JAE MSJ at 16).  JAE goes on, "the undisputed evidence demonstrates that Doyle wanted legal guidance before moving forward," and then, "[o]n October 29, 2019, JAE filed this lawsuit seeking a declaration regarding the proper interpretation of the LPA and seeking expedited relief."  (*Id.* at 16-17).  Regardless of JAE's efforts to initiate the appointment of a third appraiser, (*see* Berry Decl. ISO JAE MSJ, ¶ 49, Ex. VV, ECF No. 82-49 at 3), the facts remain that none was ever appointed, and JAE filed this lawsuit. Those are facts to which Bessenger, in his position as counsel for AMTAX, may reasonably possess the requisite personal knowledge to testify at trial.  Accordingly, JAE's objection is **overruled**.

### h.    *JAE Objections 12-15 to AMTAX MSJ*

JAE objects to Exhibits K, M, O, and P of the Bessenger declaration, claiming these exhibits were not properly authenticated.  (JAE Objections to AMTAX MSJ at ¶¶ 12-15). JAE does not object to the authenticity of the documents.  Exhibits K, M, and P were

3:19-cv-02075-JAH-DDL

properly authenticated with deposition testimony from JAE's appraiser, John Doyle. (*See* Bessenger Decl. ISO AMTAX MSJ ¶¶ 12, 14, 17). Exhibit O was properly authenticated with deposition testimony from Roger Hartman. (*Id.* at ¶ 16). Because these exhibits were properly authenticated by individuals with personal knowledge of their contents under oath, JAE's objections are **overruled**.

### i. *JAE Objection 16 to AMTAX MSJ*

JAE objects to Exhibit R of the Bessenger declaration, claiming the document was not properly authenticated and is inadmissible hearsay. (JAE Objections to AMTAX MSJ at ¶ 16). Exhibit R was properly authenticated with deposition testimony from Edmond Johnson. (Bessenger Decl. ISO AMTAX MSJ at ¶ 19).

Exhibit R contains a summary chart for a new loan that was sent by email from Dwight Capital to Edmond Johnson. (Bessenger Decl. ISO AMTAX MSJ, ¶ 19, Ex. R, ECF No. 79-20 at 2). AMTAX claims the document is not being offered for the truth of the matter, but rather for the effect on JAE's state of mind. (AMTAX Resp. to MSJ Objections at ¶ 16). This is unpersuasive as AMTAX uses Exhibit R for the truth to establish that the $27,651,400 valuation "would enable JAE to borrow up to $21,651,700 through the refinance." (AMTAX MSJ at 16). Accordingly, Exhibit R is inadmissible hearsay for that proffered purpose. As such, JAE's objection is **sustained**.[14]

### j. *JAE Objection 17 to AMTAX MSJ*

JAE objects to Exhibit W of the Bessenger declaration as speculative and failing to verify the underlying data. (JAE Objections to AMTAX MSJ at ¶ 17). Exhibit W is the expert report of Melissa Bach. (Bessenger Decl. ISO AMTAX MSJ, ¶ 24, Ex. W, ECF No. 79-24). The Court relies only on the portion of the Bach report quoted in JAE's

---

[14]  While Exhibit R is inadmissible hearsay to establish the effect on JAE's state of mind, Dwight Capital's use of a $27,651,400 valuation can still be established through the deposition testimony of Edmond Johnson. (*See* Bessenger Decl. ISO AMTAX MSJ, ¶ 3, Ex. B, ECF No. 79-4 at 267:1-15).

opposition[15] to AMTAX's motion for summary judgment, and does not otherwise rely on the Bach report in its decision.  (JAE Opp'n at 18 (quoting AMTAX's expert: "Often after delivery of the opinion of value conclusion, the Client may have questions, . . . . or request changes to the appraisal report and/or value conclusion. Again, it is the responsibility of the appraiser to ensure that they retain their objectivity in processing this subsequent information.")).  Accordingly, JAE's objection is **overruled**.

### k.   *JAE Objections 18 and 19 to AMTAX MSJ*

JAE objects to portions of Exhibit B of the Bessenger declaration.  (JAE Objections to AMTAX MSJ at ¶¶ 18, 19).  The Court does not rely on the contested portions of this exhibit. Accordingly, JAE's objections are **overruled** as moot.

## 3.   **JAE's Objections to AMTAX's Opposition to JAE'S Motion for Summary Judgment**

### l.   *JAE Objection 1 to AMTAX Opposition*

JAE objects to paragraph 6 of the Declaration of Christopher Blake in support of AMTAX's opposition to summary judgment for lack of foundation and lack of personal knowledge. ("JAE Objections to AMTAX Opp'n", ECF No. 99-7 at ¶ 1).

Here, the contested portion of the Blake declaration reads: "In May 2018, while these negotiations were ongoing, the Partnership received an unsolicited offer from a third party, MRK Partners Inc. ('MRK'), to purchase the Apartment Complex for $24,000,000, which was memorialized in a letter of intent dated May 23, 2018 (the 'MRK LOI')." (Blake Decl. ISO AMTAX Opp'n at ¶ 6).  JAE asserts that Blake "is neither MRK nor the Partnership." (JAE Objections at ¶ 1).  In response, AMTAX states it has included MRK as a witness in its initial disclosures and can subpoena MRK to testify at trial and lay the proper foundation for this evidence.  (AMTAX Objections at 6).  This is sufficient foundation for the purposes

---

[15]   JAE includes the entire Bach report as an exhibit in its opposition to AMTAX's motion for summary judgment.  (Berry Decl. ISO JAE Opp'n, ¶ 11, Ex. J, ECF No. 94-12).

1    of the instant motions for summary judgment because any foundational issues can be cured

2    at trial, particularly in light of JAE's admission that Blake forwarded the letter to JAE's

3    president, Edmond Johnson.   (JAE MSJ at 12).   Therefore, Blake has the personal

4    knowledge to testify that JAE received the letter from MRK, and any deficiency can

5    otherwise be cured.  Accordingly, JAE's objection is **overruled**.

6                 m.    *JAE Objection 2 to AMTAX Opposition*

7           JAE objects to paragraph 7 of the Blake declaration for lack of foundation and lack

8    of personal knowledge.  (JAE Objections to AMTAX Opp'n at ¶ 2).  There, Blake states:

9    "The Partnership subsequently received another unsolicited letter of intent dated July 16,

10    2018 from a different third party, Levy Affiliated Holdings, LLC ('Levy'), offering to

11    purchase the Apartment Complex for $24,500,000 ('Levy LOI').  A true and correct copy

12    of the Levy LOI for $24,500,000 is attached hereto as Exhibit 2."  (Blake Decl. ISO

13    AMTAX Opp'n at ¶ 7).

14           At the time of his declaration, Blake served as the Managing Director of Capital

15    Transactions at Alden Torch Financial LLC, which manages AMTAX's investment in the

16    Victoria Heights property. (Blake Decl. ISO AMTAX Opp'n at ¶ 1).   Moreover, Blake

17    asserts he "[has] personal knowledge of the facts … and could and would testify

18    competently thereto if called as a witness in this matter."  (*Id.*)  JAE admits, "[o]n or about

19    August 9, 2018, AMTAX forwarded the Levy LOI to JAE's counsel."  (JAE SSDUF at

20    17).   As such, Blake in his capacity as the Managing Director of Capital Transactions at

21    the company managing AMTAX's investment would have personal knowledge of the Levy

22    letter, which is addressed to the Partnership. Any other foundational issues can be cured at

23    trial.  Accordingly, JAE's objection is **overruled**.

24                 n.    *JAE Objection 3 to AMTAX Opposition*

25           Similarly, JAE objects to paragraph 8 of the Blake declaration for lack of foundation

26    and lack of personal knowledge.  (JAE Objections to AMTAX Opp'n at ¶ 3).   The

27    declaration states that "[t]he Partnership subsequently received a second Levy LOI dated

28    August 3, 2018, which increased the purchase offer to $25,000,000.  A true and correct

copy of the Levy LOI for $25,000,000 is attached hereto as Exhibit 3." (Blake Decl. ISO AMTAX Opp'n at ¶ 8). Again, JAE objects for lack of foundation and personal knowledge. (JAE Objections to AMTAX Opp'n at ¶ 3). For the same reasons stated under the preceding objection, this objection is similarly **overruled**.[16]

### o.   *JAE Objection 4 to AMTAX Opposition*

JAE objects to paragraph 10 of the Blake declaration for lack of personal knowledge, lack of foundation, and improper legal conclusion. (JAE Objections to AMTAX Opp'n at ¶ 4). The declaration states: "Rather than ensuring that Doyle work with Arthur [AMTAX's retained appraiser] to appoint a third appraiser as mandated under Section 7.4.I. of the Partnership Agreement, or otherwise act to ensure the appointment of a third appraiser, JAE instead filed this lawsuit on October 29, 2019 without any prior notice to AMTAX." (Blake Decl. ISO AMTAX Opp'n at ¶ 10).

The facts presented are not reasonably disputed. (*See supra* V.A.2.g). Those are facts to which Blake, in his position at Alden Torch and through his communications with Arthur, may reasonably possess the requisite personal knowledge to testify at trial. Accordingly, JAE's objection is **overruled**.

### p.   *JAE Objections 5 and 6 to AMTAX Opposition*

JAE argues Exhibits 2 and 3 of the Blake declaration containing the Levy letters, cannot be authenticated by Blake because "he is neither Levy nor the Partnership." (JAE Objections to AMTAX Opp'n at ¶ 5). Consistent with the Court's ruling above, (*supra* V.A.2.f), these objections are similarly **overruled**.

### q.   *JAE Objection 7 to AMTAX Opposition*

JAE objects to Exhibit 1 of the Declaration of Craig H. Bessenger in support of AMTAX's opposition to JAE's motion for summary judgment. (JAE Objections to AMTAX Opp'n at ¶ 7). Exhibit 1 contains portions of the deposition of JAE's counsel,

---

[16]   JAE produces the same exhibit in support of its motion for summary judgment. (*See* JAE MSJ, Ex. V, ECF No. 82-23 at 9).

Edmond Johnson.  (Declaration of Craig H. Bessenger In Support of AMTAX's Opposition to Summary Judgment, "Bessenger Decl. ISO AMTAX Opp'n", ¶ 2, Ex. 1, ECF No. 86-3).  JAE objects that portions of Johnson's testimony, (265:23-266:4; 267:1-269:8), lack foundation because Johnson did not draft the referenced exhibit.  However, the foundation was established during Johnson's deposition that he recognized the referenced exhibit as an attachment to an email he received from Dwight Capital.  (Bessenger Decl. ISO AMTAX Opp'n, ¶ 2, Ex. 1, ECF No. 86-3 at 264:14-265:18).  Moreover, Johnson is able to explain that the "233 F" that appears in these email communications is "the loan number for that program [JAE was] applying – working with Adam on."  (*Id.* at 264:24-265:1).  The Court relies on this Exhibit only as to the value portion of the loan-to-value equation used by Dwight Capital to calculate JAE's potential loan.  (*See id.* at 267:1-5).  JAE's objection to any other portion of this testimony is overruled as moot.  Otherwise, a proper foundation was laid for Johnson to testify to the contents of the email communications between him and "Adam" from Dwight Capital, including the value of the Apartment Complex applied to the loan-to-value ratio in their calculations.  Accordingly, JAE's objection is **overruled**.

r.    *JAE Objections 8, 9, 10, 11, and 13 to AMTAX Opposition*

JAE objects to Exhibits 2, 3, 5, 9, and 13 of the Declaration of Craig H. Bessenger in support of AMTAX's opposition to JAE's motion for summary judgment. (JAE Objections to AMTAX Opp'n at ¶¶ 8-11, 13).  These exhibits contain portions of the testimony of Christopher Blake and Roger Hartman; a letter from John Nguyen to Edmond Johnson; notes written by Edmond Johnson of a conversation with Jon Adkins of Novogradac; and an email from Dwight Capital to Edmond Johnson, respectively.  (Bessenger Decl. ISO AMTAX Opp'n, ¶ 3, Ex. 2, ECF No. 86-4; Bessenger Decl. ISO AMTAX Opp'n, ¶ 4, Ex. 3, ECF No. 86-5; Bessenger Decl. ISO AMTAX Opp'n, ¶ 6, Ex. 5, ECF No. 86-7; Bessenger Decl. ISO AMTAX Opp'n, ¶ 10, Ex. 9, ECF No. 86-11; Bessenger Decl. ISO AMTAX Opp'n, ¶ 14, Ex. 13, ECF No. 86-15).  The Court does not rely on these exhibits, therefore, the objections are **overruled** as moot.

s.   *JAE Objection 12 to AMTAX Opposition*

JAE objects to Exhibit 11 of the Bessenger declaration.  (JAE Objections to AMTAX Opp'n at ¶ 12).  Exhibit 11 contains email communications between Edmond Johnson and John Doyle.  (Bessenger Decl. ISO AMTAX, ¶ 12, Ex. 11, ECF No. 86-13).  This document was first attached to AMTAX's motion for summary judgment as Exhibit O.  (ECF No. 79-17).   JAE argues that AMTAX's counsel, Bessenger, cannot authenticate communications to which he was not a party.  (*See* JAE Objections to AMTAX Opp'n at ¶ 12).  Here, the Bates stamp on the email clearly indicates the documents were produced by JAE.  JAE does not argue the exhibit itself is inauthentic, and solely objects on the fact that Bessenger is unable to authenticate it, accordingly the objection is **overruled**.  *See Malijack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 n.12 (9th Cir. 1996) (holding "[t]he district court did not err in considering the documents as indicators of MPI's motivation, however; MPI produced the documents to GoodTimes, many of the documents were on MPI letterhead and MPI does not contest their authenticity."); *Menalco v. Buchan*, No. 207-CV-01178-PMP-PAL, 2010 WL 428911, at *12 (D. Nev., Feb. 1, 2010) (using the Bates stamp to determine which party produced the exhibits, the court held documents produced by a party were admitted authentic by that party).

**B.   AMTAX's Motion for Summary Judgment**

AMTAX moves for summary judgment to dismiss JAE's claims for declaratory relief and seeks summary judgment against JAE for its counterclaims for breach of contract, breach of fiduciary duty, and declaratory judgment.

**1.   JAE's Declaration Regarding Parties' Rights to Sell the Property**

AMTAX seeks summary judgment on JAE's first claim for declaratory relief, which reads: "the LPA does not provide [AMTAX] a right to elect to force the sale of the real estate assets, but that the Co-General Partner, JAE, has the right to elect whether to sell the Apartment Complex to a third party or purchase or arrange a purchase of [AMTAX]'s Limited Partners Interests in the Partnership."  (Compl. ¶ 24).  AMTAX concedes the first clause of JAE's proposed declaration, that "[AMTAX] cannot *force* the Partnership to sell

the Apartment Complex[.]" (AMTAX MSJ at 20) (emphasis in original). However, as to the second clause, AMTAX argues, "JAE has no right under the Partnership Agreement either to sell the Apartment Complex or to purchase AMTAX's interest in the Partnership[.]" (AMTAX MSJ at 20).

To determine either party's rights, the Court looks to the plain language of the LPA. Fundamentally, the purpose of the law of contracts "is to protect the reasonable expectations of the parties." *Ben-Zvi v. Edmar Co.*, 40 Cal.App.4th 468 (1995).[17] Interpretation of a contract is a question of law. *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 925-26 (9th Cir. 2003). That interpretation must be "fair and reasonable, not leading to absurd conclusions." *Transamerica Ins. Co. v. Sayble*, 193 Cal.App.3d 1562, 1566 (1987) (citing *Sayble v. Feinman*, 76 Cal.App.3d 509, 513 (1978)). The goal of contract interpretation is to give effect to the mutual intent of the parties as it existed at the time of contracting. Cal. Civ. Code § 1636; *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal.App.4th 445, 474 (1998).

In this case, it is undisputed that the Parties entered a valid, enforceable contract (the LPA) to form a limited partnership. (JAE MSJ at 9; AMTAX MSJ at 9). Section 7.4.I of the LPA discusses each Parties' rights with regard to selling assets and reads as follows:

> [A]t any time after the fifteenth anniversary of the first day of the first taxable year of the applicable Tax Credit Compliance Period and after the expiration of the option period, the Investor Limited Partner may request that the Managing General Partner do one of the following: (i) sell the Apartment Complex to a third party, or (ii) purchase or arrange for a third party to purchase, the Limited Partners Interests in the Partnership for the fair market value of the Interests, but in all events such purchase and sale shall be for terms which are approved by the Investor Limited Partner. The Co-General Partner shall have a period of two (2) years after the receipt of such request from the Investment

---

[17]   In diversity cases involving contract disputes, federal courts ordinarily apply state law. *Reliance Fin. Corp. v. Miller*, 557 F.2d 674 (9th Cir. 1977). This contract is governed by the laws of the state of California. (LPA at 6, Preliminary Statement).

> Limited Partner in which to use its best efforts in order to close the purchase or sale of the Apartment Complex or Partnership Interests, as the case may be, it being understood and agreed that no such purchase or sale shall take place prior to the close of the Tax Credit "compliance period" with respect to the Apartment Complex[.]

(LPA at 46-47).  The plain language of the LPA provides AMTAX with one initial course of action, absent a breach, to divest itself of its interest in the Partnership: AMTAX can request a sale, which the Managing General Partner chooses to be of the entire real estate asset or of AMTAX's interest alone, after certain time conditions are satisfied.  (*Id.*)  Upon receiving such a request, JAE may respond in one of three ways: (1) JAE can arrange to sell the Victora Heights Apartment Complex in its entirety; (2) JAE can purchase AMTAX's interest in the Partnership; or (3) JAE can find a third party to purchase AMTAX's interest in the Partnership.  (*Id.*)

The use of the disjunctive "or" helps guide interpretation in this section of the LPA. The plain language of the LPA gives JAE three distinct alternatives from which to choose. Under California law of contract interpretation, disjunctives (such as "or") can be either inclusive or exclusive.  *See Dow v. Honey Lake Valley Res. Conservation Dist.*, 63 Cal.App.5th 901, 914 (2021) (quoting *Burke v. State*, 290 P.3d 790, 794 (2012) ("[w]hether disjunctive 'or' is inclusive or exclusive will depend on its context.")).   An inclusive disjunctive presents alternatives that can be chosen individually or in combination. Exclusive disjunctives present alternatives that are mutually exclusive and cannot be chosen in combination.  *Dow*, 63 Cal.App.5th at 914 (citing *Commonwealth v. Griffin*, 652 Pa. 127, 207 (2019)).  Here, the disjunctive "or" is exclusive based on its context: JAE's alternatives presented under Section 7.4.I of the LPA are mutually exclusive because of the impossibility of combination.  *Id.*  That is, JAE cannot sell the property to a third party *and* purchase the property itself.  Therefore, JAE has an unambiguous right under the plain language of the LPA to elect to sell the entirety of the real estate asset, sell AMTAX's interest to a third party, or purchase AMTAX's interest itself.  JAE cannot exercise that right until after AMTAX requests a sale.  However, even after AMTAX makes the request

1    and JAE makes its election, AMTAX still has the right to consent or decline a sale.  (LPA

2    at 46 ("in all events such purchase and sale shall be for terms which are approved by the

3    Investor Limited Partner")).

4        This right of refusal is reiterated in Section 4.5.A(iii) of the LPA, which states that

5    AMTAX has the right "[t]o approve or disapprove, with the consent of the Managing

6    General Partner [CVCAH] and the Co-General Partner [JAE], the sale of all or

7    substantially all of the assets of the Partnership." (LPA at 29).  JAE also lacks the authority

8    to "sell or convey the property, except as provided in Article IIIC[,]" which states the

9    General Partner must first "receive the Consent of the Investor Limited Partner [AMTAX]

10   before" any sale, lease, or conveyance may occur.  (*Id.* at 26, 41).  Accordingly, the plain

11   language of the LPA dictates that JAE cannot exercise any of its three choices under

12   Section 7.4.I without the consent and approval of AMTAX.  As such, the declaration JAE

13   seeks stating that JAE "has the right to elect whether to sell the Apartment Complex to a

14   third party or purchase or arrange a purchase of [AMTAX]'s Limited Partners Interests in

15   the Partnership[,]" (Compl. ¶ 24), fails to articulate this important qualifier under Section

16   7.4.I of the LPA.  Accordingly, AMTAX's motion for summary judgment as to JAE's first

17   declaration is **granted**, and JAE's requested declaratory relief is dismissed to the extent

18   that it does not embody the full extent of AMTAX's authority as prescribed by the LPA.[18]

19       **2.    JAE's Negotiating Abilities**

20       AMTAX moves for summary judgment on JAE's claim for declaratory relief which

21   reads: "Plaintiff seeks a judicial determination that JAE has negotiating ability when

22   determining if a discount for partial interest valuation should be applied when the appraiser

23   determines the fair market value of [AMTAX]'s Interests in the Partnership."

24

25   _____

26   [18]    AMTAX also seeks summary adjudication on the basis of "JAE's fiduciary duties

27   constrain[ing] its discretion to elect between a sale of the Apartment Complex and a

     purchase of AMTAX's interest following AMTAX's exercise of its exit right under Section

28   7.4.I." (AMTAX MSJ at 20).  The Court discusses JAE's fiduciary duties *infra* V.B.4.

(Compl. ¶ 25).   AMTAX argues the declaration sought is vague and would endorse "manipulation of the appraisal process under the guise of an arms-length negotiation[.]" (AMTAX MSJ at 23).

The LPA does not discuss negotiations during the appraisal process.  (*See* LPA at 47).  In the event that AMTAX requests a sale of the property or its interest under Section 7.4.I of the LPA, the LPA provides that the purchase price of either the entire property or AMTAX's interest shall be determined by FMV.  (LPA at 47).  The LPA states that:

> Fair market value shall be determined by the Investor Limited Partner and the Administrative General Partner, as the case may be, each retaining an appraisal from a qualified MAI appraiser. In the event that the two appraisers do not agree on the fair market value, the appraisers shall agree on the appointment of a third appraiser, whose appraisal shall be binding on the parties, provided however, that the Investor Limited Partner shall not be obligated to Consent to a sale in the event that it is not satisfied with the purchase price so determined by the foregoing process or by the other terms of the purchase and sale.

(*Id.*)  The plain language of the LPA prescribes a process for determining the purchase price of AMTAX's interest if JAE exercises its option to buy out that interest following a request for sale by AMTAX.  Both Parties agree in their respective pleadings that FMV, as determined by either the consensus of both Parties' appraisers or the final valuation of a third-party appraiser, dictates the purchase price of AMTAX's interest.  (AMTAX MSJ at 11; JAE Opp'n at 9-10).  However, Section 7.4.I does not detail any specific factors each Party's appointed appraiser is to consider when determining the fair market value of the subject property.  (*See* LPA at 47).

The law is clear that courts cannot add words to a contract which would impermissibly re-write that contract.  *See McConnell v. Pickering Lumber Corp.*, 217 F.2d 44, 47 (9th Cir. 1954).  Furthermore, "the court cannot supply material stipulations or read into the contract words which it does not contain so as to change the meaning of the words contained in the contract."  *JJD-HOV Elk Grove v. Jo-Ann Stores, LLC*, 80 Cal.App.5th 409, 423 (2022) (quoting *Estate of Bodger*, 130 Cal.App.2d 416, 425 (1955)) (internal

citations and quotation marks omitted). As such, the Court cannot write words into the contract providing for the negotiating powers of either Party during the appraisal process. *See Series AGI W. Linn of Appian Grp. Inv'rs DE, LLC v. Eves*, 217 Cal.App.4th 156, 164 (2013) (quoting *Hinckley v. Bechtel Corp.*, 41 Cal.App.3d 206, 210 (1974) ("It is widely recognized that the courts are not at liberty to revise an agreement under the guise of construing it. Neither abstract justice nor the rule of liberal interpretation justifies the creation of a contract for the parties which they did not make themselves.")).

Accordingly, JAE's request for "a judicial determination that JAE has negotiating ability when determining if a discount for partial interest valuation should be applied[,]" is inappropriate in light of the plain terms of the contract, and AMTAX's motion for summary judgment as to this issue is **granted**.[19]

### 3.    Discounts for Marketability and Lack of Control

AMTAX also moves for summary judgment as to JAE's claim for declaratory judgment, which reads: "the LPA requires the neutral appraiser to discount for lack of marketability and control when valuing [AMTAX]'s Limited Partners Interests in the Partnership." (Compl. ¶ 26). AMTAX challenges both the timing and substance of JAE's request, arguing against the maturity of JAE's request because a third-party appraiser has yet to be appointed. (AMTAX MSJ at 26).

> a.    *Maturity of JAE's Request for Declaratory Relief as to Discounts for Lack of Marketability and Control*

To support the claim that this requested declaratory relief is premature, AMTAX relies on *Federal Insurance Co. v. Newby*, and urges this Court to adopt a similar approach. No. C-12-5084 MMC, 2013 WL 1285140 (N.D. Cal. Mar. 28, 2013). However, *Newby* is distinguishable from the instant matter, as the court there found that the plaintiff "failed to

---

[19]    To be clear, the Court's finding is limited to JAE's negotiating power as stated in their request for declaratory relief, not as to the appropriateness of a discount for partial value interest.

show, and, indeed, does not even allege, that the appraisal panel has taken any action that suggests the appraisal panel does not understand its duties under the parties' agreement[.]" *Id.* at *3. Here, there is direct evidence to suggest the appraisers did understand their duties under the LPA, but needed guidance to interpret the Parties' rights under the LPA. In an email to JAE's counsel, Roger Hartman, John Doyle explains: "I am strongly inclined to delay any further dialogue with Novogradac until the owners/lawyers agree on one of the following: 1. [AMTAX] has right to sell 100% of the fee simple interest 2. [AMTAX] has right to sell ONLY their 99% interest". (Berry Decl. ISO JAE MSJ, ¶ 52, Ex. YY, ECF No. 82-52 at 2). Concluding, John Doyle wrote, "[w]hen Novogradac and I receive the same message jointly from both [AMTAX] and [JAE] concerning the above, then there will be an opportunity for us to potentially close the dialogue with mutual reconciliation." (*Id.*) Therefore, based on the evidence, a ripe controversy exists. It is reasonable to anticipate a third-party appraiser would likewise be unable to render a valuation without clarification as to the LPA.

### b.   *Discounts for Lack of Marketability and Control in the LPA*

As to the substance of JAE's request for declaratory relief, AMTAX argues that JAE's declaratory relief claim seeks to interpret the terms of the LPA in a manner that is inconsistent with the plain language of the agreement, ultimately leading to unfair and absurd results. (AMTAX MSJ at 26-29). AMTAX further asserts marketability of its interest is irrelevant in the calculation "because JAE would actually be consolidating its control of the Partnership and the Apartment Complex by buying out AMTAX's interest." (AMTAX MSJ at 28).

In opposition, JAE argues AMTAX's position is not based on the LPA, and FMV would include discounts for marketability and lack of control because AMTAX cannot force a sale of the Property. (JAE Opp'n at 26). In support of this proposition, JAE cites the expert report of Brent Solomon, who explains, "[FMV] contemplates a hypothetical willing buyer and a hypothetical willing seller. … [FMV] also considers all risks inherent in ownership including factors related to control and marketability." (Berry Decl. ISO JAE

Opp'n, ¶ 2, Ex. A (Solomon Expert Report), ECF No. 89-3 at 8).

First, that JAE would be "consolidating its control" is irrelevant to the Court's analysis, as it does not represent a valuation based on a hypothetical willing buyer and a hypothetical willing seller, accounting instead for the specific relationship between JAE and AMTAX. *See Xerox Corp. v. Cnty. of Orange*, 66 Cal.App.3d 746, 753 (1977). Furthermore, as noted by JAE, AMTAX's own expert appears to concede that marketability and lack of control should be considered. (Berry Decl. ISO JAE MSJ, ¶ 47, Ex. TT, ECF No. 82-47 at 11 ("[I]t appears that the conclusion of no impact to lack of control or marketability and thus, no discount to the Net Asset Allocation Amount [in the Novogradac Report], is based on an interpretation that appears to be inconsistent with my understanding of the language in Section 7.4.I of the Partnership Agreement.")).

California defines FMV of a property as:

> [T]he highest price on the date of valuation that would be agreed to by a seller, being willing to sell but under no particular or urgent necessity for so doing, nor obliged to sell, and a buyer, being ready, willing, and able to buy but under no particular necessity for so doing, each dealing with the other with full knowledge of all the uses and purposes for which the property is reasonably adaptable and available.

Cal. Code Civ. Proc. § 1263.320(a). It is possible that "all the uses and purposes for which the property is reasonably adaptable" includes control over the property and its marketability. Certainly, the use of discounts for marketability and lack of control are not prohibited by the express language of the LPA, but it appears its fitness and use lies in the discretion of the appointed appraisers. *See, e.g.*, *AFC-Low Income Hous. Credit Partners-I v. Poz Vill. Dev., Inc.*, B237721, 2012 WL 3792549, at *1-4 (Cal. Ct. App. Aug. 31, 2012) ("The agreement which appears to be negotiated by business entities leaves it up to the appraisers to determine what methodology should be utilized").[20]

---

[20]    JAE argues the Court cannot rely on the cited case because it is an unpublished California Court of Appeal decision. (JAE Opp'n at 28, fn.12). However, the Ninth Circuit

Accordingly, the Court **grants in part and denies in part** AMTAX's motion for summary judgment as to JAE's request for a judicial declaration requiring the neutral appraiser to discount for lack of marketability and control when valuing the FMV of AMTAX's interest.   AMTAX's motion is **granted** insofar as JAE seeks a judicial declaration that that the LPA *requires* discounts for marketability and lack of control, as it is contrary to the plain terms of the contract.  The motion is **denied** insofar as AMTAX seeks to foreclose the potential applicability of such discounts, as there are disputed issues of material fact as to whether discounts may still be appropriate in determining the FMV of the property under the LPA.

### 4.   Breach of Fiduciary Duty

AMTAX moves for summary judgment on its claim for breach of fiduciary duty, contending "JAE consistently placed its own interests first and engaged in a pattern of intentionally duplicitous and self-dealing behavior[,]" based on, *inter alia*, JAE's refusal to consider third-party offers and purportedly pressuring Doyle to reduce the value AMTAX's interest in the subject property.  (AMTAX MSJ at 30-31).  JAE rebuts, arguing that AMTAX improperly brings a derivative claim, and otherwise fails to substantively prove that JAE breached its fiduciary duties based on any conduct alleged.  (JAE Opp'n at 13-20).

### a.   *Standing to Bring a Derivative Claim*

JAE claims AMTAX lacks standing to bring a derivative claim for a breach of fiduciary duty because it failed to make a demand on the Partnership or show the futility of making a demand.  (JAE Opp'n at 14-15).  AMTAX argues that it has standing to bring a derivative claim, as it was JAE who commenced this action with "the apparent blessing of . . . CVCAH."  (AMTAX Reply at 9).  AMTAX also argues that a demand would have

---

has held that, while unpublished California Courts of Appeal decisions have no precedential value, they can be considered as a possible reflection of California law. *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1167 n.6 (9th Cir. 2011).

been futile because, as Co-General Partner, "[t]here is simply no conceivable circumstance where JAE would authorize the Partnership to sue JAE[.]"  (AMTAX Opp'n at 29[21]).

Under California law,[22] "[t]he principles governing derivative actions in the context of corporations apply to limited liability companies and limited partnerships."  *Schrage v. Schrage*, 69 Cal.App.5th 126, 150 (2021).  A party bringing a derivative claim must make "a suitable demand, unless excused by extraordinary conditions."  *Bader v. Anderson*, 179 Cal.App.4th 775, 789 (2009) (quoting *Kamen v. Kemper Fin. Servs, Inc.*, 500 U.S. 90, 96 (1991)) (internal citations and quotations omitted).  However, there is a futility exception to the demand requirement.[23]  "[D]emand typically is deemed futile when a majority of the directors have participated in or approved the alleged wrongdoing, or are otherwise financially interested in the challenged transactions."  *Bader*, 179 Cal.App.4th at 790 (internal citations and quotations omitted).

AMTAX sets forth two arguments as to why it has standing to bring a derivative suit.  First, AMTAX asserts that "JAE has failed to establish that the Managing General Partner [CVCAH] has authority to sue JAE on behalf of the Partnership; and [second,] the evidence shows that [CVCAH] was sympathetic to JAE's efforts to 'further drive [AMTAX's] number down.'"  (AMTAX Opp'n at 29).

As an initial matter, AMTAX fails to sufficiently plead, much less with particularity, futility pursuant to California law and Federal Rule of Civil Procedure 23.1.  AMTAX's

---

[21]   The Court will discuss the arguments with respect to the matter of the derivative claim from all the Parties' submissions.  (ECF Nos. 86, 89, 96, 99).

[22]   "In diversity actions, the characterization of an action as derivative or direct is a question of state law."  *Sax v. World Wide Press, Inc.*, 809 F.2d 610, 613 (9th Cir. 1987).  "Once state law characterizes the action as either derivative or direct, the applicable procedural rules are determined by federal law."  *Id.*

[23]   Federal Rule of Civil Procedure 23.1 supplies the pleading standard for assessing allegations of demand futility, however "[t]he substantive law which determines whether demand is, in fact, futile is provided by the state of incorporation of the entity on whose behalf the plaintiff is seeking relief."  *Rosenbloom v. Pyott*, 765 F.3d 1137, 1148 (9th Cir. 2014) (quoting *Scalisi v. Fund Asset Mgmt., L.P.*, 380 F.3d 133, 138 (2d Cir. 2004)).

Answer and Counterclaims provides only conclusory averments to establish demand futility. *See* Fed. R. Civ. Pro. 23.1(b)(3) (The complaint must state with particularity the reasons demand was not made); *Bader*, 179 Cal.App.4th at 790 ("[T]he court must be apprised of facts specific to each director from which it can conclude that the particular director could or could not be expected to fairly evaluate the shares of the shareholder plaintiff.")  AMTAX alleges that demand would be futile "because the wrongdoing alleged herein was perpetrated by JAE itself, notwithstanding its duty to place the interests of the Partnership ahead of its own." (Answer ¶ 18).  AMTAX's response in opposition to JAE's motion for summary judgment provides new allegations in support of its futility argument, stating CVCAH was sympathetic to JAE, such that it would fail to act in the interest of the Partnership.  AMTAX relies on communication from JAE to CVCAH, stating JAE wants to "further drive [AMTAX's] number down." (Bessenger Decl. ISO AMTAX Opp'n, ¶ 8, Ex. 7, ECF No. 86-9 at 2-3).  However, this email was written by Edmund Johnson, JAE's principal, and exclusively reflects JAE's sentiments, and does not indicate nor infer CVCAH's sentiments.  Without a response from CVCAH, it is impossible to determine whether CVCAH was in fact "sympathetic" to JAE's efforts to drive down the value of AMTAX's interest.  AMTAX's inference of CVCAH's sympathy to JAE's efforts is wholly insufficient to support the particularity requirement.  Therefore, AMTAX neither sufficiently pleads nor adequately argues the applicability of the futility exception to bring a derivative claim on behalf of the Victoria Heights complex for the breach of fiduciary duty claim against JAE.[24]  Accordingly, AMTAX's motion for summary judgment as to the derivative claim for breach of fiduciary duty is **denied**.

///

///

---

[24]     Because AMTAX's argument regarding demand futility is rejected as insufficiently pled, the Court need not determine whether AMTAX has authority to bring a derivative claim on behalf of Victoria Heights, Ltd.

b.    *Merits of the Direct Claim for Breach of Fiduciary Duty*

To prevail on a claim for breach of fiduciary duty, AMTAX must establish that (1) JAE held a fiduciary duty with regard to AMTAX; (2) JAE breached its fiduciary duty; and (3) AMTAX experienced damage proximately caused by JAE's breach.  *See Gutierrez v. Girardi*, 194 Cal.App.4th 925, 932 (2011). It is indisputable that JAE has fiduciary obligations to AMTAX under the terms of the LPA.  (LPA at 46).  The Court will categorically discuss AMTAX's specific allegations in support of its breach of fiduciary duty claim.

i.    Third Party Offers

AMTAX asserts that JAE had a duty to consider third-party offers from MRK and Levy, despite JAE's rights under Section 7.4.I of the LPA "to elect the manner in which AMTAX's exit from the Partnership is accomplished[,]" be that by: (1) "a sale of the Apartment Complex"; or (2) "a purchase of AMTAX's interest[.]" (AMTAX MSJ at 20-22).  AMTAX argues that JAE's "fiduciary duties prevented JAE from making and effectuating its election under Section 7.4.I in a manner that deliberately ignored and/or sacrificed the best interests of the Partnership or its partners." (*Id.* at 22).  AMTAX asserts that this choice constitutes a breach of JAE's fiduciary duties because JAE was required to "consider in good faith the attractive third-party offers to purchase the Apartment Complex when determining whether to sell the Apartment Complex or purchase AMTAX's interest[.]" (*Id.* at 23).

As previously discussed, (*see supra*, II.B), the "third-party offers," though legally non-binding, refer to letters sent to the Partnership or its individual partners by MRK and Levy for $24,000,000 and $25,000,000, respectively.  AMTAX and JAE communicated about the first offer from MRK, with JAE expressing its concerns regarding the length of time it would take for contingencies to be evaluated, which AMTAX relayed to MRK in an email dated June 4, 2018.  (Blake Decl. ISO AMTAX MSJ, ¶ 10, Ex. 5, ECF No. 79-30 at 2).  At that point, MRK had suggested a $500,000 non-refundable deposit.  (*Id.* at 3).  Then, four days later, AMTAX sent a letter, through counsel, requesting JAE "contact Mr.

Blake directly to discuss MRK's offer or, alternatively, [JAE] purchase [AMTAX's] interests for an amount that is reflective of the purchase price being offered by MRK." (Berry Decl. ISO JAE MSJ, ¶ 20, Ex. S, ECF No. 82-20 at 2).  JAE alleges it decided not to pursue the MRK letter because it had concerns about its credibility and it preferred to purchase AMTAX's interest itself.  (JAE Opp'n at 16).

Then, on July 16, 2018, Victoria Heights, Ltd., or one of the partners (*see* JAE SSDUF at ¶ 28), received the Levy letter, offering $24,500,000 for the subject property. (Bessenger Decl. ISO AMTAX Opp'n, ¶ 3, Ex. 2, ECF No. 86-19 at 2).  Levy sent a second letter on August 3, 2018, increasing its proposed purchase price to $25,000,000. (Bessenger Decl. ISO AMTAX Opp'n, ¶ 4, Ex. 3, ECF No. 86-20 at 2).  JAE claims that it did not receive the second Levy letter until AMTAX forwarded it to JAE's counsel on August 9, 2018.  (JAE MSJ at 13-14).  By that time, AMTAX had formally notified CVCAH of its election to exercise its rights under Section 7.4.I of the LPA and requested a sale of the property or its interest.  (Berry Decl. ISO JAE MSJ, ¶ 22, Ex. U, ECF No. 82-22 at 2).

Based on these facts, the Court finds that summary judgment is not appropriate as to the breach of fiduciary duty claim.  As evidenced by the plain language of Section 7.4.I of the LPA, the Parties contemplated the possibility that JAE would balance its own interest of buying the property while maintaining its own fiduciary obligations to the partnership. This is evinced by the terms of the LPA that set forth a procedure to determine the FMV of the subject property and provides safeguards to protect AMTAX's interest by *not* giving JAE unqualified authority to purchase AMTAX's interest.  AMTAX's suggestion that JAE exercising its contractual right amounts to a breach in light of the "attractive" offers is not compelling.  *See* Cal. Corp. Code § 15904.08(e) (A general partner "does not violate a duty . . . merely because the general partner's conduct furthers the general partner's own interest.").  Accordingly, AMTAX has failed to demonstrate that the undisputed material facts surrounding the MRK and Levy letters and JAE's obligations as a Co-General Partner constitute a breach of fiduciary duties.

3:19-cv-02075-JAH-DDL

### ii. Purported Concealment of Decision to Purchase the Property

AMTAX argues JAE breached its fiduciary duties by representing that it was "in the process of deciding" whether to sell the Victoria Heights Apartment Complex or purchase AMTAX's interest, when in fact JAE had already decided to purchase AMTAX's interest. (AMTAX MSJ at 30). In response, JAE claims AMTAX was aware of its interest in purchasing the property because of prior negotiations, and JAE was conducting its due diligence to ensure it could afford to proceed with that purchase. (JAE Opp'n at 17).

In support of its motion, AMTAX relies on the deposition of Edmond Johnson, in which he states, "[W]e had already decided to purchase the limited partner's interests." (Bessenger Decl. ISO AMTAX MSJ, ¶ 3, Ex. B (Johnson Deposition), ECF No. 79-4 at 172:7-14). On the other hand, JAE relies on the deposition of its attorney, Roger Hartman, where he states, "[A] final determination was not made until a later date, at which point it was communicated to you." (Berry Decl. ISO JAE Opp'n, ECF No. 89-2, ¶ 8, Ex. G (Hartman Deposition), ECF No. 89-9 at 127:6-12). Based on these competing statements from JAE's president and JAE's counsel, the trier of fact must determine the credibility of the witnesses, a determination that is not appropriate in adjudicating a motion for summary judgment. *Friend v. H.A. Friend & Co.*, 416 F.2d 526, 530 (9th Cir. 1969) (the question of credibility is for the trier of fact). Accordingly, the Court finds summary judgment is not appropriate as to the breach of fiduciary duty claim based on these facts.

### iii. Influence in the Appraisal Process

AMTAX argues JAE breached its fiduciary duties by concealing it hired an appraiser before AMTAX exercised its exit rights under the LPA, and by unduly influencing its appraiser to return a lower valuation of the Victoria Heights complex. (AMTAX MSJ at 30).

First, AMTAX does not cite to any authority that supports its contention that JAE hiring an appraiser before AMTAX formally exercised its exit rights is dispositive of a breach of fiduciary duty. Second, a dispute of material facts exists as to whether JAE unduly attempted to influence the appraisal process and drive down AMTAX's interest.

AMTAX includes a history of email correspondence between JAE's attorney, Roger Hartman, and JAE's appraiser, John Doyle.  One such email sent from Hartman to Doyle on November 15, 2018, states: "I have some edits to your appraisal … In addition, the General Partners and [I] hold the view that the Incentive management fee is 15% of the gross sales price … This change will significantly affect the waterfall and therefore the value of the LPs interest."  (Bessenger Decl. ISO AMTAX MSJ, ¶ 12, Ex. K, ECF No. 79-13 at 2).  Hartman sent another email on November 27, 2018, stating: "Attached is a word version of the Victoria Appraisal marked to show our changes … If you confirm that you have received the attached redline version and can read and work with it, I will then delete all copies from my system."  (Bessenger Decl. ISO AMTAX MSJ, ¶ 15, Ex. N, ECF No. 79-16 at 2).  Thereafter, Doyle sent an email to Hartman on January 24, 2019, stating: "I think most of the comments create a very high probability of collapsing the entire appraisal report."  (Bessenger Decl. ISO AMTAX MSJ, ¶ 16, Ex. O, ECF No. 79-17 at 2).  However, it is unclear to what "comments" Doyle is referring.

JAE provides evidence that the practice of suggesting revisions and correcting valuations is standard in the appraisal process.  (JAE Opp'n at 18 (quoting AMTAX's expert: "Often after delivery of the opinion of value conclusion, the Client may have questions, . . . . or request changes to the appraisal report and/or value conclusion. Again, it is the responsibility of the appraiser to ensure that they retain their objectivity in processing this subsequent information.")).  Furthermore, John Doyle testified that he did not feel as if he was being influenced during the valuation process, and that it is not otherwise uncommon for the valuation process to be collaborative.  (*See* Berry Decl. ISO JAE Opp'n, ¶ 5, Ex. D, ECF No. 89-6 at 97:21-98:5; 138:21-139:20; 158:24-159:8; 162:25-163:5). Accordingly, the record suggests a genuine dispute of material fact as to whether

JAE unduly and in bad faith influenced the appraisal process. As such, AMTAX's motion for summary judgment as to the claim for breach of fiduciary duty is **denied**.[25]

### 5.   Breach of Contract

AMTAX seeks summary judgment on its claim for breach of contract. (AMTAX MSJ at 31). AMTAX asserts two separate breaches of the LPA: (1) JAE's refusal to use its "best efforts" to consider the MRK and Levy letters, and (2) JAE's purported manipulation, and then outright refusal, to comply with the appraisal process required by Section 7.4.I of the LPA. (*Id.*) As to the first assertion, AMTAX fails to cite which part of the LPA JAE is alleged to have breached by failing to consider the letters of intent. (*Id.*; *see also* Answer ¶ 69). For this reason, as well as the discussion of JAE's consideration of the letters of intent, (*see supra* V.B.4.b.i), the Court finds summary judgment inappropriate based on this conduct.

As to the second asserted breach of the LPA, AMTAX argues JAE breached Section 7.4.I of the LPA, which states in pertinent part: "The Co-General Partner shall have a period of two (2) years after the receipt of such request from the Investment Limited Partner in which to use its best efforts in order to close the purchase or sale of the Apartment Complex or Partnership Interests, as the case may be[.]" (LPA at 47). The record shows AMTAX exercised its right to request the sale of the Property on August 8, 2018. (Berry Decl. ISO JAE MSJ, ¶ 22, Ex. U, ECF No. 82-22 at 2). Less than a year later, on May 29, 2019, AMTAX and JAE exchanged appraisals. (AMTAX MSJ at 16). Then, on or before

---

[25]   The Court rejects JAE's argument that AMTAX's "new assertions" should be rejected because they were not alleged as part of the claim. In its Answer, AMTAX alleges it had previously been engaged in negotiations with JAE regarding a sale of its Interest, (Answer ¶ 38), JAE communicated to AMTAX it was "still in the process of deciding" whether to purchase AMTAX's Interest after the MRK and Levy letters were received, (Answer ¶ 49), and JAE delayed the appraisal process by requesting "more analysis" from Doyle before he could confer with AMTAX's appraiser, (Answer ¶¶ 62-63). These facts were incorporated in AMTAX's claim as to breach of fiduciary duty, (Answer ¶ 71), thus JAE was put on notice as to the additional factual bases for the claim.

September 27, 2019, the two appraisers agreed to compromise on a $24,000,000 valuation of the Apartment Complex.  (AMTAX MSJ at 17).

However, as previously discussed, the appraisers could not initially agree on the value of AMTAX's interest because of a disagreement as to whether the LPA gave AMTAX authority to force the sale of the entire property or just its 99.9% interest.  (Berry Decl. ISO JAE MSJ, ¶ 52, Ex. YY, ECF No. 82-52 at 2).  At that point in time, JAE informed its appraiser, John Doyle, through counsel, that if "you and Novogradac cannot reach an agreement and pursuant to Section 7.4.I of the Partnership Agreement, you and Novogradac should jointly select a third appraiser."  (Berry Decl. ISO JAE MSJ, ¶ 49, Ex. VV, ECF No. 82-49 at 3).  JAE's counsel added, "[o]nce a third appraiser is selected, please let me know so that arrangements can be made for a site visit and the appraiser's requirements for documentation can be addressed."  (*Id.*)  After more discussions between the appraisers, Doyle advised JAE, "When Novogradac and I receive the same message jointly from both the LP and GP concerning [the dispute as to AMTAX's right to force the sale of its interest or the entire property], then there will be an opportunity for us to potentially close the dialogue with mutual reconciliation."  (Berry Decl. ISO JAE MSJ, ¶ 52, Ex. YY, ECF No. 82-52 at 2).

Upon a review of the evidence provided in the submissions, the Parties remained at an impasse due to a continuing disagreement until JAE filed this action seeking resolution of this issue.  (JAE Opp'n at 11-12).  AMTAX's request for the sale of the property or the purchase of its interest to the filing of the instant Complaint occurred well within the two-year window prescribed by the LPA.  Accordingly, the Court **denies s**ummary judgment as to AMTAX's counterclaim for breach of contract, as there is a genuine dispute of material fact.

///
///
///
///

### 6. Whether AMTAX Has a Right to Remove JAE as Co-General Partner

Finally, "[i]n the event that the Court finds JAE liable for breaching its fiduciary duties and the LPA, AMTAX requests that the Court enter a declaratory judgment that AMTAX has the right to remove JAE as the Partnership's Co-General Partner pursuant to Section 4.5.A(iv) of the LPA[.]" (AMTAX MSJ at 32). Section 4.5.A(iv) of the LPA states AMTAX shall have the right "[t]o remove any or all of the General Partners and elect one or more new General Partners upon the occurrence of any of the following: (1) In the event of misconduct, or failure to exercise reasonable care with respect to any material matter in the discharge of its duties and obligations as General Partner[.]" (LPA at 29). In accordance with the Court's denial of summary judgment on AMTAX's claims for breach of contract and breach of fiduciary duty, the Court **denies** AMTAX's request for declaratory relief to remove JAE as the Co-General Partner.

### C. JAE's Motion For Summary Judgment

JAE moves for summary judgment on its claims for declaratory relief: "(1) that the LPA does not provide AMTAX the right to force a sale of the Property leading to the dissolution of the Partnership; (2) that JAE has negotiating ability when determining that lack of marketability and control discounts should be applied to the fair market valuation of AMTAX's limited partnership interest under the LPA; and (3) that the LPA requires the neutral third appraiser to determine FMV, which requires consideration of discounts for lack of marketability and control when valuing AMTAX's Interest." (JAE MSJ at 20-21). JAE also moves summary judgment on AMTAX's counterclaims for the direct and derivative claims, and AMTAX's claims for declaratory relief.[26] (*Id.* at 21-32).

///

---

[26] The Court has already determined that genuine disputes of material fact exist as to AMTAX's breach of contract and breach of fiduciary duties claims, and has accordingly determined that removal of JAE from the partnership is inappropriate at this juncture, (*see supra* V.B.4-5.). JAE's motion for summary judgment as to AMTAX's declaration to remove JAE is similarly **denied**.

### 1.   AMTAX's Right to Force a Sale of the Property Under the LPA

JAE seeks a declaration that "the LPA does not provide AMTAX the right to force a sale of the Property leading to the dissolution of the Partnership[.]"  (JAE MSJ at 20). There is no dispute here, as "AMTAX concedes that it cannot *force* the Partnership to sell the Apartment Complex[.]"  (AMTAX MSJ at 20) (emphasis in original).[27]  Because there is no disagreement, and thus no controversy, the Court **denies** JAE's requested declaratory relief.  *See* 28 U.S.C. § 2201; *see also Pac. Merch. Shipping Ass'n v. Aubry*, 918 F.2d 1409, 1414 (9th Cir. 1990) (Actions for declaratory relief must be "carefully limited in scope to meet the 'case and controversy' requirements of Article III of the Constitution.") (citations omitted).

### 2.   JAE's Negotiating Abilities Regarding Marketability and Discounts

In its motion for summary judgment, JAE seeks two related declarations: first, that "JAE has negotiating ability when determining that lack of marketability and control discounts should be applied to the fair market valuation[,]" and; second, that "the LPA requires the third appraiser to determine FMV, which requires consideration of discounts for lack of marketability and control when valuing AMTAX's Interest."  (JAE MSJ at 20). Consistent with the Court's reasoning, and for the reasons discussed above, (*see supra* V.B.2-3.), JAE's motion for summary judgment is **denied**.

### 3.   Direct and Derivative Claims

JAE moves for summary judgment as to AMTAX's direct claims for breach of contract and breach of fiduciary duties, and the derivative claim for breach of fiduciary duty.  (JAE MSJ at 21-29).  Consistent with the Court's reasoning as discussed above,

---

[27]  The declaration sought in JAE's motion for summary judgment is shorter than the declaration JAE originally sought in its Complaint, which added "that the Co-General Partner, JAE, has the right to elect whether to sell the Apartment Complex to a third party or purchase or arrange a purchase of AMTAX's Limited Partners Interests in the Partnership."  (Compl. ¶ 24).   The long-form version of the declaration was discussed above, *supra* V.B.1.

JAE's motion for summary judgment is **granted** as to AMTAX's derivative claim for breach of fiduciary duty, and otherwise **denied**, as to the direct claims for breach of contract and breach of fiduciary duty.

### 4.    AMTAX's Claims for Declaratory Relief

Finally, JAE moves for summary judgment as to AMTAX's claim for declaratory relief, arguing that a valuation based upon a liquidation value is inconsistent with the terms of the LPA. (JAE MSJ at 29). JAE relies on its expert, Brent Solomon, to assert that FMV of AMTAX's interest should be based "on the economic benefits expected to be received by the Interest from a long-term hold of the real estate discounted to present value based on the required rate of return for an investor that suffers from both a lack of control and lack of marketability." (*Id.* at 30).

Consistent with the Court's reasoning as discussed above, (*see supra* V.B.3.), AMTAX's requested declaration that discounts for lack of marketability and control should not be considered in determining the FMV of the Victoria Heights complex is dismissed, as there are disputed issues of material fact as to the whether discounts may still be appropriate. Accordingly, JAE's motion for summary judgment is **granted**.

## VI.    CONCLUSION

Accordingly, IT IS HEREBY ORDERED:

1.    AMTAX Holdings 2001-XX, LLC's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**. (ECF No. 80).

2.    JAE Properties, Inc.'s Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**. (ECF No. 83).

**IT IS SO ORDERED.**

DATED: February 9, 2024

_____
JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE