1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10

11   JAE PROPERTIES, INC.,                      Case No. 3:19-cv-02075-JAH-DDL

12                            Plaintiff,

13   v.                                          **ORDER:**

14   AMTAX HOLDINGS 2001-XX, LLC,                **(1) GRANTING JAE'S MOTION TO**
                                                 **FILE DOCUMENTS UNDER SEAL,**
15                            Defendant.         **(ECF No. 146);**

16   _____

17   AMTAX HOLDINGS 2001-XX, LLC,                **(2) DENYING JAE'S MOTION TO**
                                                 **DISMISS FOR LACK OF STANDING,**
18                    Counter-Plaintiffs,        **(ECF No. 148).**

19   v.

20   JAE PROPERTIES, INC.,

21                    Counter-Defendant.

22                              **INTRODUCTION**

23        Pending before the Court are Plaintiff/Counter-Defendant JAE Properties, Inc.'s

24   ("Plaintiff" or "JAE") Motion to File Documents Under Seal, (ECF No. 146), and Motion

25   to Dismiss, (ECF No. 148-1, "Motion" or "Mot.").[1]  Defendant AMTAX Holdings 2001-

26   _____

27

28   [1]   JAE's Motion to Dismiss discusses AMTAX's breach of contract and breach of
     fiduciary duty claims in some detail.  *See* Mot. at 13-16.  Specifically, with regard to

                                          1

XX, LLC, ("Defendant" or "AMTAX") filed a Response in Opposition to JAE's Motion to Dismiss. ECF No. 151 ("Opposition" or "Opp'n").[2] JAE subsequently filed a Reply. ECF No. 153 ("Reply"). On March 13, 2025, the Court deemed these motions suitable for adjudication on the briefing and without oral argument, pursuant to Civil Local Rule 7.1.d.1. Upon a careful review of the briefing, the record, and the relevant law, the Court **GRANTS** JAE's Motion to File Documents Under Seal and **DENIES** JAE's Motion to Dismiss.

## BACKGROUND

JAE and AMTAX were Partners in a Limited Partnership Agreement ("LPA") that concerned the ownership and operation of the Victoria Heights Apartment Complex in Riverside, California. ECF No. 122 ("SJ Order") at 2-3.[3] JAE wanted to exercise its option under the LPA to purchase AMTAX's interest in the Partnership. *Id*. at 5. However, AMTAX's appraiser disagreed with JAE's appraiser as to whether certain discounts should be applied to the valuation of the property. *Id*. JAE initially filed this lawsuit for declaratory relief to clarify, among other issues, whether the LPA required a discount for lack of marketability and control when valuing AMTAX's interest in the partnership. *Id*. at 7.

---

AMTAX's breach of contract claim, JAE explains, "the Court's [Summary Judgment Order] demonstrated that AMTAX could not ultimately establish a breach of contract claim (although the Court did not grant summary judgment despite these rulings)." *Id*. at 13. To any extent this may be construed as a request for reconsideration of the Court's Summary Judgment Order, it is improper at this time. *See* CivLR 7.1(i)(2) (motions for reconsideration must be filed within 28 days of the court's order); *see also* Fed. R. Civ. P. 59, 60. Therefore, the Court will not consider this argument.

[2]    All page citations refer to the page numbers generated by the CM/ECF system unless otherwise stated.

[3]    A more thorough recitation of the background of this case can be found in the Court's Order Granting in Part and Denying in Part AMTAX's Motion for Summary Judgment and Granting in Part and Denying in Part JAE's Motion for Summary Judgment and is hereby incorporated by reference. SJ Order at 2-7.

3:19-cv-02075-JAH-DDL

Upon the clarification provided in the Court's SJ Order, AMTAX sold and assigned "all right, title, and interest in and to the [Victoria Heights] Partnership Interests" to JAE. ECF No. 148-3 ("Assignment") at 3; Mot. at 7; Opp'n at 5.  The Assignment further clarified that "[JAE] hereby accepts the Assignment and agrees to assume and perform [AMTAX's] duties, liabilities and obligations arising under, and to be bound by, the Agreement."  *Id*.  The only express qualification in the Assignment is the language: "[AMTAX] expressly retain[s] any and all indemnities and immunities to which they were entitled as limited partners under the Agreement immediately prior to the Effective Date." *Id*.

Upon the sale of AMTAX's interest, JAE filed the instant Motion to Dismiss AMTAX's remaining counterclaims for breach of contract and breach of fiduciary duty, claiming "AMTAX has now transferred all of its claims, [and] now lacks standing to pursue this action[.]"  Mot. at 7.

## **DISCUSSION**

**I.    JAE'S MOTION TO FILE DOCUMENTS UNDER SEAL**

JAE's Motion to File Documents Under Seal seeks to file under seal certain portions of JAE's Memorandum in support of its Motion to Dismiss—specifically the areas disclosing the sale price of AMTAX's interest in the Partnership—and a small portion of Exhibit A to the Declaration of Robert P. Berry, which similarly contains financial information regarding the transaction.  ECF No. 146 at 2.  JAE maintains this information is "confidential, not known to the market," and falls under the Protective Order filed by this Court, (ECF No. 28).  *Id*.  AMTAX does not respond to JAE's Motion to File Documents Under Seal.  *See generally* Opp'n.  Having considered the Motion to File Documents Under Seal, IT IS HEREBY ORDERED the motion is **GRANTED**. Accordingly, the Court **ORDERS** the following:

1. Plaintiff JAE Properties, Inc. may file under seal the following in connection with its Memorandum of Points and Authorities in Support of its Motion to Dismiss

for Lack of Standing/Mootness:

    a. JAE's Memorandum of Points and Authorities in Support of its Motion to Dismiss for Lack of Standing/Mootness.

    b. Exhibit A to the Declaration of Robert P. Berry in Support of JAE's Motion to Dismiss for Lack of Standing/Mootness.

## II.    JAE'S MOTION TO DISMISS

### 1. Legal Standard

A federal court's judicial power is limited to "cases" or "controversies." U.S. Const., Art. III § 2. "Sometimes, what begins as a concrete controversy ceases to be one during the course of the litigation—in other words, it becomes moot." *N.D. v. Reykdal*, 102 F.4th 982, 989 (9th Cir. 2024) (noting mootness requires "an actual controversy …. exist not only at the time the complaint is filed, but through all stages of the litigation"). Another necessary element of Article III's "case" or "controversy" requirement is that a litigant must have "'standing' to challenge the action sought to be adjudicated in the lawsuit." *Valley Forge Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982); *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1152 (9th Cir. 2000).

To satisfy Article III's standing requirements, the plaintiff has the burden of establishing: "(1) that plaintiff[] … suffered an injury in fact that was concrete and particularized, and actual or imminent; (2) that the injury is fairly traceable to the challenged conduct; and (3) that the injury was likely to be redressed by a favorable court decision." *Levine v. Vilsack*, 587 F.3d 986, 991-92 (9th Cir. 2009).

> The plaintiff must demonstrate a concrete and particularized and actual or imminent invasion of a legally protected interest. A concrete injury must be real, and an imminent one must be certainly impending. [A]n abstract, theoretical concern will not do.

*Lake v. Fontes*, 83 F.4th 1199, 1202-03 (9th Cir. 2023) (quotations and internal citations omitted). Standing is an essential component of the court's subject-matter jurisdiction. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004); *see also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (standing may be properly raised in a motion to dismiss

4

1   under Rule 12(b)(1)).  As such, challenges to a party's standing may be raised at any time

2   during the litigation.  *See* Fed. R. Civ. P. 12(h)(3).

3         Under Rule 12(b)(1), a party may contest standing under either a "facial" attack or

4   a "factual attack."  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  A "facial"

5   attack acts like a motion under Rule 12(b)(6), accepting the allegations as true but arguing

6   the allegations are insufficient to establish jurisdiction.  *Pride v. Correa*, 719 F.3d 1130,

7   1133 (9th Cir. 2013).  A "factual" attack contests the truth of the allegations, "usually by

8   introducing evidence outside the pleadings."  *Safe Air for Everyone v. Meyer*, 373 F.3d

9   1035, 1039 (9th Cir. 2004).  The rules governing evidence are the same as for motions for

10  summary judgment, (*Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010)), but

11  unlike summary judgment, "if the existence of jurisdiction turns on disputed factual issues,

12  the district court may resolve those factual disputes itself," (*Leite*, 749 F.3d at 1121-22).

13  The party asserting the cause of action bears the burden of proving each element of standing

14  by a preponderance of the evidence.  *See Harris v. Rand*, 682 F.3d 846, 851 (9th Cir. 2012).

15  **2.  Whether the Assignment Included AMTAX's Accrued Counterclaims**

16        JAE argues "there is no question" AMTAX's counterclaims were included in the

17  Assignment, and therefore, AMTAX's counterclaims should be dismissed for lack of

18  standing because AMTAX assigned its interest in the counterclaims.  Mot. at 24.  Though

19  JAE's Memorandum of Points and Authorities is twenty-two pages in length, JAE only

20  asserts one argument in support of its Motion:  JAE contends the language of the

21  Assignment unambiguously expresses the Parties' intent to transfer AMTAX's interest in

22  this cause of action to JAE.  *See id*. at 24-28.

23        AMTAX, on the other hand, argues the Parties did not intend for AMTAX's

24  counterclaims to transfer through the Assignment.  Instead, AMTAX claims its

25  counterclaims are "plainly not encompassed" within the language of the Assignment, and

26  in fact the Assignment is "completely silent" as to the counterclaims.  Opp'n at 11.

27  AMTAX explains its remaining counterclaims stem from "JAE's past breaches of contract

28

1   and fiduciary duty, which resulted in economic harm to AMTAX", (*id*. at 10-11), and are

2   therefore not "essential to a continued enforcement of the contract," (*id*. at 14).

3       The burden of proving an assignment falls on the party trying to assert its rights

4   under the assignment, in this case JAE. *See Cockerell v. Title Ins. & Trust Co.*, 42 Cal.2d

5   284, 292 (1954). An assignment is a transfer of title or ownership to another person or

6   entity. 1 Witkin, Summary of Cal. Law (11th ed. 2024) Contracts, § 727 (citing

7   *Commercial Discount Co. v. Cowen*, 18 Cal.2d 610, 614 (1941)). The construction of

8   assignments, like other contracts, is governed by state law. *See Minco, Inc. v. Combustion*

9   *Engineering, Inc*., 95 F.3d 1109, 1117 (Fed. Cir. 1996). Here, the Parties assert California

10  law as the proper authority. *See* Mot. at 25-29; Opp'n at 8 ("there is no dispute that

11  California law governs interpretation of the Assignment"). It is true, "[a]n assignment is a

12  commonly used method of transferring a cause of action." *Fink v. Shemtov*, 210

13  Cal.App.4th 599, 609 (2012) (internal quotations and citations omitted).

14      Nevertheless, an assignment must "describe the subject matter of the assignment

15  with sufficient particularity to identify the rights assigned." *Mission Valley East, Inc. v.*

16  *County of Kern*, 120 Cal.App.3d 89, 97 (1981). In determining what an assignment

17  confers, "the intention of the parties as manifested in the instrument is controlling." *Cal.*

18  *Ins. Guar. Ass'n v. Workers' Comp. Appeals Bd.*, 203 Cal.App.4th 1328, 1335 (2012); *see*

19  *also Klamath-Lake Pharm. V. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1283 (9th Cir.

20  1983). Therefore, the courts first look to the language of the instrument to determine

21  mutual intent. CAL. CIV. CODE §§ 1638, 1639; *see also Morey v. Vannucci,* 64 Cal.App.4th

22  904, 912 (1998) ("The mutual intention to which the courts give effect is determined by

23  objective manifestations of the parties' intent, including the words used in the agreement,

24  as well as extrinsic evidence of such objective matters as the surrounding circumstances

25  under which the parties negotiated or entered into the contract; the object, nature and

26  subject matter of the contract; and the subsequent conduct of the parties"). The assignment

27  of a legal claim or chose in action, specifically, must have "clear and positive" proof of the

28  intent to assign. *Unifund CCR, LLC v. Dear*, 243 Cal.App.4th Supp. 1, 9 (2015) (citing

1  *Cockerell*, 42 Cal.2d at 292). "If from the entire transaction and the conduct of the parties

2  it clearly appears that the intent of the parties was to pass title to the chose in action, then

3  an assignment will be held to have taken place." *McCown v. Spencer*, 8 Cal.App.3d 216,

4  225 (1970).

5       It is a "basic tenet of California contract law … that when a particular right or set of

6  rights is defined in an assignment, additional rights not similarly defined or named cannot

7  be considered part of the rights transferred." *Heritage Pac. Financial, LLC v. Monroy*, 215

8  Cal.App.4th 972, 991 (2013). Furthermore, when an accrued claim is alleged to be

9  included in the assignment and the assignment is silent as to that claim, "and nothing in the

10  [assignment] suggests that the assignment included any rights other than those rights

11  incidental to the contract rights," the assignment cannot be expanded "to include ancillary

12  rights not specified." *Id*. at 992.

13       Specifically, when a contract is assigned for which there are causes of action arising

14  out of the contract, "[u]nless an assignment specifically or impliedly designates them,

15  accrued causes of action arising out of an assigned contract . . . do not pass under the

16  assignment as incidental to the contract if they can be asserted by the assignor

17  independently of his continued ownership of the contract and are not essential to a

18  continued enforcement of the contract." *Nat'l Rsrv. Co. of Am. v. Metro. Trust Co.*, 17

19  Cal.2d 827, 833 (1941) ("*National Reserve*"). A cause of action is essential to the

20  continued enforcement of the contract only when it "cannot be asserted apart from the

21  contract out of which it arises or is essential to a complete and adequate enforcement of the

22  contract[.]" *Id*.

23       JAE relies heavily on two cases to support its position that AMTAX's counterclaims

24  were included in the Assignment: *Hsu v. Allianz Life Insurance Company*, 168 F.3d 499

25  (9th Cir. 1999) ("*Hsu*"), and *Knott v. McDonald's Corp*., 147 F.3d 1065 (9th Cir. 1998)

26  ("*Knott*"). In *Hsu*, the Ninth Circuit reviewed a district court's decision to dismiss the

27  appellants' breach of contract claim against Allianz Life Insurance for lack of standing

28  after the appellants assigned away their rights under the insurance contract. 168 F.3d at

499. There, the appellants' assignments included "all of [their] right, title, claim, interest and benefit" in the insurance contract, which the Ninth Circuit considered an "absolute assignment." *Id*. Moreover, the court found the appellants' argument that they never intended to assign the chose in action unpersuasive because it "would contradict the unambiguous meaning of the [assignments]." *Id*.

Here, AMTAX's Assignment of its interest to JAE includes "all right, title and interest in and to the Partnership Interests." ECF No. 148-3 ("Assignment") at 3. Despite the Assignment in this case containing similar language to that in *Hsu*, AMTAX argues this case is distinguishable. Opp'n at 13. AMTAX claims the instant case is different because "AMTAX's accrued and pending claims … are not premised on harm to the Partnership[,]" but rather on harm to AMTAX individually. *Id*. Indeed, looking to the language of the Assignment, AMTAX assigned its "interest in and to the Partnership Interests[,]" not its own private interest. *See* ECF No. 148-3 ("Assignment") at 3.

JAE similarly relies on *Knott*, in which case the plaintiffs assigned their contract with McDonald's when they sold their franchise location. 147 F.3d at 1066-67. The plaintiffs initially had a higher offer for the franchise from a different buyer, but after the potential buyer spoke with McDonald's representatives, the buyer withdrew from the sale. *Id*. at 1067. The plaintiffs later sold the franchise to a different set of buyers for a lower price and then filed a lawsuit against McDonald's for alleged statements made by its representatives to the initial buyers in violation of their franchise agreement. *Id*. McDonald's argued the plaintiffs had no standing to sue after they assigned all their interest in the franchise. *Id*. The assignment language stated the plaintiffs were transferring "all [their] right, title and interest." *Id*. at 1066. The *Knott* court held, "'all' is an all-encompassing term and leaves little doubt as to what rights the Knotts assigned to the [purchasers of the franchise] and what rights they retained. In short, 'all' means all." *Id*. at 1067. However, the assignment in *Knott* was governed by Illinois law, not California law. *See id*. at 1067-68. Therefore, the court in *Knott* did not have to reconcile their holding with the California Supreme Court decision in *National Reserve*.

3:19-cv-02075-JAH-DDL

In *National Reserve*, the California Supreme Court carved out a test for whether previously accrued causes of action transfer with the contract when that contract is assigned if the assignment does not expressly refer to the accrued claims. Under *National Reserve*, when an assignment fails to "specifically or impliedly" designate accrued causes of action, the question of whether the accrued causes of action were transferred depends on whether the accrued causes of action "can be asserted by the assignor independently of his continued ownership of the contract and are not essential to a continued enforcement of the contract." *Nat'l Rsrv.*, 17 Cal.2d at 833. In 2019, the Federal Circuit discussed its older holding in *Ginsberg v. Austin*, 968 F.2d 1198 (Fed. Cir. 1992), which relied on this test from *National Reserve*. *See Callaway Manor Apartments, Ltd. v. United States*, 940 F.3d 650, 657-60 (Fed. Cir. 2019). The Federal Circuit maintained its prior holding that, under California law, "accrued claims are not transferred with an assignment unless expressly stated." *Id.* at 657. The court went on to explain the language assigning "all right, title, and interest" does not "expressly" assign accrued claims. *Id.* at 659-60.

Looking to the language of the instrument in this case, the words "all right, title and interest in and to the Partnership Interests" do not expressly include accrued causes of action. *See* Assignment at 3. Therefore, for AMTAX's counterclaims to pass to JAE under the holding in *National Reserve*, AMTAX's counterclaims would have to be essential to the continued enforcement of the Partnership Agreement. *See Nat'l Rsrv.*, 17 Cal.2d at 833. However, AMTAX's remaining claims are not essential to the continued enforcement of the Partnership Agreement. This is self-evident because the claims at issue are brought against the assignee. In other words, for AMTAX's claims to be essential, JAE would not be able to enjoy the full benefit of the Partnership unless it possessed the right to sue itself. It is facially clear JAE does not need to sue itself to enjoy its ownership of the Victoria Heights Apartment Complex. Therefore, under *National Reserve* and *Callaway*, AMTAX did not assign its interest in its accrued counterclaims for breach of contract and breach of fiduciary duty. Accordingly, JAE's Motion to Dismiss is **DENIED**.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED:

1. JAE Properties, Inc.'s Motion to File Documents Under Seal (ECF No. 146) is **GRANTED**.

2. JAE Properties, Inc.'s Motion to Dismiss for Lack of Standing/Mootness (ECF No. 148) is **DENIED**.

**IT IS SO ORDERED**.

DATED: June 3, 2025

_____
JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE

3:19-cv-02075-JAH-DDL